Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: Docket@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

*Counsel for Plaintiff Dennis Nowak*

[*Additional Counsel listed on signature block*]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>XAPO, INC., a Delaware corporation;<br>XAPO (GIBRALTAR) LIMITED, a foreign corporation;<br>INDODAX, a foreign company; and<br>JOHN DOE NOS. 1-10, individuals,<br><br>    Defendants. | Case No. 5:20-cv-03643-BLF<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE ON DEFENDANTS XAPO (GIBRALTAR) LIMITED AND INDODAX**<br><br>Date:    December 9, 2020<br>Time:   9:00 a.m.<br>Dept.:   Courtroom 3<br>Judge:  Hon. Beth Labson Freeman<br><br>Date Filed:  August 11, 2020 Trial Date:  None set |

**TABLE OF CONTENTS**

Page

RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................... 1

ARGUMENT ................................................................................................................................. 4

    I.     STANDARDS OF LAW ................................................................................................ 4

    II.    ALTERNATIVE SERVICE IS APPROPRIATE UNDER THE CIRCUMSTANCES. 5

          A.    THE PROPOSED METHODS OF ALTERNATIVE SERVICE ARE NOT PROHIBITED BY INTERNATIONAL AGREEMENT ................................... 6

          B.    THE PROPOSED METHODS OF ALTERNATIVE SERVICE ARE REASONABLY CALCULATED TO PROVIDE THE DEFENDANTS WITH NOTICE OF THIS ACTION AND AFFORD THEM AN OPPORTUNITY TO PRESENT THEIR OBJECTIONS TO THE CHARGES AGAINST THEM .... 8

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bondanelli v. Ocean Park SRL*,
   No. CV 12-07724 GAF (SSx), 2013 U.S. Dist. LEXIS 198457 (C.D. Cal. Oct. 7, 2013) ..................................................................................................................................6

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ........................................................................................................6

*DFSB Kollective Co., Ltd. v. Bing Yang*,
   No. C-11-1051-CW, 2013 WL 1294641 (N.D. Cal. Mar. 28, 2013) …………............................. 8

*Facebook, Inc. v. Banana Ads, LLC*,
   No. 11-cv-3619 (YGR), 2012 U.S. Dist. LEXIS 42160 (N.D. Cal. Mar. 27, 2012) ........................4

*J & J Sports Prods. V. Magat*,
   No. 11-cv-01149 (WHA), 2011 U.S. Dist. LEXIS 75458 (N.D. Cal. July 13, 2011) ......................8

*Keck v. Alibaba.com, Inc.*,
   No. 17-cv-05672 (BLF), 2018 U.S. Dist. LEXIS 128396 (N.D. Cal. July 31, 2018) ......................8

*Microsoft Corp. v. Goldah.Com Network Tech. Co.*,
   No. 17-cv-02896 (LHK), 2017 U.S. Dist. LEXIS 168537 (N.D. Cal. Oct. 11, 2017) ....................8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ......................................................................................................................4

*Prods. & Ventures Intl. v. Axus Stationary (Shanghai) Ltd.*,
   No. 16-cv-00669 (YGR), 2017 U.S. Dist. LEXIS 55430 (N.D. Cal. Apr. 11, 2017) ......................4

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ..............................................................................................4, 7, 8

*RSM Prod. Corp. v. Fridman*,
   No. 06-cv-11512 (DLC), 2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May 24, 2007) ......................8

*St. Francis Assisi v. Kuwait Fin. House*,
   No. 3:16-cv-3240 (LB), 2016 U.S. Dist. LEXIS 136152 (N.D. Cal. Sep. 30, 2016) ......................7

*Tatung Co. v. Shu Tze Hsu*,
   SA CV 13-1743-DOC (ANx), 2015 WL 11089492, at *2 (C.D. Cal. May 18, 2015) ....................7

*UBS Fin. Servs. v. Berger*,
   No. 13-cv-03770 (LB), 2014 U.S. Dist. LEXIS 193761 (N.D. Cal. Apr. 24, 2014) ......................7

*United Food & Commercial WorkersUnion v. Alpha Beta Co.*,
   736 F.2d 1371 (9th Cir. 1984) ......................................................................................................8

*Ways v. Roache*
   No. 8:12-cv-2404-T-26TGW, 2012 WL 12904227 (M.D. Fla. Dec. 10, 2012) .............................. 6

*Wong v. PartyGaming Ltd.*
   No. 1:06-cv-2376, 2008 WL 1995369 (N.D. Ohio May 6, 2008) .................................................. 6

Plaintiff DENNIS NOWAK, an individual ("Plaintiff"); respectfully submits this memorandum of points and authorities in support of his Motion for Leave to effectuate upon Defendant XAPO (GIBRALTAR) LIMITED, a foreign corporation ("XAPO (GIBRALTAR)"); and Defendant INDODAX, a foreign company ("INDODAX"), service of the Summons, Complaint, and related documents (the "Service Documents") by alternative means under FED. R. CIV. P. Rule 4(f)(3), *to wit*: service by International Registered Mail, electronic mail, and social media channels (the "Motion").

**RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

This action arises out of the November 2018 theft from Plaintiff of 500 bitcoin (BTC) -- valued at the time at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00)[1] -- which were held in an account Plaintiff maintained at a Northern California-based cryptocurrency exchange ("U.S.A. EXCHANGE").  Over the ensuing few months, 479.69 of the stolen BTC were deposited into two deposit addresses (and subsequently one hot wallet[2]) controlled by INDODAX.  Similarly, 19.99 BTC of Plaintiff's original 499.69 BTC are held in two hot wallet addresses controlled by XAPO.  As concluded by international investigative firm Kroll, the stolen BTC appear to still be housed at INDODAX and XAPO.

On June 1, 2020, Plaintiff filed his Complaint [ECF No. 1], asserting against XAPO, XAPO (GIBRALTAR), and INDODAX claims for: (i) Violation of California Penal Code § 496 (Possession of Stolen Property); (ii) Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4) (Computer Fraud and Abuse Act); and (iii) Violation of California Penal Code § 502 *et seq*. (Assisting Unlawful Access To Computer).  As alleged in the Complaint:

> XAPO, INC. and XAPO (GIBRALTAR) LIMITED commonly operate with their sibling entities around the world under the shared tradename "XAPO"; and XAPO, INC. and XAPO (GIBRALTAR) LIMITED will be collectively referred to herein simply as "XAPO," as their own website does not differentiate between the separate corporate entities. Upon information and belief, the entities are all dominated by the same

---

[1] As of the date of this filing, those 500 BTC are valued at approximately Six Million Dollars ($6,000,000.00).

[2] A "hot wallet" refers to a cryptocurrency wallet that is online and connected in some way to the Internet.  A "hot wallet" stands in contrast to "cold storage," which refers to a method for electronically storing cryptocurrency in a location that is not connected to the Internet.

- 1 -

> individuals, use the same corporate decision-makers, the same resources, and the same business connections. Thus, they are essentially one-and-the-same business, regardless of the particular name under which each company's operations are conducted.

ECF No. 1 at ¶ 4. Notwithstanding the foregoing, XAPO (GIBRALTAR) purports to have its principal place of business in Gibraltar. Moreover, based upon publicly-available corporate records, social media accounts, websites, blog posts, government registries, and business addresses, INDODAX purports to have its principal place of business in Indonesia. As demonstrated below, though, it appears those representations are false.

In early-June 2020, shortly after this lawsuit was commenced, undersigned counsel prepared a Waiver of Service of Summons for XAPO (GIBRALTAR)'s execution -- intending to send XAPO (GIBRALTAR) a request that it agree to waive formal service in this action. However, undersigned counsel discovered that the registered address at which XAPO (GIBRALTAR) purports to have its office and conduct its business (6 Bayside Road, Unit 1.02, 1st Floor, World Trade Center, Gibraltar) is nothing more than a Regus office[3] at which XAPO (GIBRALTAR) does not actually operate its business or have any authorized agents available to accept service of process.[4]

On or about June 10, 2020, undersigned counsel then conferred with counsel for XAPO -- who had already alerted the undersigned to his law firm's forthcoming appearance in this case as defense counsel -- and asked that XAPO or its counsel accept service of process on behalf of XAPO (GIBRALTAR) and confirm that the address in Gibraltar is merely a Regus address at which formal service of process would be ineffective. Counsel informed the undersigned that XAPO's counsel was not authorized to accept service for XAPO (GIBRALTAR), and counsel neither confirmed nor denied the information pertaining to the office address in Gibraltar.[5]

---

[3] A Regus office is a "virtual office [that] gives remote business owners and employees a fixed workspace from which to field their operations, wherever they might be in the world. * * * Virtual offices are bricks-and-mortar operations, not cloud-based. Although remote workers aren't physically based in their virtual office, they can use the address for their own business listings and communication." *See*, https://www.regus.com/work-us/virtual-office-regus-helps/.

[4] Declaration of David C. Silver ("Silver Decl."), filed in support of Plaintiff's Motion, at ¶ 3.

