Brandon S. Reif (SBN 214706)
E-Mail: Docket@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
(310) 494-6500
*Counsel for Plaintiff Dennis Nowak*
[*Additional Counsel listed on signature block*]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual, | Case No. 5:20-cv-03643-BLF |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT XAPO, INC.'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals, | Date:       November 12, 2020<br>Time:       9:00 a.m.<br>Dept.:      Courtroom 3<br>Judge:     Hon. Beth Labson Freeman |
| Defendants. | Date Filed:   June 1, 2020<br>Trial Date:    None set |

1

**<u>TABLE OF CONTENTS</u>**

2

<u>**Page**</u>

3    RELEVANT FACTUAL BACKGROUND ........................................................................ 1

4    DEFENDANT'S MISCHARACTERIZATIONS OF PLAINTIFF'S ALLEGATIONS .................... 3

5    ARGUMENT ................................................................................................................ 4

6    I.    STANDARD OF LAW ......................................................................................... 4

7    II.   PLAINTIFF'S CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT (CFAA) IS

8          ADEQUATELY PLEADED ................................................................................... 5

9    III.  PLAINTIFF'S CLAIM UNDER CALIFORNIA PENAL CODE § 496 (POSSESSION AND

10         CONCEALMENT OF STOLEN PROPERTY) IS ADEQUATELY PLEADED .................... 7

11   IV.   PLAINTIFF'S CLAIM UNDER CALIFORNIA PENAL CODE § 502, ET SEQ. (ASSISTING

12         UNLAWFUL ACCESS TO COMPUTER) IS ADEQUATELY PLEADED ........................ 9

13   CONCLUSION ............................................................................................................ 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*Achal v. Gate Gourmet, Inc.*

    114 F. Supp. 3d 781 (N.D. Cal. 2015) ........................................................... 4

*COR Securities Holdings, Inc. v. Banc of California, N.A.*

    No. 17-cv-1403-DOC, 2018 WL 4860032 (C.D. Cal. Feb. 12, 2018) ..................... 6

*N. Star Int'l v. Ariz. Corp. Comm'n*

    720 F.2d 578 (9th Cir. 1983)………….............................................................. 4

*Shwarz v. United States*

    234 F.3d 428 (9th Cir. 2000)........................................................................... 4

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*

    229 F.Supp.3d 1284 (S.D. Fla. 2017)............................................................... 6

*United States v. Christensen*

    828 F.3d 763 (9th Cir. 2015) .......................................................................... 6

*United States v. Ford*

    821 F.3d 63 (1st Cir. 2016)............................................................................. 7

*United States v. Heredia*

    483 F.3d 913, 918 (9th Cir. 2007)………….................................................... 7

*United States v. Jewell*

    532 F.2d 697 (9th Cir. 1976) .......................................................................... 8

*United States v. Nosal*

    844 F.3d 1024 (9th Cir. 2016) ("Nosal II")………............................................ 6, 7

*United States v. Ritchie*

    342 F.3d 903 (9th Cir. 2003)........................................................................... 4

*United States v. Salman*

    No. CR–11–0625 EMC, 2013 WL 6655176 (N.D. Cal. Dec. 17, 2013)................... 8

*Valentine v. NebuAd, Inc.*

    804 F.Supp.2d 1022 (N.D. Cal. 2011) ......................................................... 10-11

**State Cases**

*People v. Grant*
   113 Cal.App.4th 579 (2003)…………......................................................... 8

*People v. Scaggs*
   153 Cal.App.2d 339 (1957)........................................................................ 8


**Federal Statutes**

18 U.S.C. § 1030 (Computer Fraud and Abuse Act)............................................. *passim*


**State Statutes**

California Penal Code § 496……………………............................................... *passim*

California Penal Code § 502, *et seq*...……….......................................................... *passim*


**Rules**

Federal Rule of Civil Procedure 12(b)(6)………................................................... 4

Plaintiff DENNIS NOWAK, an individual ("Plaintiff"); respectfully submits this memorandum of points and authorities in opposition to the motion filed by Defendant XAPO, INC., a Delaware corporation ("Defendant" or "XAPO") (ECF No. 22, the "Motion") in which Defendant requests dismissal of Plaintiff's Complaint (ECF No. 1 ["Compl."]).  For the reasons more fully set forth below, Defendant's Motion lacks merit.  Essentially, all of Defendant's arguments are premised upon false factual assertions and misstatements of law.  When accepting as true all of the well-pleaded facts set forth in Plaintiff's Complaint -- as the Court is required to do at this preliminary stage of the litigation -- it is clear that Plaintiff has asserted viable bases for each of his claims against Defendant.  As such, the Motion should be denied.

