1

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
VICTOR T. CHIU - # 305404
vchiu@keker.com
JASON S. GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

2

3

4

5

6

7

8

Attorneys for Defendant
XAPO, INC.

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12

| | |
|---|---|
| DENNIS NOWAK, an individual, | Case No. 5:20-cv-03643-BLF |
| Plaintiff, | **DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals, | Date:          November 12, 2020<br>Time:          9:00 a.m.<br>Dept.:          Courtroom 3<br>Judge:          Hon. Beth Labson Freeman |
| Defendants. | Date Filed: June 1, 2020 |
| | Trial Date:  None set |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................... 2

    A.  The Court should reject Plaintiff's attempts to broaden the CFAA's reach. .......... 2

        1.  Plaintiff's failure to allege that Xapo, Inc. participated in any hacking requires dismissal. ................................................................. 2

        2.  Plaintiff's Complaint also cannot overcome its failure to adequately allege *mens rea*. ....................................................................... 4

        3.  Plaintiff cannot articulate a viable theory of CFAA "loss." ....................... 5

        4.  The Opposition's argument for civil aiding-and-abetting liability under the CFAA is unavailing. ............................................................... 7

    B.  The Court should decline to exercise jurisdiction over the remaining state law claims. ............................................................................................................... 8

    C.  Plaintiff's Penal Code § 496 claim is fatally flawed. ............................................ 9

        1.  A § 496 claim requires an allegation of actual knowledge. ....................... 9

        2.  Plaintiff has not alleged "actual knowledge" based on the filing of this lawsuit and would not be able to. ...................................................... 10

    D.  Plaintiff's CDAFA claim must be dismissed. ...................................................... 11

        1.  Plaintiff fails to allege any conduct that can support a CDAFA violation. .................................................................................................... 11

        2.  Plaintiff fails to allege the *mens rea* element of his CDAFA claim. ........ 11

        3.  Plaintiff fails to allege "damage or loss" under the CDAFA. ................... 12

    E.  Plaintiff's state law claims have no extraterritorial reach. .................................. 12

        1.  Plaintiff has not alleged any misconduct by Xapo, Inc. committed in or directed at California. ...................................................................... 12

        2.  Plaintiff mischaracterizes Xapo, Inc.'s extraterritoriality argument. ........ 14

    F.  Plaintiff has waived any argument seeking to justify his failure to allege independent facts against Xapo, Inc. ................................................................... 15

    G.  The Court should dismiss with prejudice. ........................................................... 15

III.  CONCLUSION ............................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

4
**Federal Cases**

5
*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-cv-01846-LHK, 2017 WL 3232424 (N.D. Cal. July 28, 2017)..........................2, 6, 15

6

7
*Broidy Capital Management LLC v. Muzin*,
    No. 19-cv-01510-DLF, 2020 WL 1536350 (D.D.C. Mar. 31, 2020), *appeal
8   docketed*, No. 20-7040 (D.C. Cir. April 30, 2020) ................................................................. 11

9
*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)............................................................................................................. 7, 8

10

11
*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ................................................................................. 13

12
*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................................... 11

13

14
*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*,
    No. 09-cv-2751, 2010 WL 4224473 (E.D. Pa. Oct. 22, 2010).................................................. 6

15
*COR Securities Holdings Inc. v. Banc of California, N.A.*,
    No. 17-cv-1403-DOC, 2018 WL 4860032 (C.D. Cal. Feb. 12, 2018) ................................. 7, 8

16

17
*Craig v. Atl. Richfield Co.*,
    19 F.3d 472 (9th Cir. 1994)....................................................................................................... 8

18

19
*DCR Mktg., Inc. v. Pereira*,
    No. 19-cv-3249-JPO, 2020 WL 91495 (S.D.N.Y. Jan. 8, 2020)............................................. 6

20
*Delacruz v. State Bar of Cal.*,
    No. 16-cv-06858-BLF, 2018 WL 3077750 (N.D. Cal. Mar. 12, 2018), *aff'd*,
21   768 F. App'x 632 (9th Cir. 2019).......................................................................................... 5, 6

22
*Dresser-Rand Co. v. Jones*,
23   957 F. Supp. 2d 610 (E.D. Pa. 2013) ....................................................................................... 3

24
*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
    No. 09-cv-00422-PMP, 2011 WL 2847712 (D. Nev. July 15, 2011).............................2, 3, 4
25

26
*Freeman v. DirectTV, Inc.*,
    457 F.3d 1001 (9th Cir. 2006) .................................................................................................. 8

27
*Freeney v. Bank of Am. Corp.*,
28   No. 15-cv-2376-JGB, 2016 WL 5897773 (C.D. Cal. Aug. 4, 2016)....................................... 9

*Glob.-Tech Appliances, Inc. v. SEBA S.A.*,
    563 U.S. 754 (2011)..................................................................................................... 4, 5

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*,
    No. 14-cv-02737-BLF, 2015 WL 1289984 (N.D. Cal. March 20, 2015) ....................1, 2, 3, 9

*Mintel International Group, Ltd. v. Neergheen*,
    No. 08-cv-3939, 2010 WL 145786 (N.D. Ill. Jan. 12, 2010) .................................................. 6

*Mullaney v. Wilbur*,
    421 U.S. 684 (1975)............................................................................................................... 9

*Multiven, Inc. v. Cisco Sys., Inc.*,
    725 F. Supp. 2d 887 (N.D. Cal. 2010) ............................................................................... 12

*Nat'l Collegiate Athletic Ass'n v. Miller*,
    10 F.3d 633 (9th Cir. 1993)................................................................................................. 13

*Oracle Am., Inc. v. Serv. Key, LLC*,
    No. 12-cv-00790-SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ................................... 2

*Pimentel v. Aloise*,
    No. 18-cv-00411-EMC, 2018 WL 6025613 (N.D. Cal. Nov. 16, 2018) ................................. 7

