1
2
3
4

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

5
6

Specially Appearing as Counsel for
XAPO (GIBRALTAR) LIMITED

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

DENNIS NOWAK, an individual,

12

Plaintiff,

13

v.

14
15
16

XAPO, INC., a Delaware corporation; XAPO
(GIBRALTAR) LIMITED, a foreign
corporation; INDODAX, a foreign company;
and JOHN DOE NOS. 1-10, individuals,

17

Defendants.

18

Case No. 5:20-cv-03643-BLF

**DECLARATION OF STEVEN P.
RAGLAND IN SUPPORT OF
DEFENDANT XAPO (GIBRALTAR)
LIMITED'S ADMINISTRATIVE
MOTION TO ENLARGE TIME TO
RESPOND TO COMPLAINT**

Dept.:      Courtroom 3 – 5th Floor
Judge:      Hon. Beth Labson Freeman

Date Filed:  June 1, 2020

Trial Date:  None set

19
20
21
22
23
24
25
26
27
28

I, Steven P. Ragland, hereby declare:

1.      I am duly licensed to practice law in the State of California and am a member of the law firm Keker, Van Nest & Peters LLP, specially appearing as counsel for Xapo (Gibraltar) Limited in this action.  The information in this declaration is based on my own personal knowledge and if called upon to testify, I could and would competently testify thereto.

2.      Attached as **Exhibit A** is a true and correct copy of the service packet indicating that a Bailiff of the Supreme Court of Gibraltar served the summons and Complaint for this matter on Xapo (Gibraltar) Limited on September 25, 2020 pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents.

3.      I sought, but was unsuccessful in securing, a stipulation for an adequate extension of time of Xapo (Gibraltar) Limited's deadline to respond to the Complaint.  On September 29, 2020, I asked Plaintiff's counsel for a 60-day extension to ensure adequate time for the Court's ruling on Xapo, Inc.'s motion, reasoning that "the currently-pending motion by Xapo, Inc. set for hearing on November 12 may . . . affect the pleadings, result in an amended complaint or narrow the issues in dispute."  I also invited Plaintiff's counsel to suggest another reasonable approach, writing "please let me know . . . if you have another proposal (e.g., response due 14 days after ruling on pending motion to dismiss, or filing of any amended complaint)."  On October 1, 2020, Plaintiff's counsel responded and refused Xapo (Gibraltar) Limited's proposal, agreeing to only a one-week extension—making the response due on October 23—without explanation.  On the same day, I responded that one week was appreciated but insufficient because Xapo (Gibraltar) Limited's motion "will at a minimum be narrowed—and possibly even mooted—by the Court's order following the November 12 hearing on Xapo, Inc.'s motion."  I indicated that Xapo (Gibraltar) Limited "will ask the Court for additional time beyond October 23 to avoid wasting time, resources, and money on a needless briefing cycle at this time."  Attached as **Exhibit B** is a true and correct copy of the email correspondence between myself and counsel for Plaintiff Dennis Nowak on September 29, 2020 and October 1, 2020.

4.      As of the filing of this Administrative Motion, Plaintiff's counsel has not responded to my final email on October 1, 2020.

5.     A schedule has not yet been set in this case and, to my knowledge, the requested extension will have no effect on any existing court deadline or the case schedule.

6.     The only previous time modification in this case was the stipulated extension of Xapo, Inc.'s deadline to respond to the Complaint from June 29, 2020 to July 29, 2020, which this Court approved.  Dkt. No. 19.

7.     Xapo (Gibraltar) Limited will be prejudiced if it is not provided an extension until after the Court rules on Xapo, Inc.'s motion to dismiss because it will need to expend time, resources, and money on briefing that this Court's ruling on Xapo, Inc.'s motion will narrow or possibly moot.

8.     To my knowledge, Defendant Indodax has yet to be served in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 2, 2020 in San Francisco, California.