[5] *Id.* at ¶ 4.

- 2 -

In June 2020, undersigned counsel retained Process Service Network, LLC, to prepare and serve a Form USM-94 for service under the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") to effectuate service upon XAPO (GIBRALTAR). Acting under the Hague Convention, Process Service Network thereupon commenced its efforts to effectuate formal service of process upon XAPO (GIBRALTAR) by delivering the Summons and Complaint to the Registrar of the Supreme Court, 277 Main Street, Gibraltar. Those efforts are still ongoing and are expected to last several more weeks if not months.

On July 27, 2020, to expedite matters, undersigned counsel sent to XAPO's counsel a letter requesting that XAPO provide its sibling entity XAPO (GIBRALTAR) the Waiver of Service of Summons prepared by undersigned counsel for XAPO (GIBRALTAR)'s execution.[6] XAPO and/or its counsel refused Plaintiff's request.

While efforts were ongoing to effectuate service upon XAPO (GIBRALTAR), similar efforts were also proceeding to serve process upon INDODAX. On August 1, 2020 and August 2, 2020, multiple attempts by a licensed process server were made to serve process upon INDODAX at its registered business address in Bali, Indonesia (Jalan Sunset Road No. 48 a-b, Seminyak Badung, Bali, Indonesia). As explained in the sworn affidavit executed by the process server, those efforts were fruitless; as it is apparent that INDODAX does not actually operate its business, or have any authorized agents available to accept service of process, at that address which it lists on its website and purports to be its registered address.[7]

All in all, it appears both XAPO (GIBRALTAR) and INDODAX have published primary business addresses at which service of process cannot be effectuated -- thus confounding Plaintiff's efforts to serve process upon those defendants under traditional means. Thus, Plaintiff seeks leave of this Court to effectuate service through alternative means.

---

[6] *Id*. at ¶ 7, Ex. "A".

[7] *Id*. at ¶ 8, Ex. "B".

**ARGUMENT**

**I.      STANDARDS OF LAW**

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3).  Similarly, Rule 4(h)(2) permits service of a corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." FED. R. CIV. P. 4(h)(2).

Service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002).  To the contrary, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)" and "the advisory notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means." *Id*.  Furthermore, "[t]here is no need to show that a defendant must try to evade service to be subject to substituted service." *Prods. & Ventures Intl. v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669 (YGR), 2017 U.S. Dist. LEXIS 55430, at *11, n.3 (N.D. Cal. Apr. 11, 2017).  Rather, "'service under Rule 4(f)(3) must be: (1) directed by the court; and (2) not prohibited by international agreement.  No other limitations are evident from the text.'" *Id*. (quoting *Rio Properties, Inc.*, 284 F.3d at 1015); *see also Facebook, Inc. v. Banana Ads, LLC,* No. 11-cv-3619 (YGR), 2012 U.S. Dist. LEXIS 42160, at *6–7 (N.D. Cal. Mar. 27, 2012) (collecting cases in which courts permitted service by email).

To meet the constitutional requirement of due process, any method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Facebook*, 2012 U.S. Dist. LEXIS 42160, at *5 ("To satisfy constitutional norms of due process, the alternative method of service must be 'reasonably calculated under all the circumstances, to apprise the interested parties of the action and afford them an opportunity to present their objections.'") (quoting *Rio Properties, Inc.*, 284 F.3d at 1016).

The methods proposed by Plaintiff in this motion all meet those legal requirements.

- 4 -

II.     **ALTERNATIVE SERVICE IS APPROPRIATE UNDER THE CIRCUMSTANCES**

Plaintiff seeks an Order authorizing the following proposed methods of service, which are reasonably designed to afford XAPO (GIBRALTAR) and INDODAX with notice of this Action and afford them an opportunity to present their answer and defenses to the charges against them:

1. Mailing of the Service Documents (via First Class International Registered Mail through the U.S. Postal Service) to XAPO (GIBRALTAR) at its mail-drop Regus office at the following address:

- Xapo (Gibraltar) Limited
  Unit 1.02, First Floor
  World Trade Center
  6 Bayside Road
  Gibraltar
  GX11 1AA

According to XAPO's own website on a page labeled "How do I file a complaint?"[8]:

> Alternatively, if you would like to write to us, please send all letters to the following mailing address:
>
> Xapo (Gibraltar) Limited
> Unit 1.02, First Floor
> World Trade Center
> 6 Bayside Road
> Gibraltar
> GX11 1AA
>
> Our Complaints Handling Policy and Procedure is available upon request.