## RELEVANT FACTUAL BACKGROUND

This action arises out of the November 2018 theft from Plaintiff of 500 bitcoin (BTC) -- valued at the time at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00)[1] -- which were held in an account Plaintiff maintained at a Northern California-based cryptocurrency exchange ("U.S.A. EXCHANGE").  [Compl. at ¶¶ 18-20].  Over the ensuing few months, 479.69 of the stolen BTC were deposited into two deposit addresses (and subsequently one hot wallet[2]) controlled by INDODAX.  [Id. at ¶¶ 22, 25].  Similarly, 19.99 BTC of Plaintiff's original 499.69 BTC are held in two hot wallet addresses controlled by XAPO.[3]  [Id. at ¶¶ 24, 25].  As concluded by international investigative firm Kroll, the stolen BTC appear to still be housed at

---

[1] As of the date of this filing, those 500 BTC are valued at approximately Six Million Dollars ($6,000,000.00).

[2] A "hot wallet" refers to a cryptocurrency wallet that is online and connected in some way to the Internet.  A "hot wallet" stands in contrast to "cold storage," which refers to a method for electronically storing cryptocurrency in a location that is not connected to the Internet.

[3] Defendants Xapo, Inc. and Xapo (Gibraltar) Limited commonly operate with their sibling entities around the world under the shared tradename "XAPO"; and they are collectively referred to in the Complaint simply as "XAPO," as their own website does not differentiate between the separate corporate entities.  Upon information and belief, the entities are all dominated by the same individuals, use the same corporate decision-makers, the same resources, and the same business connections.  Thus, they are essentially one-and-the-same business, regardless of the particular name under which each company's operations are conducted.  See, Compl. at ¶ 4.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

INDODAX and XAPO.  [*Id*. at ¶¶ 23, 24].  Neither Plaintiff nor any person or entity under Plaintiff's control owns or controls any of the destination addresses at INDODAX or XAPO into which the stolen assets were placed.  [*Id*. at ¶ 27].

The methodology of the specific theft identified by Kroll -- with funds leaving U.S.A. EXCHANGE and a small split going to two XAPO wallets and the rest going to two INDODAX wallets -- appears to have been followed on more occasions than just the theft from Plaintiff.  [*Id*. at ¶ 33].  Moreover, it appears that notwithstanding their obligations to employ rigorous "Know Your Customer" (KYC) and "Anti-Money-Laundering" (AML) policies and procedures, XAPO and INDODAX have permitted criminal activity by allowing their custodial vaults and exchanges to serve as shelters for thieves like Defendants JOHN DOE NOS. 1-10 to store purloined assets -- including those assets stolen from Plaintiff.  [*Id*. at ¶¶ 34-38].  XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings.  [*Id*. at ¶ 40].  For example, U.S.A. EXCHANGE knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.  [*Id*.].  Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.  [*Id*. at ¶ 37].

XAPO and INDODAX each know that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff.  [*Id*. at ¶ 41].  On June 1, 2020, Plaintiff brought this action to hold XAPO and INDODAX liable for aiding and abetting Defendants JOHN DOE NOS. 1-10's misappropriation of Plaintiff's assets and for creating and maintaining systems that unjustly allow thieves to hide stolen property in XAPO's and INDODAX's custodial vaults.  [*Id*. at ¶ 42].  In support thereof, Plaintiff's Complaint asserted against XAPO and INDODAX claims for: (i) Violation

of California Penal Code § 496 (Possession of Stolen Property); (ii) Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4) (Computer Fraud and Abuse Act); and (iii) Violation of California Penal Code § 502 *et seq*. (Assisting Unlawful Access To Computer).  [*Id.* at ¶¶ 45-53, 54-61, and 62-69].