*Ponce v. S.E.C.*,
    345 F.3d 722 (9th Cir. 2003)................................................................................................. 3

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) (en banc).............................................................................. 14

*Synthes, Inc. v. Emerge Medical, Inc.*,
    No. 11-cv-1566, 2012 WL 4205476 (E.D. Pa. Sept. 19, 2012) ............................................. 7

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,
    229 F. Supp. 3d 1284 (S.D. Fla. 2017) ........................................................................... 7, 8

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015)................................................................................................. 3

*United States v. Heredia*,
    483 F.3d 913 (9th Cir. 2007) (en banc) ................................................................................ 9

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) (en banc) .......................................................................1, 2, 3

*United States v. Nosal*,
    No. 08-cr-00237-EMC (N.D. Cal. April 19, 2013) Dkt. 401................................................. 5

*United States v. Salman*,
    No. 11-cr-0625-EMC, 2013 WL 6655176 (N.D. Cal. Dec. 17, 2013) ................................... 9

iii

*Valentine v. NebuAd, Inc.*,
    804 F. Supp. 2d 1022 (N.D. Cal. 2011) ............................................................................ 14

**State Cases**

*Kidron v. Movie Acquisition Corp.*
    40 Cal. App. 4th 1571 (1995) ........................................................................................... 10

*People v. Scaggs*,
    153 Cal. App. 2d 339 (1957) ............................................................................................ 10

*People v. Tessman*,
    223 Cal. App. 4th 1293 (2014) ........................................................................................... 9

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) .................................................................................................... 13

**Federal Statutes**

18 U.S.C. § 2 ............................................................................................................................ 7

18 U.S.C. § 1030 ................................................................................................................2, 4, 6

21 U.S.C. § 841(a)(1) .............................................................................................................. 9

Securities Exchange Act § 10(b) ............................................................................................. 9

**State Statutes**

California Penal Code § 496 .......................................................................................1, 9, 10, 12

California Penal Code § 502 ............................................................................................... 1, 12

**Rules**

Federal Rule of Civil Procedure 9(b) ..................................................................................... 2

**Other Authorities**

Amended Complaint, *Synthes, Inc. v. Emerge Medical, Inc.*, No. 11-cv-1566, 2012
    WL 6051777 (E.D. Pa. Mar. 6, 2012) ............................................................................ 7, 8

iv

1

## I.    INTRODUCTION

2    In an effort to save his defective Complaint, Plaintiff Dennis Nowak's Opposition to

3  Xapo, Inc.'s Motion to Dismiss (Dkt. 26, "Opposition" or "Opp.") ignores controlling law set

4  forth in Xapo, Inc's moving papers and recasts his allegations such that they bear no resemblance

5  to the Complaint.  The Opposition:

6       • Does not cite, much less distinguish, the authorities presented in Xapo, Inc.'s

7          Motion (Dkt. 22, "Motion" or "Mot.") requiring dismissal of Computer Fraud

8          and Abuse Act ("CFAA") claims not premised on unauthorized access to a

9          computer, *see United States v. Nosal* ("*Nosal I*"), 676 F.3d 854 (9th Cir. 2012)

10          (en banc); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*, No. 14-cv-02737-

11          BLF, 2015 WL 1289984 (N.D. Cal. March 20, 2015).  It is undisputed that Xapo,

12          Inc. is not alleged to have accessed Plaintiff's computer without authorization—

13          or even assisted with such access;

14       • Asserts that the Complaint establishes "[t]he theft . . . took place entirely within

15          California," Opp. at 12,[1] when it actually says no such thing;

16       • Fails to address the cases Xapo, Inc. cited to support its Motion to Dismiss

17          Plaintiff's California Penal Code § 496 claim;

18       • Ignores every case cited in the Motion to support the argument that the

19          Comprehensive Computer Data Access and Fraud Act ("CDAFA") claim, Cal.

20          Penal Code § 502 *et seq.*, fails as a matter of law; and

21       • Does not contest—and thus concedes—both that:

22          o The law requires independent allegations against each alleged tortfeasor,

23             yet the Complaint impermissibly lumps entities together without alleging

24             who did what; and

25          o If the federal CFAA claim fails, the Court should decline to exercise

26             supplemental jurisdiction and dismiss the state law claims.

27

28  [1] All citations to page numbers from briefing refer to the page numbers as stamped by ECF.

DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:20-cv-03643-BLF

1389984

1    In short, the points and authorities presented in Xapo, Inc.'s Motion stand largely

2 unrebutted, and nothing raised in the Opposition overcomes the law that requires the Court to

3 dismiss all claims against Xapo, Inc., with prejudice.

4 **II.     ARGUMENT**

5    **A.     The Court should reject Plaintiff's attempts to broaden the CFAA's reach.**

6    Plaintiff's CFAA claim fails for several independent reasons, and his Opposition points to

7 neither allegations nor convincing caselaw that allows the claim to proceed.  To start, Plaintiff

8 does not contest—and thus concedes—that his CFAA claim under 18 U.S.C. § 1030(a)(4)

9 requires that he satisfy the particularized pleading requirements of Federal Rule of Civil

10 Procedure 9(b).  *Oracle Am., Inc. v. Serv. Key, LLC*, No. 12-cv-00790-SBA, 2012 WL 6019580,

11 at *6 (N.D. Cal. Dec. 3, 2012)[2]; *see Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK,

12 2017 WL 3232424, at *14 (N.D. Cal. July 28, 2017) ("'A party waives an argument by failing to

13 make it before the district court . . .'" (quoting *Zixiang Li v. Kerry*, 710 F.3d 995, 1000 n.4 (9th

14 Cir. 2013))).  Because Plaintiff has not sufficiently alleged the elements of Count II for violation

15 of the CFAA, let alone with the requisite particularity, the Court should dismiss the claim.