*s/Steven P. Ragland*
STEVEN P. RAGLAND

DECLARATION OF STEVEN P. RAGLAND IN SUPPORT OF DEFENDANT XAPO (GIBRALTAR)
LIMITED'S ADMINISTRATIVE MOTION TO ENLARGE TIME TO RESPOND TO COMPLAINT
Case No. 5:20-cv-03643-BLF

1392572

EXHIBIT A

## SERVICE OF DOCUMENTS PURSUANT TO THE HAGUE
## SERVICE CONVENTION

| | |
|---|---|
| **From:** | Registrar, Supreme Court, Gibraltar |
| **To:** | Bailiff Manager |
| **Date:** | 25 September 2020 |
| **Subject:** | Service of Documents – **XAPO (GIBRALTAR) LIMITED**, 6 Bayside Road, Unit 1.02, 1st Floor, World Trade Center, Gibraltar |
| **Our ref:** | H005/20 |

I would be grateful if you would serve the attached documents:

1. Date of Service:     _25 September 2020._

2. Place of Service:     _WTC, Xapos offices_

3. Full name of person on
   whom documents served:   _Alexi Joseph Bacca_

4. Relationship of that person to the
   person/company on whom the
   documents are being served:   _HR Manager._

5. Signature of person served:   _____

KARL TONNA
**Registrar**                          BAILIFF: _____

IF NOT SERVED – REASONS FOR NON-SERVICE: _____

_____

_____

_____

## SUMMARY OF THE DOCUMENT TO BE SERVED

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial
Matters, signed at The Hague, the 15th of November 1965.
(Article 5, fourth paragraph)**

**Name and address of the requesting authority:**
David C. Silver, Esq.
Authorized to act as Requesting Authority
Silver Miller
11780 W. Sample Road
Coral Springs, FL 33065 USA

**Particulars of the parties\*:**

**XAPO (GIBRALTAR) LIMITED** (Defendant)
6 Bayside Road, Unit 1.02, 1st Floor
World Trade Center
Gibraltar

## JUDICIAL DOCUMENT\*\*

**Nature and purpose of the document:**

To give notice to the Defendant of the commencement of a civil claim for computer theft, fraud, and compensatory and punitive damages, and to
summons it to serve written defenses to the claim.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**

Civil claim for determination of issues as stated in the documents to be determined by the Court of original jurisdiction.

**Date and place for entering appearance\*\*:**

Not applicable (N/A)

**Court which has given judgment\*\*:**

Not applicable (N/A)

**Date of judgment\*\*:**

Not applicable (N/A)

**Time-limits stated in the document\*\*:**

Defendant is to serve written defenses (Answer) to the action upon Plaintiff or attorney for Plaintiff within 21 calendar days after
service of the Summons (not counting the day you received it).

## EXTRAJUDICIAL DOCUMENT\*\*

**Nature and purpose of the document:** Not applicable (N/A)

**Time-limits stated in the document\*\*:** Not applicable (N/A)

\* If appropriate, identity and address of the person interested in the transmission of the document.
\*\* Delete if inappropriate.

3

USM-94

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| DENNIS NOWAK, an individual | ) ) ) ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals | ) ) ) ) ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  XAPO (GIBRALTAR) LIMITED
6 Bayside Road, Unit 1.02 1st Floor
World Trade Center
Gibraltar

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brandon S. Reif, Esq.         - and -
Reif Law Group, P.C.
1925 Century Park East - Suite 1700
Los Angeles, CA 90067
E-mail:  Docket@ReifLawGroup.com

David C. Silver, Esq.
Silver Miller
11780 W. Sample Road
Coral Springs, FL 33065
E-mail: DSilver@SilverMillerLaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT
_Susan Y. Soong_

_Cindy Hernandez_

Date:  _6/2/20_

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

1    Brandon S. Reif, Esq. (SBN 214706)
2    E-Mail: Docket@ReifLawGroup.com
     **REIF LAW GROUP, P.C.**
3    1925 Century Park East, Suite 1700
     Los Angeles, California 90067
4    Telephone: (310) 494-6500

5

6    David C. Silver (to be admitted *pro hac vice*) DSilver@SilverMillerLaw.com
7    Jason S. Miller (to be admitted *pro hac vice*)
     JMiller@SilverMillerLaw.com
8    **SILVER MILLER**
     11780 W. Sample Road
9    Coral Springs, Florida 33065
     Telephone: (954) 516-6000

10

11    Attorneys for Plaintiff

12

13

14

15             **UNITED STATES DISTRICT COURT**

16      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17

18    DENNIS NOWAK, an individual,        |    **COMPLAINT**

19           Plaintiff,           |    <u>**JURY TRIAL DEMANDED**</u>

20        v.