2. Emailing the Service Documents to XAPO (GIBRALTAR) and INDODAX at the following addresses:

   a. XAPO (GIBRALTAR): support@xapo.com

   b. INDODAX: support@indodax.com

3. Delivering the Service Documents to XAPO (GIBRALTAR) and INDODAX through social media channels, including:

   a. XAPO (GIBRALTAR): Twitter (@xapo), Facebook (@xapoapp).

   b. INDODAX: Twitter (@indodax), Facebook (@indodax).

---

[8] https://support.xapo.com/en/articles/26/, a copy of which is attached to Silver Decl. at ¶ 9, Ex. "C".

- 5 -

### A. The Proposed Methods of Alternative Service Are Not Prohibited by International Agreement

Plaintiff's proposed methods of alternative service are not prohibited by international agreement, are reasonably calculated to give XAPO (GIBRALTAR) and INDODAX notice of the charges against them, and are thus permissible.

#### 1. Service by Mail

Defendant XAPO (GIBRALTAR) purports to be a resident of Gibraltar, over which the Hague Convention was extended by the United Kingdom, which is a signatory to the Convention. *See*, *e.g.*, *Ways v. Roache*, No. 8:12-cv-2404-T-26TGW, 2012 WL 12904227, at *1 (M.D. Fla. Dec. 10, 2012) ("It is undisputed that the United States and Gibraltar are members of the Hague Convention."); *Wong v. PartyGaming Ltd.*, No. 1:06-cv-2376, 2008 WL 1995369, at *2 (N.D. Ohio May 6, 2008) ("Both the United States and the United Kingdom are member states, and the United Kingdom has expressly extended the Hague Service Convention to Gibraltar. U.S. Department of State, Hague Convention on Service Abroad, http:// travel.state.gov/law/info/judicial/judicial_686.html.").

"Both the Ninth Circuit and California courts have held that Article 10(a) of the Hague Convention allows service of process by mail, so long as the country in which service is being effected does not object." *Bondanelli v. Ocean Park SRL*, No. CV 12-07724 GAF (SSx), 2013 U.S. Dist. LEXIS 198457, at *3 (C.D. Cal. Oct. 7, 2013) (citing *Brockmeyer v. May*, 383 F.3d 798, 801–02 (9th Cir. 2004)). The United Kingdom has not objected to Article 10(a). *PartyGaming*, *supra* at *3. Specifically, "service by mail is an acceptable means of service under Gibraltar law." *Id*. Moreover, to the extent any question exists whether mailing of an initial Complaint to Gibraltar satisfies a party's obligations under the Hague Convention, it is clear that "a Complaint may be mailed from the United States to Gibraltar." *Id*. (also deeming transmittal via an international private carrier like DHL acceptable).

This Court, as well as numerous other courts, have found service of process by mail to be acceptable in countries where no objection to such service exists. *See Bondanelli*, *supra*, at *3–5 (collecting cases). As to authorization of service in this jurisdiction, "the determination of whether Plaintiff properly served the Summons and Complaint will be made applying the California Code of Civil Procedure." *Id*. These requirements include mailing via first-class mail or airmail, postage

- 6 -

prepaid, requiring or requesting a return receipt.  *See* Cal. Code Civ. Proc. § 415.40; Judicial Council of Cal., com., reprinted at 14B West's Ann. Code Civ. Proc. (2004 ed.) foll. § 415.40 p. 66. Accordingly, Plaintiff's proposed method of service via international mail directly to XAPO (GIBRALTAR) at its purported registered business office is not prohibited by international agreement.

### 2. Service by Electronic Mail and Social Media

In addition to mail service, and in an effort to ensure that all reasonable measures are taken to provide clear notice upon XAPO (GIBRALTAR) and INDODAX, Plaintiff also seeks to effect alternative service of process by emailing the Service Documents to XAPO (GIBRALTAR) and INDODAX.

In applying Rule 4(f)(3), "trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Rio Props.*, 284 F.3d at 1016 (emphasis added) (collecting cases).  Similarly, courts in this District have authorized service of process by social media. *See, e.g.*, *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240 (LB), 2016 U.S. Dist. LEXIS 136152, at *4 (N.D. Cal. Sep. 30, 2016) (discussing decision to grant "service by email, Facebook, and LinkedIn because notice through these accounts was reasonably calculated to notify the defendant of the pendency of the action and was not prohibited by international agreement"); *see also UBS Fin. Servs. v. Berger*, No. 13-cv-03770 (LB), 2014 U.S. Dist. LEXIS 193761, at *5 (N.D. Cal. Apr. 24, 2014) (recounting court's decision to authorize service via defendant's "gmail address and through LinkedIn's 'InMail' feature"); *Tatung Co. v. Shu Tze Hsu*, SA CV 13-1743-DOC (ANx), 2015 U.S. Dist. LEXIS 179201, 2015 WL 11089492, at *2 (C.D. Cal. May 18, 2015) ("Courts routinely authorize email service under Rule 4(f)(3)") (citing cases).