## DEFENDANT'S MISCHARACTERIZATIONS OF PLAINTIFF'S ALLEGATIONS

In its Motion, Defendant heaps numerous allegations upon one another to distance itself from the theft of Plaintiff's assets as well as any legal culpability for its role in the theft succeeding.  In doing so, Defendant mischaracterizes the allegations contained in the Complaint and the legal impact of those allegations.  For example, Defendant asserts:

- *Plaintiff does not allege that Xapo, Inc. assisted the hackers in any way or even knew anything about the theft.*  [Motion at 1]
  - To the contrary, Plaintiff has asserted that Defendant knew that its KYC and AML policies and procedures were inadequate, yet purposefully ignored those inadequacies.  By failing to implement and utilize adequate KYC and AML policies and procedures, Defendant has affirmatively turned a blind eye to the fraudulent and criminal activity enacted upon Plaintiff, which greatly assisted the John Doe defendants in carrying out their theft.  Moreover, Plaintiff has asserted that Defendant knows that the assets stolen from Plaintiff and stored within its custody were indeed stolen; however, Defendant has undertaken no efforts to return those stolen assets to Plaintiff.
- *[Plaintiff] doesn't even allege that any of the conduct at issue occurred in California, which is where Xapo, Inc. . . . operates.*  [*Id.*]
  - To the contrary, Plaintiff has asserted that his assets were stolen from a cryptocurrency exchange in Northern California (U.S.A. EXCHANGE) and then transferred, in part, to Defendant, which is headquartered in and operates in Northern California.
- *Plaintiff fails to allege that Xapo, Inc. participated in, or had knowledge of, the purported theft and/or hacking.*  [*Id.* at 2]
  - To the contrary, Plaintiff has asserted that Defendant did participate in the theft in a material measure that allowed the theft to succeed.  Moreover, Plaintiff has asserted that Defendant knows that the assets stolen from Plaintiff and stored within its custody were indeed stolen;

however, Defendant has undertaken no efforts to return those stolen assets to Plaintiff.

- *Plaintiff does not allege that either Xapo, Inc. or Xapo Gibraltar assisted the John Doe defendants in "infiltrat[ing]" his account.  Nor does Plaintiff allege that Xapo, Inc. or Xapo Gibraltar committed any affirmative misconduct, whether in California or elsewhere.  [Id. at 3]*

- *[Plaintiff does not allege] that Xapo, Inc. (or "XAPO") conspired with, assisted, or in any other way enabled the John Doe defendants who allegedly broke into Plaintiff's computer and stole his Bitcoins.  [Id. at 5]*
  - To the contrary, Plaintiff has asserted the nature of the manner in which Defendant assisted and enabled the John Doe defendants and has identified the affirmative misconduct and willful blindness in which Defendant engaged to Plaintiff's detriment.

Much like a tenant desperate to receive back his security deposit upon vacating an apartment, Defendant has attempted to paint over -- or outright ignore -- the facts that work to its disadvantage.  Pretending those infirmities in its defense do not exist, however, does not mean they actually do not exist.  Plaintiff has set forth his claims concisely, and they make clear the culpable and vital role Defendant played in the harm Plaintiff has suffered.[4]  If Defendant wants to reframe the facts or interject a contrary factual narrative of its own, it can only do so at a later stage of the proceedings after the parties have engaged in adequate discovery.  For now, though, Plaintiff's claims are viably supported; and the Court should deny Defendant's Motion.