16    **1.     Plaintiff's failure to allege that Xapo, Inc. participated in any hacking requires dismissal.**

17

18    Plaintiff does not dispute that the Ninth Circuit held in *Nosal I*, 676 F.3d at 863, that the

19 CFAA is an anti-hacking statute.  *See* Opp. at 9-10.  By its "plain language," the CFAA "targets

20 the unauthorized procurement or alteration of information, ***not its misuse or misappropriation***."

21 *Nosal I*, 676 F.3d at 863.  Plaintiff similarly does not contest that this Court and others have held

22 that a CFAA claim cannot stand when the defendant "did not himself access the computer."

23 *Koninklijke*, 2015 WL 1289984, at *4 n.2; *see also Flynn v. Liner Grode Stein Yankelevitz*

24 *Sunshine Regenstreif & Taylor LLP*, No. 09-cv-00422-PMP, 2011 WL 2847712, at *3 (D. Nev.

25 July 15, 2011) (failure to allege that defendants assisted, encouraged, or induced hacker in "the

26 primary violation, the hacking itself," required dismissal of CFAA claim); *see* Opp. at 9-10.

27 [2] In all citations included herein, internal citations and quotation marks have been removed, and

28 emphases added, unless otherwise noted.

1    Because Plaintiff fails to explain, let alone address, why *Nosal I*, *Koninklijke*, and *Flynn* do not

2    foreclose his CFAA claim, it should be dismissed with prejudice.

3          Plaintiff erroneously contends that Paragraphs 39-41 and 59 in the Complaint provide

4    factual support for his CFAA claim.  Opp. at 9-10.  But those paragraphs merely allege that Xapo,

5    Inc.'s security protocols were purportedly deficient (they are not), Compl. ¶ 39; that Xapo, Inc.

6    "knew or should have known" that the Bitcoins were stolen, *id.* ¶ 40; and that Xapo, Inc. provided

7    a "custodial vault[]" for the stolen Bitcoins that purportedly helped the John Doe defendants hide

8    the Bitcoins, *id.* ¶¶ 41, 59.  These allegations do not assert that Xapo, Inc. hacked or assisted in

9    hacking Plaintiff's cryptocurrency account.  Nor does Plaintiff provide any case law supporting

10   the novel proposition that allegedly inadequate security protocols or the provision of crypto

11   banking services that a hacker utilizes after a hack can support a CFAA claim.  *See* Opp. at 10-11.

12         Plaintiff relies on an aiding-and-abetting theory to try to save his CFAA claim.  Even if

13   the CFAA did provide for civil aiding-and-abetting liability (it does not for reasons discussed

14   below and in Xapo, Inc.'s Motion at 15-16), the Complaint fails to state a claim.  To be liable as

15   an aider and abettor, a defendant must "provide[] substantial assistance in the primary

16   violation."  *Ponce v. S.E.C.*, 345 F.3d 722, 737 (9th Cir. 2003).  If, as here, a defendant has no

17   hand in the primary violation—a computer hack—it cannot be liable for aiding and abetting that

18   offense, even if it uses the "hacked information after the fact."  *Flynn*, 2011 WL 2847712, *3; *see*

19   *also Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610, 615 (E.D. Pa. 2013) ("[Plaintiff] provides

20   no legal basis in the CFAA or otherwise to justify imputing liability from the individuals who

21   access a computer without authorization to others *who may eventually benefit* from their

22   actions.").  As the Ninth Circuit has held, the CFAA forbids "unauthorized *access*, not subsequent

23   unauthorized *use*."  *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (emphasis in

24   original).

25         Here, there is no allegation whatsoever that Xapo, Inc. assisted with, induced, or

26   participated in the John Doe defendants' intrusion into Plaintiff's Bitcoin wallet.  Therefore, even

27   if there were civil CFAA liability for aiding and abetting, the Complaint fails to adequately allege

28   such liability.  Indeed, that was the exact holding in *Flynn*—yet another case relied upon in Xapo,

1   Inc.'s Motion that the Opposition does not contest, distinguish, or even address.  *Flynn* explained

2   that, even if the CFAA authorized civil aiding-and-abetting liability, the plaintiff's CFAA claim

3   failed because the complaint only "allege[d] that Defendants were 'recipients of the "hacked"

4   information' and used the hacked information knowing its illicit source."  2011 WL 2847712, at

5   *3.  These allegations did not state an aiding-and-abetting claim because the plaintiff failed to

6   "allege [that] Defendants substantially assisted, or even encouraged or induced, [the hacker] in

7   the primary violation, the hacking itself."  *Id.*  Similarly, Xapo, Inc. is not alleged to have had any

8   role whatsoever in "the hacking itself."  Indeed, there is no allegation that Xapo, Inc. had actual

9   knowledge that Plaintiff's Bitcoin was stolen, much less that it purportedly came into the

10   possession of the Doe defendants through an intrusion into Plaintiff's Bitcoin wallet.

11         Because Plaintiff's Opposition confirms that his CFAA claim relies solely on Xapo, Inc.'s

12   alleged conduct ***after*** the hackers accessed his computer, and that Xapo, Inc. was not involved in

13   the hack, amendment is futile and the Court should dismiss the CFAA claim with prejudice.

### 2.         Plaintiff's Complaint also cannot overcome its failure to adequately allege *mens rea*.

16         Plaintiff's Opposition does not contest, and thus concedes, that the Complaint lacks any

     allegation that Xapo, Inc. acted "knowingly and with the intent to defraud"—an element of 18

17   U.S.C. § 1030(a)(4)—and fails to even allege that Xapo, Inc. knew about the hackers'

18   unauthorized access.  *See* Opp. at 11-12; Mot. at 12.  Unable to overcome this infirmity, the

19   Opposition asserts without basis that Xapo, Inc. was willfully blind or deliberately ignorant about

20   the hack.  But this willful blindness theory does not, and cannot, overcome the fact (as discussed

21   above) that Xapo, Inc. had nothing to do with "the hacking itself" and therefore cannot be liable

22   under the CFAA.