21    XAPO, INC., a Delaware corporation;
22    XAPO (GIBRALTAR) LIMITED, a foreign
     corporation; INDODAX, a foreign company;
23    and JOHN DOE NOS. 1-10, individuals,

24

25           Defendants.

26

27

28

Plaintiff DENNIS NOWAK, an individual ("Plaintiff"), brings this action against XAPO, INC., a Delaware corporation, XAPO (GIBRALTAR) LIMITED, a foreign corporation, INDODAX, a foreign company, and JOHN DOE NOS. 1-10, individuals.  Plaintiff alleges the following:

## INTRODUCTION

Plaintiff alleges in this Complaint claims for: (i) Violation of California Penal Code § 496 (Possession of Stolen Property); (ii) Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4) (Computer Fraud and Abuse Act); and (iii) Violation of California Penal Code § 502 et seq. (Assisting Unlawful Access To Computer), based upon his own knowledge and acts, and based on facts obtained upon investigation by his counsel, which include, *inter alia*: (a) documents and account records maintained by Plaintiff or for his benefit, and (b) blockchain tracing and analytical reports prepared by international investigative firm Kroll.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## PARTIES

1.      Plaintiff DENNIS NOWAK is a natural person and is a resident of Germany.

2.      Defendant XAPO, INC. is a Delaware corporation with its principal place of business in Palo Alto, California.  XAPO, INC. provides each of its accountholders a bitcoin wallet combined with a cold storage vault and a bitcoin-based debit card.  XAPO, INC. holds client bitcoins following a full reserve banking and fully segregated model, which allows for verification that funds held by XAPO, INC. are in an individual multi-signature bitcoin address and not pooled or co-mingled with other users' funds.

3.      Defendant XAPO (GIBRALTAR) LIMITED is a foreign corporation registered and incorporated in Gibraltar with Company No. 111928.  According to

1
COMPLAINT

1   information published on its own website, XAPO (GIBRALTAR) LIMITED is licensed

2   and regulated by the Gibraltar Financial Services Commission under the Financial

3   Services (Electronic Money) Regulations 2011 as an "Electronic Money

4   institution" with License No. FSC0063BNK.     Notwithstanding its Gibraltar

5   registry, XAPO (GIBRALTAR) LIMITED has extensive ties to the United States

6   -- including this jurisdiction -- and is essentially a United States-based entity, as

7   management of the company's affairs are greatly guided by its team of advisors,

8   including Lawrence H. Summers (former Secretary of the U.S. Department of the

9   Treasury under President Bill Clinton), Dee Hock (founder of Visa), and John Reed

10  (former Chairman and Chief Executive Officer of Citibank).

11       4.      XAPO, INC. and XAPO (GIBRALTAR) LIMITED commonly

12  operate with their sibling entities around the world under the shared tradename

13  "XAPO"; and XAPO, INC. and XAPO (GIBRALTAR) LIMITED will be

14  collectively referred to herein simply as "XAPO," as their own website does not

15  differentiate between the separate corporate entities.   Upon information and belief,

16  the entities are all dominated by the same individuals, use the same corporate

17  decision-makers, the same resources, and the same business connections.     Thus,

18  they are essentially one-and-the-same business, regardless of the particular name

19  under which each company's operations are conducted.

20       5.      Defendant INDODAX is a cryptocurrency exchange headquartered

21  in Indonesia.   With more than a million users on a 24-hour trading platform,

22  INDODAX allows its accountholders to trade bitcoin to other digital assets such

23  as Ethereum, Litecoin, Dogecoin, DASH, Ripple, Stellar, XEM, NXT, and Bitshares.

24       6.      Defendants JOHN DOE NOS. 1-10 are a collection of hackers and

25  thieves whose identities are presently unknown but who were instrumental in stealing

26  Plaintiff's assets, storing those stolen assets in accounts held at XAPO and

27  INDODAX, and exposing Plaintiff to the harm alleged in this action.   Plaintiff is

28  working with multiple

1  law enforcement agencies to identify the hacker(s) involved in this matter, the XAPO

2  and INDODAX accountholders, and others involved in this theft.

3      7.      In addition to those persons and entities set forth as Defendants herein, there

4  are likely other parties who may well be liable to Plaintiff but respecting whom Plaintiff

5  currently lacks specific facts to permit him to name such person or persons as a party

6  defendant.  By not naming such persons or entities at this time, Plaintiff is not waiving his

7  right to amend this pleading to add such parties, should the facts warrant the addition of

8  such parties.