As noted, "service under Rule 4(f)(3) must be: (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text.'" *Prods. & Ventures Intl.*, 2017 U.S. Dist. LEXIS 55430, at *11, n.3 (quoting *Rio Properties, Inc.*, 284 F.3d at 1015)).  Because Plaintiff's proposed methods of service by mail, email, and social media are not prohibited by any international agreement, whether to permit Plaintiff's request is therefore "'commit[ted] to the sound discretion of the district court.'" *Microsoft Corp. v. Goldah.Com Network Tech. Co.*, No. 17-cv-02896

-7-

(LHK), 2017 U.S. Dist. LEXIS 168537, at *10 (N.D. Cal. Oct. 11, 2017) (citing *Rio Properties, Inc.*, 284 F.3d at 1016); *see also Keck v. Alibaba.com, Inc.*, No. 17-cv-05672 (BLF), 2018 U.S. Dist. LEXIS 128396, at *7 (N.D. Cal. July 31, 2018) ("The decision to provide an order under Rule 4(f)(3) is within the sound discretion of the district court, which must determine whether the particularities and necessities of a given case require alternative service of process.") (citation and internal quotation marks omitted); *DFSB Kollective Co., Ltd. v. Bing Yang*, No. C-11-1051-CW, 2013 WL 1294641, at *10 (N.D. Cal. Mar. 28, 2013) (authorizing service of process in **Indonesia** by e-mail; "Neither Indonesia nor Vietnam are parties to the Hague Convention and there are no treaties between these countries and the United States regarding service of documents. Thus, there are no international agreements prohibiting service by e-mail.").

Based on the foregoing, because Plaintiff's proposed methods of alternative service are not prohibited by international agreement and it is within the Court's "sound discretion" whether to authorize alternative service of process on XAPO (GIBRALTAR) and INDODAX pursuant to Rule 4(f)(3), providing the Service Documents to each via electronic mail and through social media channels is appropriate. *See, e.g.*, *Keck*, 2018 U.S. Dist. LEXIS 128396, at *7; *RSM Prod. Corp. v. Fridman*, No. 06-cv-11512 (DLC), 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) (same).

**B. The Proposed Methods of Alternative Service Are Reasonably Calculated to Provide the Defendants with Notice of this Action and Afford them an Opportunity to Present their Objections to the Charges Against Them**

Finally, each method of proposed service of process is likely to reach XAPO (GIBRALTAR) and INDODAX. "FRCP 4 is a 'flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'" *J & J Sports Prods. V. Magat*, No. 11-cv-01149 (WHA), 2011 U.S. Dist. LEXIS 75458, at *2 (N.D. Cal. July 13, 2011) (quoting *United Food & Commercial WorkersUnion v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). *See also*, *DFSB Kollective, supra* at *10 ("Thus, service upon Defendants using their email addresses was not only reasonably calculated to give them notice of the pendency of this action, but was also, as in *Rio Properties*, the method of service most likely actually to reach Defendants. Accordingly, service of process upon Defendants was proper."). Taken together, the proposed mailings and electronic communications are

- 8 -

reasonably calculated to provide direct notice to XAPO (GIBRALTAR) and INDODAX of the pending action against them and comply with the due process requirements for service.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court authorize alternative service upon XAPO (GIBRALTAR) and INDODAX by international mail to XAPO (GIBRALTAR); and via electronic mail and social media to XAPO (GIBRALTAR) and INDODAX.

**REIF LAW GROUP, P.C.**

By: */s/ Brandon S. Reif*
Brandon S. Reif (State Bar No. 214706)
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone:   (310) 494-6500
E-Mail:       Docket@ReifLawGroup.com

David C. Silver (Admitted *Pro Hac Vice* - DE 21)
Jason S. Miller (to be admitted *pro hac vice*)
**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:   (954) 516-6000
E-mail:       DSilver@SilverMillerLaw.com
E-mail:       JMiller@SilverMillerLaw.com

*Counsel for Plaintiff Dennis Nowak*

Dated: __August 11__, 2020