## ARGUMENT

### I.    STANDARD OF LAW

In evaluating a motion to dismiss, a court must accept the plaintiff's factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  A court may only consider the Complaint, documents incorporated by reference in the Complaint, and

---

[4] To the extent any ambiguities exist and the clarity of Plaintiff's claims call for supplementation, Plaintiff can provide that clarity in an Amended Complaint, if necessary.

matters of judicial notice in deciding a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The purpose of a Rule 12(b)(6) motion is not to prematurely weigh evidence or competing factual claims, but rather to evaluate the sufficiency of the facts alleged in a pleading, all of which must be accepted as true. *Achal v. Gate Gourmet, Inc*., 114 F. Supp. 3d 781, 793 (N.D. Cal. 2015), citing *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

Here, it is clear that Plaintiff has adequately alleged in his Complaint a sufficient factual basis -- which must be accepted as true -- to sustain his claims against Defendant.

## II.   PLAINTIFF'S CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT (CFAA) IS ADEQUATELY PLEADED

In its Motion, Defendant expresses both a fundamental misunderstanding/misrepresentation of Plaintiff's claim under the Computer Fraud and Abuse Act (CFAA) [18 U.S.C. § 1030] as well as the viability of the claim Plaintiff has asserted.  According to Defendant, Plaintiff has not alleged that Defendant "*assisted, or in any other way enabled[,] the John Doe defendants who allegedly broke into Plaintiff's computer and stole his Bitcoins.*"  [Motion at 5].  The Complaint, however, patently alleges the following as the grounds upon which Defendant aided and abetted the John Doe defendants:

> Paragraph 39:     XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings.  For example, U.S.A. EXCHANGE knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.

> Paragraph 40:     Moreover, XAPO and INDODAX each know or should have known that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Paragraph 41<u></u>:       Plaintiff brings this action to hold XAPO and INDODAX liable for aiding and abetting Defendants JOHN DOE NOS. 1-10's misappropriation of Plaintiff's assets and for creating and maintaining systems that unjustly allow thieves to hide stolen property in XAPO's and INDODAX's custodial vaults.

> *          *          *

> Paragraph 59<u></u>: Defendants XAPO and INDODAX provided the unknown and unauthorized persons vital assistance in carrying out the fraud by providing them safe havens -- and continue to do so through the date of this filing -- that allowed the unknown and unauthorized Defendants JOHN DOE NOS. 1-10 to hide stolen property in XAPO's and INDODAX's custodial vaults.

Moreover, Defendant asserts that "neither the Supreme Court nor the Ninth Circuit has addressed [the viability of a cause of action for aiding and abetting liability] under the CFAA" and then points to a small collection of cases from other jurisdictions that reject the viability of such a claim.  However, the Ninth Circuit has addressed the issue and has held that aiding and abetting violations of the CFAA **is indeed** a punishable offense.  *United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016) ("*Nosal II*").  While Defendant attempts to negate the importance of the Ninth Circuit's holding in *Nosal II* by constraining it solely to criminal prosecutions, no such limitations are stated in *Nosal II*; and other California federal courts and District Courts in other jurisdictions have explicitly recognized civil liability for aiding and abetting CFAA violations.  *See*, *COR Securities Holdings, Inc. v. Banc of California, N.A*., No. 17-cv-1403-DOC, 2018 WL 4860032, at *7 (C.D. Cal. Feb. 12, 2018) (**"[A]t [the Motion to Dismiss] stage of the litigation, Defendants have not persuaded the Court that legal precedent forecloses a civil aiding and abetting claim under CFAA."**); *Tracfone Wireless, Inc. v. Simply Wireless, Inc*., 229 F.Supp.3d 1284, 1296 (S.D. Fla. 2017) ("[D]irect access to a computer is not required[,] and **a defendant can be held [civilly] liable under the CFAA under an aiding and abetting theory of liability**").  *See also*, *United States v.*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

*Christensen*, 828 F.3d 763, 787 (9th Cir. 2015) (implicitly recognizing the existence of aiding and abetting liability under the CFAA).

Furthermore, Defendant alleges in its Motion that Plaintiff's claim under the CFAA is deficient because "it does not plead a cognizable 'loss' under the statute." [Motion at 6].   When looking at the statute, though, it is clear that 18 U.S.C. § 1030(e)(11) includes within the ambit of compensable "loss" "any reasonable cost to any victim, including . . . revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."   In the instant matter, Plaintiff clearly alleged in Paragraph 20 of his Complaint that while the 500 BTC stolen from him were valued at approximately $2,300,000.00 at the time they were stolen, they were valued on the date of filing the Complaint at approximately $4,500,000.00.[5]   As a consequence of the theft, Plaintiff has lost several million dollars in revenue that he otherwise would have enjoyed had he still been holding the 500 BTC that were wrongfully taken from him and hidden at XAPO and INDODAX.