23         Moreover, the Complaint fails to allege facts meeting the "willful blindness" threshold.

24   As the U.S. Supreme Court has held, "the doctrine of willful blindness" requires that "(1) The

25   defendant must subjectively believe that there is a high probability that a fact exists and (2) the

26   defendant must take deliberate actions to avoid learning of that fact."  *Glob.-Tech Appliances,*

27   *Inc. v. SEBA S.A.*, 563 U.S. 754, 769 (2011).  Likewise, the district court's "deliberate ignorance"

28   instruction in *Nosal* stated that the jury could "find that the defendant acted knowingly" only if it

4

1   found that the defendant (1) "was aware of a high probability" that certain individuals had, among

2   other things, "gained unauthorized access to a computer" and (2) "deliberately avoided learning

3   the truth."  Court's Final Complete Jury Instructions, *United States v. Nosal*, No. 08-cr-00237-

4   EMC (N.D. Cal. April 19, 2013) Dkt. 401 at 49.

5          Plaintiff points to Paragraphs 34 to 42 of the Complaint in his attempt to demonstrate

6   willful blindness by Xapo, Inc.  Opp. at 12.  But all that these nine paragraphs allege is that Xapo,

7   Inc. did not implement and use adequate security policies to prevent individuals from depositing

8   stolen Bitcoins into Xapo wallets.  *See* Compl. ¶¶ 34-42.  Even if this were true (it is not), none of

9   these allegations suggest that (1) Xapo, Inc. had a subjective belief that there was a "high

10  probability" the John Doe defendants hacked Plaintiff's Bitcoin account, or (2) Xapo, Inc. took

11  "deliberate actions to avoid learning of [this] fact."  *Glob.-Tech Appliances*, 563 U.S. at 769.

12  Paragraphs 34 to 42 do not explain how Xapo, Inc.'s security protocols regulating deposits could

13  have had any effect on or provided any knowledge related to the alleged hack of Plaintiff's

14  Bitcoin account involving only third parties.  Indeed, these Paragraphs fail to explain how Xapo,

15  Inc. could have known the hackers' identities when they purportedly hacked Plaintiff's account;

16  how Xapo, Inc. could have known that they would access Plaintiff's cryptocurrency account in

17  particular; and how Xapo, Inc. took any action to avoid learning about the hack.  In short,

18  Plaintiff has not, and cannot, allege any facts pointing to Xapo, Inc.'s participation in or willful

19  blindness about the hack because none exist.

20         Thus, Plaintiff's failure to plead the *mens rea* element of his CFAA claim independently

21  requires dismissal.

22                    **3.       Plaintiff cannot articulate a viable theory of CFAA "loss."**

23         In the Opposition, Plaintiff does not dispute—and thus concedes—that a "loss" under the

24  CFAA is limited to "costs actually related to computers."  *Delacruz v. State Bar of Cal.*, No. 16-

25  cv-06858-BLF, 2018 WL 3077750, at *8 (N.D. Cal. Mar. 12, 2018), *aff'd*, 768 F. App'x 632 (9th

26  Cir. 2019); *see* Opp. at 11; Mot. at 13.  As both Plaintiff's Complaint and Opposition confirm, his

27  theory of CFAA "loss" relies on the value of his allegedly stolen Bitcoins.  *See* Compl. ¶¶ 60-61;

28  Opp. at 12.  But the value of cryptocurrency is not a "loss" under the CFAA because it is

DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:20-cv-03643-BLF

1389984

1    unrelated to redressing damage to a computer or computer system.  *See DCR Mktg., Inc. v.*

2    *Pereira*, No. 19-cv-3249-JPO, 2020 WL 91495, *3 (S.D.N.Y. Jan. 8, 2020) (stolen funds from

3    bank accounts were not a CFAA loss); *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*,

4    No. 09-cv-2751, 2010 WL 4224473, at *7 (E.D. Pa. Oct. 22, 2010) (money transferred away from

5    plaintiffs' bank accounts without authorization was not a CFAA loss).  Plaintiff's Opposition fails

6    to address, let alone distinguish, *Delacruz, DCR Marketing*, or *Clinton Plumbing*.

7            Plaintiff now, however, claims that he can cure this pleading defect by alleging that he

8    spent money hiring "international investigative firm Kroll [to] perform a cryptographic analysis

9    that traced the stolen [Bitcoins] to XAPO."  Opp. at 11.  But this loss theory is not actually pled in

10   the Complaint and thus cannot save the CFAA claim from dismissal.  Moreover, as *Mintel*

11   *International Group, Ltd. v. Neergheen*, No. 08-cv-3939, 2010 WL 145786 (N.D. Ill. Jan. 12,

12   2010), recognized, this is not a valid theory of CFAA loss.  The *Mintel* plaintiff asserted that its

13   CFAA loss "consist[ed] of the fees that it paid to its expert to assess [defendant's] improper

14   actions," where the "expert was not assessing whether [defendant] had 'damaged' [plaintiff's]

15   computers or data."  *Id.* at *10.  The court held that these expert fees were not a CFAA loss

16   because the "alleged loss must relate to the investigation or repair of a computer or computer

17   system following a violation that caused impairment or unavailability of data or interruption of

18   service."  *Id.*  Xapo Inc.'s Motion relied on *Mintel* for this point, Mot. at 13, and Plaintiff's

19   Opposition does not distinguish or discuss the case—nor does it cite any law at all in support of

20   Plaintiff's "loss" theory.

21           Plaintiff's Opposition also does not address the fact—raised in the Motion at 14-15—that

22   he fails to allege any CFAA "damage," defined as "any impairment to the integrity or availability

23   of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  Plaintiff, therefore, has

24   waived any argument to the contrary.  *See Apple Inc.*, 2017 WL 3232424, at *14.