9                          **JURISDICTION AND VENUE**

10      8.      This Court has subject matter jurisdiction over this action pursuant to 28

11  U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand

12  Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action

13  between citizens of different states.

14      9.      Furthermore, this Court has subject matter jurisdiction over this action

15  pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treatises of

16  the United States.   Additionally, the Court has supplemental jurisdiction over the

17  California statutory and common law claims pursuant to 28 U.S.C. § 1337.

18      10.     This Court has personal jurisdiction over Defendants because: (a) at least

19  one Defendant is operating, present, and/or doing business within this District, and (b)

20  Defendants' breaches and unlawful activity occurred within this District.

21      11.     Upon information and belief, Defendants each service accountholders in

22  this jurisdiction and reap from those accountholders large sums of money and other

23  assets, including valuable cryptocurrency.

24      12.     Moreover, Defendants each either conduct business in and maintain

25  operations in this District -- including operating computer servers and storage vaults -- or

26  have sufficient minimum contacts with this District as to render the exercise of

27  jurisdiction by this Court permissible under traditional notions of fair play and

28  substantial justice.

13.  Venue is proper pursuant to 28 U.S.C. § 1391 in that: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (c) Defendants have received substantial compensation and other transfers of money and digital assets in this District by doing business here and engaging in activities having an effect in this District.

## GENERAL ALLEGATIONS

### I.   Background on Cryptocurrency

14.  Bitcoin ("BTC") and Ether ("ETH") are virtual currencies that may be traded on online exchanges for conventional currencies, including the U.S. Dollar, Euros, and the Japanese Yen, or used to purchase goods and services online. Bitcoin and Ether have no single administrator or central authority or repository.

15.  Bitcoin and Ether are but two of the cryptocurrencies that investors typically use to trade on cryptocurrency exchanges -- both in spot transactions and in leveraged margin trading.

### II.   Plaintiff's Assets Were Stolen from his Cryptocurrency Exchange Account

16.  At all times relevant hereto, Plaintiff maintained an account at a Northern California-based cryptocurrency exchange ("U.S.A. EXCHANGE") in which Plaintiff held, among other digital currencies, bitcoin.

17.  On September 18, 2018, to prevent unauthorized access to his U.S.A. EXCHANGE account, Plaintiff secured his account with a new login two-factor authentication through Google Authenticator.

18.  On or about November 20, 2018, Plaintiff deposited into his U.S.A. EXCHANGE account 500 bitcoin (500 BTC) in three separate deposits: (1) a 200 BTC deposit, (2) a second 200 BTC deposit, and (3) a 100 BTC deposit.

COMPLAINT

19.    At the time Plaintiff made those deposits, the 500 BTC were valued at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00).[1]

20.    Just a few days after he had deposited the 500 BTC into his account, Plaintiff's account at U.S.A. EXCHANGE was infiltrated by JOHN DOE NOS. 1-10, who withdrew all 500 BTC over the course of slightly more than two days in November 2018, *to wit*:

| Date/Time of Cryptocurrency Theft | Cryptocurrency Assets Stolen | Approximate Value of Funds/Assets Stolen on Date of Theft[2] |
|---|---|---|
| November 21, 2018 10:54 a.m. | 66.99950 BTC | $305,000.00 |
| November 22, 2018 11:31 a.m. | 67.499950 BTC | $310,000.00 |
| November 23, 2018 11:49 a.m. | 66.99950 BTC | $305,000.00 |
| November 23, 2018 4:44 p.m. | 298.19950 BTC | $1,380,000.00 |
| TOTAL | 499.69845 BTC[3] | $2,300,000.00 |

21.    Undersigned counsel has engaged international investigative firm Kroll to trace the BTC transferred and withdrawn from Plaintiff's U.S.A. EXCHANGE account in or about November 21-23, 2018.

---

[1] As of the date of this filing, those 500 BTC are valued at approximately Four Million Five Hundred Thousand Dollars ($4,500,000.00).

[2] Valuation of the stolen funds/assets is calculated using market data compiled by www.CoinMarketCap.com, which takes the volume weighted average of all prices reported at several dozen cryptocurrency markets serving investors in the United States and abroad.