Additionally, Plaintiff has alleged that through his counsel, he has retained international investigative firm Kroll perform a cryptographic analysis that traced the stolen BTC to XAPO and INDODAX.  [Compl. at ¶ 21].  To the extent it is not apparent that the costs incurred in having Kroll perform that analysis exceeds $5,000.00, Plaintiff can supplement his pleading with such obvious facts in an Amended Complaint, if necessary.

Lastly, Defendant posits that Plaintiff has not satisfied the "*mens rea* element" of § 1030(a)(4) by alleging that Defendant knowingly committed a prohibited act.  [Motion at 5].  However, *Nosal II* explains that the Ninth Circuit has "equated positive knowledge and deliberate ignorance in upholding conspiracy convictions and see no reason to distinguish aiding and abetting liability."  *Nosal II*, *supra* at 1039-1040.  *See also*, *United States v. Ford*, 821 F.3d 63, 74 (1st Cir. 2016) (holding that "willful blindness,"

---

[5] As of the date of this filing, the value has risen to approximately $6,000,000.00.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

including ignoring "red flags," meets the mens rea element of aiding and abetting liability") (cited with approval by *Nosal II*).  In the instant matter, Plaintiff alleged in his Complaint that Defendant aided and abetted the theft of Plaintiff's assets by Defendant's "turning a blind eye to fraudulent and criminal activity" such as the money/asset laundering it allowed the John Doe defendants to carry forth through their account(s) at XAPO.  [Complaint at ¶¶ 34-42].

Because Plaintiff has sufficiently set forth his claim against Defendant under the CFAA, Defendant's Motion should be denied; and Defendant's argument that "the Court should decline to exercise supplemental jurisdiction and dismiss the state law claims" [Motion at 9] should likewise be rejected.

## III.  PLAINTIFF'S CLAIM UNDER CALIFORNIA PENAL CODE § 496 (POSSESSION AND CONCEALMENT OF STOLEN PROPERTY) IS ADEQUATELY PLEADED

To avoid liability under California Penal Code § 496 for possessing and aiding in concealing Plaintiff's stolen property, Defendant's Motion asserts that Defendant did not have actual knowledge that the property it was safeguarding in the John Doe defendants' account(s) was stolen from Plaintiff; therefore, Defendant cannot be held responsible for its role in aiding and concealing the theft.  [Motion at 10].  Defendant's argument, though, sidesteps the crux of Plaintiff's allegations: that Defendant was purposefully ignorant through its conscious failure to adopt adequate KYC and AML policies and procedures -- including any tracing analysis of where funds deposited into XAPO accounts originated.  "'[K]nowingly' in criminal statutes is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it."  *United States v. Heredia*, 483 F.3d 913, 918 (9th Cir. 2007).  *See also*, *United States v. Salman*, No. CR–11–0625 EMC, 2013 WL 6655176, at *3 (N.D. Cal. Dec. 17, 2013) ("Defendant's more general argument, which appears to imply that the deliberate ignorance is inconsistent with a *mens rea* requirement of "willfully" or "knowingly" cannot be reconciled with the Ninth Circuit's recognition that the "substantive justification for the rule is that

deliberate ignorance and   positive knowledge are equally culpable.")   (citing   *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976)).   The Complaint asserts that Defendant has deliberately ignored its KYC and AML obligations and thereby turned a blind eye to the fraudulent and criminal activity it was materially assisting, which satisfies Plaintiff's burden of pleading that Defendant acted "knowingly" in possessing and aiding in concealing Plaintiff's stolen property in violation of Section 496.