25           Because the Complaint does not plead a valid "loss" or "damage," his CFAA claim should

26   be dismissed with prejudice.

27   \\\

28   \\\

DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:20-cv-03643-BLF

1389984

1

2

#### 4.     The Opposition's argument for civil aiding-and-abetting liability under the CFAA is unavailing.

3

The Opposition argues that the CFAA includes civil aiding-and-abetting liability, but

4

Plaintiff does not address Xapo, Inc.'s arguments on this issue and cannot point to any portion of

the statute that supports his claim.

5

6

Plaintiff relies on two district court cases to argue that the CFAA recognizes a cause of

action for aiding and abetting.  Opp. at 10.  As Xapo, Inc. explained in its Motion, *COR Securities*

7

*Holdings Inc. v. Banc of California, N.A.*, No. 17-cv-1403-DOC, 2018 WL 4860032, at \*7 (C.D.

8

Cal. Feb. 12, 2018), is unpersuasive because it allowed a civil CFAA aiding-and-abetting theory

9

based on criminal, not civil, cases.  Mot. at 15-16.  Plaintiff does not dispute that, although

10

Congress enacted a generic aiding-and-abetting statute that applies to all federal criminal offenses

11

under 18 U.S.C. § 2, no such provision exists for civil causes of action.  *Pimentel v. Aloise*, No.

12

18-cv-00411-EMC, 2018 WL 6025613, at \*21 (N.D. Cal. Nov. 16, 2018); *see also Cent. Bank of*

13

*Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182, 190-91 (1994)

14

(requiring "a statute-by-statute approach to civil aiding and abetting liability" and refusing to

15

infer such liability based on the criminal aiding-and-abetting statute, 18 U.S.C. § 2).

16

Plaintiff's reliance on *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d

17

1284 (S.D. Fla. 2017), fares no better.  As an initial matter, *Tracfone Wireless* held that the

18

plaintiff stated a CFAA claim because the defendant allegedly "provided PINs to customers

19

which allowed them to access the plaintiff's computers." *Id.* at 1297.  By contrast (as discussed

20

above), Plaintiff here has not alleged that Xapo, Inc. had any causal role in the hack of his Bitcoin

21

account.  Further, *Tracfone Wireless*'s analysis was flawed because it relied on *Synthes, Inc. v.*

22

*Emerge Medical, Inc.*, No. 11-cv-1566, 2012 WL 4205476 (E.D. Pa. Sept. 19, 2012), to hold that

23

the CFAA authorized claims for civil aiding and abetting.  *Tracfone Wireless*, 229 F. Supp. 3d at

24

1296.  But *Synthes* did not address whether a plaintiff could assert an aiding-and-abetting claim

25

under the CFAA, and the plaintiff's complaint did not have a claim for CFAA aiding and

26

abetting.  *See* Amended Complaint, No. 11-cv-1566, 2012 WL 6051777, ¶¶ 250-60 (E.D. Pa.

27

Mar. 6, 2012).  Instead, the plaintiff in *Synthes* pressed a CFAA claim by alleging that the

28

defendants were actually involved in the hacking because they "induc[ed] and encourage[d]

7

1  others to access [plaintiff's] computer systems." *Id.* ¶ 152.

2         Moreover, Plaintiff's reading of both *COR Securities Holdings* and *Tracfone Wireless*

3  conflicts with binding precedent that the Opposition disregards even though it is discussed in

4  Xapo, Inc.'s Motion.  In *Central Bank*, the U.S. Supreme Court instructed that "when Congress

5  enacts a statute under which a person may sue and recover damages from a private defendant for

6  the defendant's violation of some statutory norm, there is no general presumption that the plaintiff

7  may also sue aiders and abettors."  511 U.S. at 182.  And, "if . . . Congress intended to impose

8  aiding and abetting liability [in a statute] it would have used the words 'aid' and 'abet' in the

9  statutory text." *Id.* at 177.  The Ninth Circuit has held the same, emphasizing that "[t]here is . . .

10 nothing unreasonable about limiting liability to the class of individuals or entities named by

11 Congress in a statute." *Freeman v. DirectTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006).  Neither

12 *COR Securities Holdings* nor *Tracfone Wireless* addressed *Central Bank*'s holding or squared

13 their reasoning with this authority.  The Ninth Circuit has also cautioned that "courts should not

14 ***implicitly read*** secondary liability into [a] statute," *Freeman*, 457 F.3d at 1006, but *COR*

15 *Securities Holdings* did just that, reasoning "the Ninth Circuit ***implicitly recognized*** aiding and

16 abetting liability under the CFAA, at least for criminal violations," 2018 WL 4860032, at *7.

17        In sum, the CFAA's text does not authorize civil claims for aiding and abetting, and

18 binding precedent prohibits reading such language into the statute.

19        **B.     The Court should decline to exercise jurisdiction over the remaining state law
               claims.**
20
          Xapo, Inc. raised two jurisdictional arguments in its Motion, neither of which Plaintiff
21
   substantively opposes.  First, Xapo, Inc. requested that the Court decline to exercise supplemental
22
   jurisdiction over the state law claims after dismissing the CFAA cause of action.  Mot. at 16.
23
   Plaintiff's only response is that the Court should not dismiss the CFAA claim.  Opp. at 12.
24
   Accordingly, if the Court dismisses the only federal cause of action in this case, Plaintiff has
25
   waived any argument that the exercise of supplemental jurisdiction is appropriate.
26
          Second, Xapo, Inc. explained that diversity jurisdiction does not exist in this case because
27
   Plaintiff is a foreign citizen who has sued at least two foreign defendants.  *See Craig v. Atl.*
28
   *Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994); Mot. at 16.  Plaintiff does not address this point.