[3] Transaction fees assessed on each of these unauthorized withdrawals increased the total amount withdrawn to 500 BTC.

COMPLAINT

22.     As concluded by Kroll, 479.69 BTC of the 499.69845 BTC transferred from Plaintiff's U.S.A. EXCHANGE account were transferred to two deposit addresses controlled by INDODAX.

23.     From those two deposit addresses, the funds were then moved to a hot wallet[4] at INDODAX where, upon information and belief, the assets are still located.

24.     The Kroll analysis further shows that as of February 7, 2020, an additional 19.99 BTC of Plaintiff's original 499.69 BTC are held in two hot wallet addresses controlled by XAPO.

25.     As such, 499.68 of the 499.69845 BTC pilfered from Plaintiff's U.S.A. EXCHANGE account have been located, *to wit*:

| Owner of Source Addresses | Owner of Destination Addresses | Number of Destination Addresses | Total Estimated Amount of Funds Involved in the Event which were Sent from Source Addresses and Reached Destination Addresses |
|---|---|---|---|
| U.S.A. EXCHANGE | INDODAX (*deposit addresses and hot wallets*) | 3 | 479.69 BTC |
| U.S.A. EXCHANGE | XAPO (*hot wallets*) | 2 | 19.99 BTC |
| | | TOTAL | 499.68 BTC |

---

[4] A "hot wallet" refers to a cryptocurrency wallet that is online and connected in some way to the Internet. A "hot wallet" stands in contrast to "cold storage," which refers to a method for electronically storing cryptocurrency in a location that is not connected to the Internet.

COMPLAINT

26. The Kroll analysis further suggests that there has been no obvious attempt to layer the transaction in such a way as to obfuscate the destination of the funds. Plaintiff's BTC was transferred from his U.S.A. EXCHANGE account to addresses at INDODAX and XAPO in less than half-a-dozen steps, as shown below, where nodes represent individual addresses and arrows represent groups of transactions between those addresses:



27. Neither Plaintiff nor any person or entity under Plaintiff's control owns or controls any of the destination addresses at INDODAX or XAPO referenced above.

## III. Due to Faulty Security or Knowing Indifference, Stolen Cryptocurrency is Often Stored at Xapo and Indodax

28. In addition to Plaintiff's losses, Kroll also traced the origin of other BTC transferred to the two INDODAX deposit addresses and the two XAPO hot wallet

1 | addresses to which Plaintiff's stolen BTC were sent; and Kroll concluded that the
2 | majority of the transfers into those four addresses came from U.S.A. EXCHANGE.

3 |      29.    Of the estimated 1,258.85 BTC transferred from attributable sources to the
4 | two INDODAX deposit addresses, 698.72 BTC (including Plaintiff's 479.69 BTC), or
5 | over 55%, was transferred from U.S.A. EXCHANGE.

6 |      30.    Of the estimated 105.4 BTC transferred from attributable sources to the two
7 | XAPO hot wallet addresses, 56.97 BTC (including Plaintiff's 19.99 BTC), or over 54%
8 | of those funds, were transferred from U.S.A. EXCHANGE.

9 |      31.    As such, a further 256.01 BTC were transferred from U.S.A. EXCHANGE
10 | to the same addresses that hold Plaintiff's stolen BTC.[5]

11 |      32.    As of the date of this filing, those 256.01 BTC are valued at approximately
12 | $2,300,000.00 USD, bringing the total value of the 755.69 BTC from U.S.A.
13 | EXCHANGE addresses currently held in the four INDODAX and XAPO addresses to
14 | approximately $6,800,000.00.[6]

15 |      33.    The methodology of the specific theft identified by Kroll -- with funds
16 | leaving U.S.A. EXCHANGE and a small split going to two XAPO wallets and the rest
17 | going to two INDODAX wallets -- appears to have been followed on more occasions
18 | than just the theft from Plaintiff, given the sums above.

19 |      34.    In the cryptocurrency industry -- just as in the financial and banking
20 | industries -- it is standard for custodial firms and exchanges like XAPO and INDODAX
21 | to employ rigorous "Know Your Customer" (KYC) and "Anti-Money-
22 | Laundering" (AML) policies and procedures.

23 |      35.    The general goal of AML is to ensure that firms are able to detect and
24 | prevent money laundering and to protect themselves and the financial systems in which
25 | they operate from the damage it causes.