Moreover, California courts have made clear that:

> it must be kept in mind that it is the law that even though a person is not aware that property is stolen when he first comes into possession of it, if he subsequently learns of its stolen nature and then conceals or withholds it from its true owner, he is guilty of a violation of section 496 of the Penal Code.  It is also the law that the requisite guilty knowledge can be inferred from circumstantial evidence.

*People v. Scaggs*, 153 Cal.App.2d 339, 352 (1957) (citations omitted).  Not only can Defendant's "guilty knowledge" be inferred from its willful blindness to the source of the John Doe defendants' deposit of Plaintiff's stolen assets -- despite Defendant's obligation to prevent such clear acts of asset laundering -- Defendant certainly knows now (and has known since the commencement of this action, at the latest) that the assets were stolen, yet it continues to hold them against Plaintiff's demand for their return.  Thus, even if Defendant is able to demonstrate at a later stage of this case (albeit not through a Motion to Dismiss) that it did not know and had no reason to know of the purloined nature of Plaintiff's assets when they were deposited with Defendant, Defendant's continued possession of those assets and refusal to return them to Plaintiff are, in and of themselves, violations of California Penal Code § 496.  California courts have held that "[u]nlike the crime of receiving stolen property, however, the crime of concealing stolen property is a continuing offense.  * * *  Both offenses are proscribed by section 496, subdivision (a)." *People v. Grant*, 113 Cal.App.4th 579, 595 (2003).

1
2
3

## IV.   PLAINTIFF'S CLAIM UNDER CALIFORNIA PENAL CODE § 502, *et seq*. (ASSISTING UNLAWFUL ACCESS TO COMPUTER) IS ADEQUATELY PLEADED

4

Defendant's Motion argues that Count III of Plaintiff's Complaint -- a cause of

5

action for violations of California Penal Code § 502 (the "Computer Data Access and

6

Fraud Act" [CDAFA]) -- is deficient because "there is no allegation that [Defendant]

7

was involved in any way with the hacking itself -- whether directly or indirectly" and

8

there is purportedly no allegation that Defendant acted in a manner that knowingly

9

assisted the hackers.  [Motion at 11-12].  The following allegations in the Complaint --

10

which, at this initial stage of the pleadings, must be accepted as true along with all

11

reasonable inferences to be drawn therefrom -- in particular demonstrate the sufficiency

12

of Plaintiff's claim:

13
14
15
16

Paragraph 34: **In the cryptocurrency industry -- just as in the financial and banking industries -- it is standard for custodial firms and exchanges like XAPO and INDODAX to employ rigorous "Know Your Customer" (KYC) and "Anti-Money-Laundering" (AML) policies and procedures.**

17
18
19

Paragraph 35: The general goal of AML is to ensure that firms are able to detect and prevent money laundering and to protect themselves and the financial systems in which they operate from the damage it causes.

20
21

Paragraph 36: KYC is important because the risk-based approach to AML is predicated upon firms knowing who their customers are and what level of money laundering risk they present.

22
23
24

Paragraph 37: **Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.**

25

*          *          *

26
27
28

Paragraph 65: At the time XAPO and INDODAX provided safe harbor and secure vaulting of the funds stolen from Plaintiff, **XAPO** and INDODAX were **aware of the prevalence of money laundering and the need to prevent**

**such activity from taking place** under, or **with the assistance of, their custodianship**.

<u>Paragraph 66</u>: Although XAPO and INDODAX were aware of the necessity for safeguards providing for KYC and AML standards and to protect against trafficking of stolen property, **XAPO** and INDODAX **did not adhere to those safeguards** -- thus **allowing Defendants JOHN DOE NOS. 1-10 to use XAPO** and INDODAX's **vaults as purported "safe havens" to hide the assets stolen from Plaintiff** and others.

<u>Paragraph 67</u>: Instead, **XAPO** and INDODAX **cooperated with Defendants JOHN DOE NOS. 1-10 and provided them substantial assistance** by accepting the cryptocurrency stolen by Defendants JOHN DOE NOS. 1-10.

<u>Paragraph 68</u>: XAPO and INDODAX's **blatant disregard** of applicable security procedures as well as their **willing cooperation with the hackers/thieves constitutes knowing cooperation** with an unauthorized individual accessing Plaintiff's computers, computer systems, and computer networks.