                                                    8

DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
                            Case No. 5:20-cv-03643-BLF

1389984

1   Opp. at 12.  Thus, because Plaintiff's CFAA claim is irremediably flawed, and neither federal

2   question nor diversity jurisdiction exists, this Court should decline to exercise supplemental

3   jurisdiction over the two remaining state law claims.  *See Koninklijke*, 2015 WL 1289984, at \*6.

4             **C.**      **Plaintiff's Penal Code § 496 claim is fatally flawed.**

5                 **1.**      **A § 496 claim requires an allegation of actual knowledge.**

6          If this Court nevertheless exercises jurisdiction over Plaintiff's state law claims, they still

7   fail.  California law dictates that Plaintiff's receipt-of-stolen-property claim under California

8   Penal Code § 496 requires ***actual knowledge*** that the property was stolen.  *People v. Tessman*,

9   223 Cal. App. 4th 1293, 1302 (2014); *Freeney v. Bank of Am. Corp.*, No. 15-cv-2376-JGB, 2016

10  WL 5897773, at \*12 (C.D. Cal. Aug. 4, 2016) (applying *Tessman*'s actual knowledge

11  requirement to civil § 496 claim against banks).  As detailed in Xapo, Inc.'s Motion, there are no

12  allegations that Xapo, Inc. had actual knowledge that the cryptocurrency was stolen.  *See* Mot. at

13  17.  The Opposition concedes that no such allegations exist and fails to address either *Tessman* or

14  *Freeney*—much less distinguish the Complaint's allegations from the those in *Freeney*, where the

15  court held that the plaintiff failed to plead actual knowledge.  *See* Opp. at 12-13.

16         Instead, Plaintiff repeats the canard that Xapo, Inc. "deliberately ignored" security

17  protocols and that this satisfies the knowledge requirement.  Opp. at 13.  Not so.  To begin with,

18  Plaintiff's reliance on federal authorities is misplaced because they discuss the *mens rea*

19  requirement for federal, not state, criminal offenses.  *See United States v. Heredia*, 483 F.3d 913,

20  918-919 (9th Cir. 2007) (en banc) (possession with intent to distribute under 21 U.S.C. §

21  841(a)(1)); *United States v. Salman*, No. 11-cr-0625-EMC, 2013 WL 6655176, at \*2 (N.D. Cal.

22  Dec. 17, 2013) (Section 10(b) of the Securities Exchange Act).  These cases cannot supplant the

23  actual knowledge requirement mandated by *Tessman*, a California state court decision, because,

24  as the U.S. Supreme Court has "repeatedly . . . held," state courts "are the ultimate expositors of

25  state law and that [federal courts] are bound by their constructions except in extreme

26  circumstances . . . ."  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Plaintiff does not cite a

27  single California decision holding that a § 496 claim can turn on deliberate ignorance, Opp. at 12-

28  13, and thus his sole reliance on federal caselaw is unavailing.

DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:20-cv-03643-BLF

1389984

But even if deliberate ignorance were sufficient to meet the *mens rea* requirement for a § 496 claim, Plaintiff still has not alleged it.  As with his CFAA claim, Plaintiff has not alleged that Xapo, Inc. (1) subjectively believed that there was a high probability that the Bitcoins were stolen and (2) took deliberate steps to avoid learning of the theft.  *See* Section II.A.2.

### 2.  Plaintiff has not alleged "actual knowledge" based on the filing of this lawsuit and would not be able to.

Despite his assertion to the contrary, Plaintiff has not alleged actual knowledge based on "commencement of this action."  *See* Opp. at 13.  According to Plaintiff, because he filed this lawsuit, Xapo, Inc. must now know that the Bitcoins allegedly in its possession are stolen.  *Id.* This argument fails for multiple reasons.

Plaintiff relies on *People v. Scaggs*, 153 Cal. App. 2d 339 (1957), to argue that a defendant who "subsequently learns of [an item's] stolen nature and then conceals or withholds it from its true owner" may be liable under § 496.  *Id.* at 352.  But simply filing a complaint with *unproven* allegations does not confer upon Xapo, Inc. *actual knowledge* that the Bitcoins purportedly held in the John Doe defendants' account were stolen.  California courts have rejected such a theory.  In *Kidron v. Movie Acquisition Corp.*, for example, a plaintiff sued for civil conspiracy to defraud and contended that the defendant had actual knowledge about the fraud because it received a complaint charging its co-defendants with fraud.  *See* 40 Cal. App. 4th 1571, 1586 (1995).  The Court held that the defendant's "receipt of [plaintiff's] complaint . . . cannot be construed as evidence of [defendant's] knowledge of [the co-defendants'] alleged scheme."  *Id.*  "Rather, service of the complaint provided [defendant] with its first notice of [plaintiff's] *claim* that [the co-defendants] had" engaged in misconduct.  *Id.* (emphasis in original).  Thus, the plaintiff improperly "equate[d] knowledge of the *claim* of fraud with *actual* knowledge of fraud."  *Id.* (emphasis in original).  In *Kidron*, the plaintiff "cite[d] no authority for the proposition that, in the context of conspiracy, knowledge sufficient to arouse suspicion that an allegation *may* be true, is equivalent to positive knowledge that the allegation *is* true."  *Id.* (emphasis in original).  Likewise, Plaintiff here has not offered any authority that filing a lawsuit alleging that the John Doe defendants stole his Bitcoins and deposited them in an account they opened with "XAPO" writ large gave Xapo, Inc. actual knowledge that the Bitcoins held in that

10

1    account were stolen.  *See* Opp. at 13.

2           Additionally, while the Complaint alleges that one of the hackers opened an account with

3    "XAPO" and deposited some of the purportedly stolen Bitcoins in his account, it does *not* allege

4    that Xapo, Inc. was notified that the Bitcoins may have been stolen—much less that Xapo, Inc.

5    exercised any possession or control over the Bitcoins after it was shown to be stolen.  The

6    Plaintiff simply does not—*and cannot*—allege that Xapo, Inc. retained any possession or control

7    over the Bitcoins at issue after learning that it may have been stolen.