26

27 | [5] 219.03 BTC transferred to the INDODAX addresses and 36.98 BTC transferred to the XAPO
28 | addresses.

[6] Using a conversion of 1 BTC = $9,000.00 USD.

36.     KYC is important because the risk-based approach to AML is predicated upon firms knowing who their customers are and what level of money laundering risk they present.

37.     Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.

38.     In the instant matter, it appears that XAPO and INDODAX have permitted, whether intentionally or not, criminal activity by allowing their custodial vaults and exchanges to serve as shelters for thieves like Defendants JOHN DOE NOS. 1-10 to store purloined assets.

39.     Beyond the four addresses at INDODAX and XAPO, Kroll's initial analysis shows that more than 2,900 BTC have been transferred from over 24,000 U.S.A. EXCHANGE addresses to over 500 INDODAX addresses since January 2017 -- thus demonstrating that the U.S.A. EXCHANGE-to- INDODAX movement of the BTC stolen from Plaintiff is far from an isolated incident.

40.     XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings. For example, U.S.A. EXCHANGE knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.

41.     Moreover, XAPO and INDODAX each know or should have known that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff.

42.     Plaintiff brings this action to hold XAPO and INDODAX liable for aiding and abetting Defendants JOHN DOE NOS. 1-10's misappropriation of Plaintiff's assets

1    and for creating and maintaining systems that unjustly allow thieves to hide stolen

2    property in XAPO's and INDODAX's custodial vaults.

3        43.    Plaintiff has duly performed all of his duties and obligations, and

4    any conditions precedent to Plaintiff bringing this action have occurred, have

5    been performed, or else have been excused or waived.

6        44.    To enforce his rights, Plaintiff has retained undersigned counsel and

7    is obligated to pay counsel a reasonable fee for its services, for which Defendants are

8    liable as a result of their bad faith and otherwise.

**COUNT I**
9
**Violation of California Penal Code § 496**
**(Possession of Stolen Property)**
10
**(By Plaintiff Against All Defendants)**

11       45.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 44

12   above, and further alleges:

13       46.    This cause of action asserts a claim against XAPO, INDODAX, and

14   JOHN DOE NOS. 1-10 for the actual theft of Plaintiff's property as well as for

15   receiving, aiding in concealing, and withholding from Plaintiff the stolen property.

16       47.    In pertinent part, Cal. Penal Code sec. 496(a) imposes liability upon

17   "[e]very person who buys or receives any property that has been stolen or that has

18   been obtained in any manner constituting theft or extortion, knowing the property to

19   be so stolen or obtained or who conceals, sells, withholds, or aids in concealing,

20   selling, or withholding any property from the owner, knowing the property to be so

21   stolen or obtained" and provides that "[a] principal in the actual theft of the property

22   may be convicted pursuant to this section."

23       48.    Furthermore, Cal. Penal Code sec. 496(c) provides: "Any person who has

24   been injured by a violation of subdivision (a) or (b) may bring an action for three

25   times the amount of actual damages, if any, sustained by the plaintiff, costs of suit,

26   and reasonable attorney's fees."

27       49.    Plaintiff's cryptocurrency assets were stolen from him, or were obtained

28   by, Defendants JOHN DOES NO. 1-10 in a manner constituting theft.

---

COMPLAINT

1    by, Defendants JOHN DOE NOS. 1-10 in a manner constituting theft.

2    50.    Defendants JOHN DOE NOS. 1-10 knew the property was stolen.

3    51.    Likewise, Defendants XAPO and INDODAX knew or should have known

4    the property was so stolen or obtained.

5    52.    Defendants received and had (and, upon information and belief, still have)

6    possession of the property stolen from Plaintiff.

7    53.    Defendants are liable to Plaintiff for three times the amount of Plaintiff's

8    actual damages, the costs of this suit, and all reasonable attorney's fees incurred

9    by plaintiff in connection herewith.

10                              **COUNT II**
11             **Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4)**
                         **(Computer Fraud and Abuse Act)**
12                      **(By Plaintiff Against All Defendants)**

13    54.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 44

14    above, and further alleges:

15    55.    This cause of action asserts a claim against XAPO and INDODAX for

16    violations of 18 U.S.C. § 1030(a)(4) (the "Computer Fraud and Abuse Act") for aiding

17    an abetting unauthorized access to a protected computer to obtain property, done

18    with an intent to defraud, and for furthering fraudulent activity thereby to obtain

19    something of value.