(emphasis added).  To say that Plaintiff has not alleged that Defendant assisted, either directly or indirectly, the John Doe Defendants and did so with a willful blindness to the harmful effects of its actions is to completely ignore the facts pleaded in the Complaint. As much as Defendant wants the problematic facts that demonstrate its  material  assistance in this theft to not exist, they do indeed exist; and Defendant cannot recast (or cast away) those facts through its Motion to Dismiss.

Similarly, Defendant's efforts to obfuscate the issues with arguments about the "extraterritorial reach" of CDAFA are entirely misplaced and must be rejected. Defendant argues that "[n]one of the alleged facts establish that any criminal conduct occurred in, or was directed at, California."  [Motion at 13].  However, Plaintiff patently alleged that his assets were stolen from the account he maintained with a Northern California cryptocurrency exchange and were then deposited, in part, into account(s) that the John Doe defendants maintain with Defendant in Northern California.

[Compl. at ¶¶ 16, 20, 24]. The theft did not occur "entirely outside of California"; rather, it took place entirely within California.

Defendant's argument about the extraterritorial application of CDAFA for victims (like Plaintiff) who are located outside of California is equally misplaced and unavailing. While Defendant presents a cluster of cases generally addressing transactions that cross between California and foreign states/territories, this Court has already directly addressed the extraterritorial reach of CDAFA (along with California's Invasion of Privacy Act [CIPA]) and has concluded that a California resident can certainly be liable to a non-California plaintiff under the statute:

> The Court declines to read the statutes' statements of purpose as a limitation on standing when both statutes expressly allow an action to be brought by "any person" or by an "owner or lessee" without imposing any residency requirements. A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. **To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA and the CCCL[6] with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach.**

*Valentine v. NebuAd, Inc.*, 804 F.Supp.2d 1022, 1028 (N.D. Cal. 2011) (emphasis added).

Lastly, Defendant's argument about Plaintiff purportedly not having properly alleged "damage or loss" under CDAFA are redundant of Defendant's argument under the parallel federal statute (the Computer Fraud and Abuse Act). Plaintiff reasserts here the same proffer made in response to the attack on the CFAA claim and repeats that if additional clarity is required, Plaintiff can provide that clarity in an amended pleading, as needed.

---

[6] The *Valentine* Court referred to California Penal Code § 502 as the "California Computer Crime Law" (CCCL), which is sometimes interchangeably used as an alternative to referring to it as the California Computer Data Access and Fraud Act (CDAFA).

## CONCLUSION

For the reasons set forth above, Plaintiff DENNIS NOWAK respectfully requests that the Court enter an Order denying Defendant XAPO, INC.'s Motion to Dismiss the Complaint, require Defendant to file an Answer to the Complaint within ten (10) days of the date of the Court's Order, and allow this matter to proceed forward without undue delay.

**REIF LAW GROUP, P.C.**

By: */s/ Brandon S. Reif*
          Brandon S. Reif (State Bar No. 214706)
          1925 Century Park East - Suite 1700
          Los Angeles, California 90067
          Telephone:   (310) 494-6500
          E-Mail:        Docket@ReifLawGroup.com

          David C. Silver (Admitted *Pro Hac Vice* -DE 21)
          Jason S. Miller (to be admitted *pro hac vice*)
          **SILVER MILLER**
          11780 W. Sample Road
          Coral Springs, Florida 33065
          Telephone:   (954) 516-6000
          E-mail:        DSilver@SilverMillerLaw.com
          E-mail:        JMiller@SilverMillerLaw.com

*Counsel for Plaintiff Dennis Nowak*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this  12th  day of August 2020 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: **STEVEN P. RAGLAND, ESQ., ERIN E. MEYER, ESQ., VICTOR T. CHIU, ESQ. and JASON S. GEORGE, ESQ.**, KEKER, VAN NEST & PETERS LLP, *Counsel for Defendant Xapo, Inc.*, 633 Battery Street, San Francisco, CA 94111-1809.

          */s/ Brandon S. Reif*
          BRANDON S. REIF