8           **D.      Plaintiff's CDAFA claim must be dismissed.**

9                  **1.      Plaintiff fails to allege any conduct that can support a CDAFA**
                            **violation.**
10

11          Plaintiff does not dispute, and thus concedes, that the CDAFA cannot apply to those "who

took no active role in tampering with, or in gaining unauthorized access to computer systems."
12
     *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011).  Nor does Plaintiff contest
13
     that, under *Broidy Capital Management LLC v. Muzin*, No. 19-cv-01510-DLF, 2020 WL
14
     1536350, at *17 (D.D.C. Mar. 31, 2020), *appeal docketed*, No. 20-7040 (D.C. Cir. April 30,
15
     2020), a failure to allege that the defendant provided any "method of accessing a computer
16
     system" merits dismissal of a CDAFA claim.  Indeed, the Opposition does not even address these
17
     authorities from Xapo, Inc.'s Motion.  Because Plaintiff fails to allege that Xapo, Inc. tampered
18
     with, gained unauthorized access to, or provided the John Doe defendants with a method of
19
     accessing Plaintiff's Bitcoin account, he cannot state a CDAFA claim.
20
            Contrary to Plaintiff's argument, Paragraphs 34-37 and 65-68 of the Complaint do not
21
     contain any allegations that could sustain a CDAFA claim.  Opp. at 14-15.  Again, these
22
     Paragraphs allege (without any factual basis or well-pleaded allegations) that Xapo, Inc. did not
23
     implement or use adequate security protocols and provided "safe harbor" to the stolen Bitcoins.
24
     *See* Compl. ¶¶ 34-37, 65-68.  Even if these allegations were true (they are not), they still fail to
25
     allege any involvement by Xapo, Inc. with the alleged hack of Plaintiff's cryptocurrency account.
26
     Rather, these allegations involve conduct *after* the hack, which cannot sustain a CDAFA claim.
27
                  **2.      Plaintiff fails to allege the *mens rea* element of his CDAFA claim.**
28
            Plaintiff has not alleged the requisite mental state for his CDAFA claim.  At a minimum, a

                                                    11
     DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
                                  Case No. 5:20-cv-03643-BLF
     1389984

CDAFA violation requires that the defendant "knowingly" assisted the hackers.  Cal. Penal Code § 502(c)(6).  Other provisions of CDAFA require a specific intent to "defraud" or steal.  *Id.* § 502(c)(1).  On this score, Plaintiff's only argument is that Xapo, Inc. was "willful[ly] blind[] to the harmful effects" of allegedly not implementing or using adequate security protocols.  Opp. at 15.  Even if this allegation were true (it is not), it still does not allege that Xapo, Inc. knowingly helped the John Doe defendants break into Plaintiff's account—let alone that Xapo, Inc. had any intent to defraud Plaintiff.

### 3.      Plaintiff fails to allege "damage or loss" under the CDAFA.

Lastly, Plaintiff's failure to allege a cognizable CDAFA injury mandates dismissal of the claim.  *See* Cal. Penal Code § 502(e)(1) (requiring plaintiff to show "damage or loss" to bring "a civil action against the violator" under the CDAFA).  Plaintiff does not dispute that courts interpret the CDAFA's definition of "damage or loss" coextensively with the CFAA's "damage" and "loss" provisions.  *See Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 890, 895 (N.D. Cal. 2010) (observing that CDAFA and CFAA provisions "do not differ materially"); *see* Opp. at 16.  Thus, as Xapo, Inc. set forth in its Motion, "damage or loss" under the CDAFA is limited to costs associated with redressing the impairment of a computer system or data.  Mot. at 19.

The Opposition fails to overcome any of this.  Instead, Plaintiff simply "reasserts" the same argument from his CFAA claim in support of his CDAFA claim.  *See* Opp. at 16.  In other words, he contends that the cost of hiring Kroll to trace his stolen Bitcoins is a recoverable CDAFA "damage or loss."  *See id.* at 11.  But this argument fails for the same reasons that Plaintiff's CFAA claim fails: the Complaint does not plead it as a CDAFA damage or loss, and the cost of hiring Kroll is unrelated to assessing or remedying any damage to Plaintiff's computer system or data.  Therefore, Plaintiff's CDAFA claim cannot stand.  *See* Section II.A.3., *supra*.

### E.      Plaintiff's state law claims have no extraterritorial reach.

#### 1.      Plaintiff has not alleged any misconduct by Xapo, Inc. committed in or directed at California.

Plaintiff's state law claims under California Penal Code § 496 and the CDAFA fail because he seeks to assert them extraterritorially.  Plaintiff's Opposition does not dispute three key points of law:

12

1    • California statutes contain a presumption against extraterritorial effect, *Sullivan v. Oracle*

2        *Corp.*, 51 Cal. 4th 1191, 1207 (2011);

3    • the dormant Commerce Clause forbids the extraterritorial application of state statutes,

4        *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 638-39 (9th Cir. 1993); and

5    • a non-resident's claims that lack a nexus with California present due process problems,

6        *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000).

7    As Xapo, Inc.'s Motion explained, all three principles foreclose Plaintiff's state law claims

8    because he fails to allege any misconduct by Xapo, Inc. committed in or directed at California.

9    *See* Mot. at 20-21; *see also* Opp. at 15-16 (failing to address these arguments).

10       Plaintiff's Opposition asserts that because (1) the theft "took place entirely within

11   California" and (2) the John Doe defendants had "account(s) . . . with [Xapo, Inc.] in Northern

12   California," Opp. at 15, the application of California law is appropriate.  But neither of those

13   assertions appears in Plaintiff's Complaint—they are stated for the first time in the Opposition

14   and thus cannot support the claims.