20    56.    The computer Plaintiff used to access and manage his cryptocurrency

21    accounts is a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) because it is

22    used in interstate or foreign commerce or communication, including sending

23    and  receiving electronic mail and accessing and interacting with the internet.

24    57.    Defendants JOHN DOE NOS. 1-10, without authorization or by exceeding

25    authorization conditionally granted to any of them, accessed, knowingly and with

26    intent to defraud Plaintiff, Plaintiff's protected computer.

27    58.    By their conduct, the unknown and unauthorized Defendants JOHN DOE

28    NOS. 1-10 intentionally furthered a fraud upon Plaintiff and obtained Plaintiff's valuable

                                    11

1   cryptocurrency.

2       59.    Defendants XAPO and INDODAX provided the unknown and

3   unauthorized persons vital assistance in carrying out the fraud by providing them safe

4   havens -- and continue to do so through the date of this filing -- that allowed the unknown

5   and unauthorized Defendants JOHN DOE NOS. 1-10 to hide stolen property in XAPO's

6   and INDODAX's custodial vaults.

7       60.    Defendants XAPO and INDODAX knew or should have known the

8   property was so stolen or obtained.

9       61.    As a consequence of Defendants' actions and omissions, Plaintiff has

10   suffered damages.

11   **COUNT III**

12   **Violation of California Penal Code § 502 *et seq.***
**(Assisting Unlawful Access To Computer)**

13   **(By Plaintiff Against All Defendants)**

14       62.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 -44

15   above, and further alleges:

16       63.    This cause of action asserts a claim against XAPO and INDODAX for

17   violations of California Penal Code § 502 *et seq*. for knowingly and without permission

18   allowing an unauthorized third party(ies) to access Plaintiff's computers, computer

19   systems, and computer networks.

20       64.    As alleged herein, XAPO and INDODAX, in or about November-

21   December 2018, provided safe haven to unauthorized parties Defendants JOHN DOE

22   NOS. 1-10 -- and continue to do so through the date of this filing -- that allowed them to

23   hide stolen property in XAPO's and INDODAX's custodial vaults.

24   65.    At the time XAPO and INDODAX provided safe harbor and secure

25   vaulting of the funds stolen from Plaintiff, XAPO and INDODAX were aware of the

26   prevalence of money laundering and the need to prevent such activity from taking

27   place under, or with the assistance of, their custodianship.

28

12
COMPLAINT

66.     Although   XAPO   and   INDODAX   were   aware   of   the   necessity for safeguards providing for KYC and AML standards and to protect against trafficking of stolen property, XAPO and INDODAX did not adhere to those safeguards -- thus allowing Defendants JOHN DOE NOS. 1-10 to use XAPO and INDODAX's vaults as purported "safe havens" to hide the assets stolen from Plaintiff and others.

67.     Instead, XAPO and INDODAX cooperated with Defendants JOHN DOE NOS. 1-10 and provided them substantial assistance by accepting the cryptocurrency stolen by Defendants JOHN DOE NOS. 1-10.

68.     XAPO     and     INDODAX's     blatant     disregard     of     applicable security procedures as well as their willing cooperation with the hackers/thieves constitutes   knowing   cooperation   with   an   unauthorized   individual   accessing Plaintiff's computers, computer systems, and computer networks.

69.     Because   of   the   conduct   of   XAPO   and   INDODAX   as   alleged herein, Plaintiff is entitled to compensatory damages and injunctive relief under Penal Code § 502(e)(1).   Plaintiff is also entitled to reasonable attorneys' fees pursuant to Penal Code § 502(e)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for relief and judgment against Defendants, as follows:

    A. An award of any and all damages recoverable under law -- jointly
        and severally entered against Defendants -- including but not
        limited to compensatory damages, punitive damages, incidental
        damages, and consequential damages;

    B. Return of Plaintiff's stolen personal property;

    C. An award of pre-judgment and post-judgment interest;

    D. An award of Plaintiff's reasonable attorney's fees, expenses and the
        costs of this action; and

COMPLAINT

1    E. An award granting other relief as this Court may deem just and

2    proper.