15       *First*, the Complaint does not allege that the hack of Plaintiff's cryptocurrency account

16   and theft occurred in California.  Instead, Plaintiff alleges that the John Doe defendants of

17   unknown citizenship accessed Plaintiff's account that was maintained at a "Northern California-

18   based cryptocurrency exchange," which he then refers to as "U.S.A. EXCHANGE."  Compl.

19   ¶¶ 16, 20.  But simply because a company is based in Northern California does not mean that a

20   foreign citizen using its services interacts with that company's facilities in this state.  The

21   Complaint does not, for example, allege that the "Northern California-based cryptocurrency

22   exchange" maintains accounts opened by German residents like Plaintiff in California as opposed

23   to somewhere in Europe.  Nor does the Complaint allege that the John Doe defendants infiltrated

24   servers housed in this state—as opposed to servers in Germany, Ireland, New York, or elsewhere.

25   The Complaint in fact does not even allege that the hackers infiltrated the exchange itself rather

26   than Plaintiff's personal computer, which presumably was with him in Germany.  *See* Compl. ¶¶

27   1 ("DENNIS NOWAK is a natural person and is a resident of Germany").  Indeed, the allegation

28   that "Plaintiff's account at U.S.A. EXCHANGE was infiltrated," Compl. ¶ 20, provides no

13

1    specifics—and certainly no well-pleaded facts—that establish conduct in or directed at California.

2         Moreover, there is no allegation Xapo, Inc. housed or serviced any account that may have

3    been used to deposit any stolen Bitcoins in California.  Instead, Plaintiff alleges that on "February

4    7, 2020" about 20 Bitcoin allegedly stolen from Plaintiff were "held in two hot wallet addresses

5    controlled by XAPO," where "XAPO" refers both to Delaware corporation Xapo, Inc. and

6    foreign corporation Xapo (Gibraltar) Limited ("Xapo Gibraltar").  Compl. ¶¶ 4, 24.

7         ***Second***, to the extent Plaintiff suggests that Xapo, Inc.'s alleged business presence in

8    California permits the assertion of California law, the dormant Commerce Clause forbids this

9    result.  The Ninth Circuit has "easily conclude[d]" that a California statute seeking to regulate

10    conduct outside California based solely on a seller's residency in California "violates the dormant

11    Commerce Clause."  *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015)

12    (en banc).  Xapo, Inc., too, cannot be liable for conduct outside of California simply because it

13    allegedly has its principal place of business here.  Plaintiff does not allege that the John Doe

14    defendants had accounts with Xapo, Inc. in Northern California, or that Xapo, Inc. did anything in

15    California that has any connection to this case.  Because Plaintiff is a German resident and the

16    John Doe defendants purportedly deposited most of the stolen Bitcoin in an Indonesian account,

17    *see* Compl. ¶ 25, it is not reasonable to assume a California nexus absent well-pleaded facts

18    establishing one.

19         **2.**       **Plaintiff mischaracterizes Xapo, Inc.'s extraterritoriality argument.**

20         Plaintiff's contention that the CDAFA can protect litigants who live outside of California

21    misses the mark.  *See* Opp. at 16 (discussing *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022,

22    1028 (N.D. Cal. 2011)).  Xapo, Inc. never argued that Plaintiff's residency outside of California,

23    by itself, bars the assertion of state law claims.  *See* Mot. at 20-21.  Rather, Xapo, Inc.'s point is

24    that "[n]one of the alleged facts establish that any criminal conduct occurred in, or was directed

25    at, California."  *Id.* at 20.  This stands unrefuted, and Plaintiff's reliance on *Valentine* cannot save

26    his state law claims because that case only addressed whether an out-of-state resident had

27    statutory standing to assert a claim under the CDAFA where "the Complaint *d[id]* allege conduct

28    in California" and, as a result, the presumption against extraterritoriality "d[id] not apply."   804

DEFENDANT XAPO, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 5:20-cv-03643-BLF

1389984

1    F. Supp. 2d at 1026 n.3 (emphasis in original).

2          In sum, Plaintiff's claims under the California Penal Code cannot be applied

3    extraterritorially and must be dismissed for this additional reason.

4          **F.     Plaintiff has waived any argument seeking to justify his failure to allege
                independent facts against Xapo, Inc.**

5          As Xapo, Inc. detailed in its Motion, Plaintiff muddled the parties' identities by

6    combining allegations against Xapo, Inc. and Xapo Gibraltar, but the law requires independent

7    allegations against each defendant.  The Complaint, therefore, fails to state any claim against

8    Xapo, Inc.  *See* Mot. at 21-22.  Because Plaintiff's Opposition fails entirely to address this point

9    and Xapo, Inc.'s authorities supporting it, he has waived any argument to the contrary.  *See Apple*

10   *Inc.*, 2017 WL 3232424, at *14.  Plaintiff's obfuscation of what role Xapo, Inc. and Xapo

11   Gibraltar allegedly played in this dispute requires dismissal of all three causes of action.

12         **G.     The Court should dismiss with prejudice.**

13         Plaintiff's Opposition confirms that dismissal of his Complaint with prejudice is merited.

14   Plaintiff has offered nothing that could cure the many pleading defects identified in Xapo, Inc.'s

15   Motion.  Thus, any amendment would be futile, and this Court should dismiss with prejudice.

16   **III.    CONCLUSION**

17         For all these reasons and those stated in Xapo, Inc.'s Motion to Dismiss, this Court should

18   dismiss Plaintiff's entire Complaint and all three of its causes of action against Xapo, Inc., with

19   prejudice.

20

21

22   Dated:  August 19, 2020                          KEKER, VAN NEST & PETERS LLP

23
                                            By:    *s/Steven P. Ragland*
24                                                 STEVEN P. RAGLAND
                                                   ERIN E. MEYER
25                                                 VICTOR T. CHIU
                                                   JASON S. GEORGE
26
                                                   Attorneys for Defendant
27                                                 XAPO, INC.

28

                                            15