3                        **DEMAND FOR JURY TRIAL**

4    Plaintiff hereby demands trial by jury of all claims so triable.

5

6                                **REIF LAW GROUP, P.C.**

7

8    Dated: June 1, 2020              By: *Brandon S. Reif*
                                      Brandon S. Reif

9

10                                    David C. Silver (to be admitted *pro hac vice*)
                                      Jason S. Miller (to be admitted *pro hac vice*)

11                                    **SILVER MILLER**

12                                    *Attorneys for Plaintiff Dennis Nowak*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

                                    14
                                COMPLAINT

# EXHIBIT B

| | |
|---|---|
| **From:** | Steven Ragland |
| **To:** | David Silver; jmiller@silvermillerlaw.com; breif@reiflawgroup.com |
| **Cc:** | Erin E. Meyer |
| **Subject:** | RE: Nowak v. Xapo |
| **Date:** | Thursday, October 1, 2020 1:01:38 PM |

Thank you for your response.  We appreciate the one-week extension to October 23, 2020, and will take that if that's all you'll agree to, although it is of course common professional courtesy to provide an extension of a month or more as a matter of course—especially when there are no case management deadlines that are affected.

Here, because the pending motion to dismiss by Xapo, Inc. is fully briefed and will almost certainly be decided well before a hearing on any motion Xapo (Gibraltar) may bring, and anything we might prepare and file for Xapo (Gibraltar) will at a minimum be narrowed—and possibly even mooted—by the Court's order following the November 12 hearing on Xapo, Inc's motion, we cannot conceive of a reason why you would not extend Xapo (Gibraltar)'s response deadline until after the pending motion is resolved other than to drive up our litigation expense.  Therefore, we will ask the Court for additional time beyond October 23 to avoid wasting time, resources, and money on a needless briefing cycle at this time.

Thank you for your attention to this matter and let me know if you have any questions or wish to discuss.

Regards,
--Steven


**From:** David Silver <dsilver@silvermillerlaw.com>
**Sent:** Thursday, October 1, 2020 12:02 PM
**To:** Steven Ragland <SRagland@keker.com>; jmiller@silvermillerlaw.com; breif@reiflawgroup.com
**Cc:** Erin E. Meyer <EMeyer@keker.com>
**Subject:** RE: Nowak v. Xapo

**[EXTERNAL]**

Steve –

If a reasonable extension is necessitated, we are happy to offer a one-week extension.

David

David C. Silver, Esq.
SILVER MILLER
Tel: (954) 516-6000
Web site: www.silvermillerlaw.com

**From:** Steven Ragland <sragland@keker.com>
**Sent:** Tuesday, September 29, 2020 2:04 PM
**To:** David Silver <dsilver@silvermillerlaw.com>; Jason Miller <jmiller@silvermillerlaw.com>; breif@reiflawgroup.com
**Cc:** emeyer@keker.com
**Subject:** Nowak v. Xapo

Counsel-

I understand that Xapo (Gibraltar) Limited has been served via the Hague process and we have been retained to represent it in this matter.  Absent any extension, its response to your complaint is due October 16.

It appears unlikely that any motion Xapo Gibraltar may file would be heard until January or later. Additionally, the currently-pending motion by Xapo, Inc. set for hearing on November 12 may, of course, affect the pleadings, result in an amended complaint, or narrow the issues in dispute.  Therefore, will you agree to extend Xapo (Gibraltar) Limited's time to respond to the complaint by 60 days, to December 15, 2020?  If so, we will be happy to work with you to set a reasonable briefing schedule so it does not interfere with the holidays and gives both parties plenty of time to complete their papers.  If you agree to a reasonable extension, we can also agree to accept service of any amended complaint so you will not need to serve it through the Hague Convention.

So that we can plan accordingly, please let me know by close of business this Thursday, October 1, 2020, if this proposed extension is agreeable, or if you have another proposal (e.g., response due 14 days after ruling on pending motion to dismiss, or filing of any amended complaint).  If you will not agree to a reasonable extension, we will seek relief from the Court.

Thank you for your attention to this matter and let me know if you have any questions or wish to discuss.

Regards,
--Steven

**Steven P. Ragland**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 773 6604 direct | 415 391 5400 main
sragland@keker.com | vcard | keker.com
Pronouns:  He, him, his