Brandon S. Reif, Esq. (State Bar No. 214706)
E-Mail: Docket@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

*Counsel for Plaintiff Dennis Nowak*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>XAPO, INC., a Delaware corporation;<br>XAPO (GIBRALTAR) LIMITED, a foreign corporation;<br>INDODAX, a foreign company; and<br>JOHN DOE NOS. 1-10, individuals,<br><br>Defendants. | Case No. 5:20-cv-03643-BLF<br><br>**DECLARATION OF DAVID C. SILVER IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT XAPO (GIBRALTAR) LIMITED'S ADMINISTRATIVE MOTION TO ENLARGE TIME TO RESPOND TO COMPLAINT**<br><br>Dept.:   Courtroom 3 - 5th Floor<br>Judge:   Hon. Beth Labson Freeman<br><br>Date Filed:   June 1, 2020<br>Trial Date:   None set |

DECLARATION OF DAVID C. SILVER IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT XAPO (GIBRALTAR)
LIMITED'S ADMINISTRATIVE MOTION TO ENLARGE TIME TO RESPOND TO
COMPLAINT

I, David C. Silver, declare as follows:

1.      I am a founding partner at the law firm of Silver Miller, co-counsel for Plaintiff Dennis Nowak in the above captioned action.  This declaration is based on my own personal knowledge and/or the firm's records of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      I submit this declaration in support of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant Xapo (Gibraltar) Limited's Administrative Motion to Enlarge Time to Respond to Complaint [Dkt. No. 32].

3.      On June 12, 2020, I exchanged with Steven P. Ragland, Esq. of the law firm of KEKER, VAN NEST & PETERS LLP correspondence in which I inquired if Mr. Ragland and his firm -- along with representing Defendant Xapo, Inc. in this matter -- would be representing Defendant Xapo (Gibraltar) Limited ("XAPO GIBRALTAR"); and if not, whether Xapo, Inc. would be willing to serve as a conduit for service of process upon its corporate sibling entity in Gibraltar.

4.      On June 16, 2020, I exchanged with Mr. Ragland correspondence confirming Mr. Ragland/his law firm's refusal to accept service on behalf of XAPO GIBRALTAR.

5.      Attached hereto as **Exhibit "A"** is a true and correct copy of a July 27, 2020 letter I sent to defense counsel requesting that Defendant Xapo, Inc. provide its sibling entity XAPO GIBRALTAR a Waiver of Service of Summons I had prepared for XAPO GIBRALTAR's execution.  Xapo, Inc., XAPO GIBRALTAR, and/or their counsel refused the request.

6.      Attached hereto as **Exhibit "B"** is a true and correct copy of documentation demonstrating that XAPO GIBRALTAR was formally served with process by a Bailiff of the Supreme Court of Gibraltar on September 25, 2020 in accordance with the requirements of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on October 6, 2020 in Coral Springs, Florida.

_/s/ David C. Silver_

DAVID C. SILVER

Case No. 5:20-cv-03643-BLF

2

# EXHIBIT "A"



SILVERMILLERLAW.COM

**11780 West Sample Road**
**Coral Springs, Florida 33065**
**Florida: (954) 516-6000**
**Maryland: (240) 516-6000**
**Washington, D.C.: (202) 852-6000**

July 27, 2020

**VIA ELECTRONIC MAIL ONLY**
Steven P. Ragland, Esq.
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
E-mail: sragland@keker.com

Re:     Nowak v. Xapo and Indodax
        U.S. Dist. Ct. - N.D. Calif. - Case No.: 5:20-cv-03643

Dear Steven:

As you are aware, we are counsel for Dennis Nowak ("Mr. Nowak"), the plaintiff in the above-referenced matter in which you have made an appearance as counsel for defendant Xapo, Inc. Though you have previously expressed to us that your law firm has not been authorized by defendant Xapo (Gibraltar) Limited to accept service of process on its behalf, the inter-relatedness of the two legal entities and their executive decisionmakers is undeniable. Based on your client's refusal to accept service on behalf of its related entity, we have retained an international process server to formally serve Xapo (Gibraltar) Limited. As I have previously advised you, this is an exercise in futility; as upon information and belief -- a fact that, when advised, you did not correct me -- Xapo merely operates a virtual office in Gibraltar, with actual managerial operations in the United States.

Therefore, pursuant to Rule 4 of the Federal Rules of Civil Procedure, please accept this correspondence as our formal request that you forward to your client and Xapo (Gibraltar) Limited the enclosed Waiver of Service of Summons, which has been prepared for Xapo (Gibraltar) Limited's execution. Also enclosed for Xapo (Gibraltar) Limited's review are a copy of the Complaint (DE 1), the Court-issued Civil Action Summons (DE 5), and the Court's June 2, 2020 "Order Setting Initial Case Management Conference and ADR Deadlines" (DE 4). We ask that you please inform us **by the close of business on Wednesday, July 29, 2020** whether and when we can expect Xapo (Gibraltar) Limited's compliance with this request.

Xapo (Gibraltar) Limited can rest assured that upon executing the waiver, it will retain all viable defenses and objections it otherwise has (except any relating to the summons or to the service of the summons) and may later object to the jurisdiction of the court or to the place where the action has been brought. Additionally, should Xapo (Gibraltar) Limited refuse to waive formal service of process, we will request from the Court an Order requiring Xapo (Gibraltar) Limited to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver. We do not believe any such good cause might exist, as our prior efforts to effectuate formal service upon Xapo (Gibraltar) Limited have been thwarted by the company's failure to maintain any actual physical office at which service can be made.

Steven P. Ragland, Esq.
July 27, 2020
- Page 2 of 2 -

I thank you for your attention to, and your anticipated cooperation with, this matter.  Please contact me if you have any questions about this.

Very Truly Yours,

David C. Silver

Enclosures

cc:     Brandon S. Reif, Esq. (Reif Law Group)
        Jason S. Miller, Esq. (Silver Miller)



AO 399 (Rev. 01/2009) Waiver of Service of Summons

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Civil Action No.: 5:20-cv-03643

DENNIS NOWAK, an individual;

      Plaintiff,

v.

XAPO, INC., a Delaware corporation;
XAPO (GIBRALTAR) LIMITED, a foreign corporation;
INDODAX, a foreign company; and
JOHN DOE NOS. 1-10, individuals

      Defendants.

_____/

## WAIVER OF SERVICE OF SUMMONS

| To: | Brandon S. Reif, Esq. | David C. Silver, Esq. |
|---|---|---|
| | **REIF LAW GROUP, P.C.** | **SILVER MILLER** |
| | 1925 Century Park East - Suite 1700 | 11780 W. Sample Road |
| | Los Angeles, California 90067 | Coral Springs, Florida 33065 |
| | E-Mail: Docket@ReifLawGroup.com | E-mail: DSilver@SilverMillerLaw.com |

      I, __**XAPO (GIBRALTAR) LIMITED**__, acknowledge receipt of your request that I waive service of summons in the above-captioned action.

      I have also received a copy of the Complaint in the action, a copy of this instrument, and have a means by which I can return the signed waiver to you without cost to me (*i.e.*, electronic mail).

      I agree to save the cost of service of a summons and an additional copy of the Complaint in this lawsuit by not requiring that I (or the party on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

      I (or the party on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

      I also understand that I, or the entity I represent, must file and serve an Answer or motion under Rule 12 within sixty (60) days after __July 27, 2020__, the date when this request was sent (or ninety [90] days if it was sent outside the United States).  If I fail to do so, a default judgment may be entered against me or the entity I represent.

## <u>ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT</u>

I declare under penalty of perjury that I received a copy of the summons and of the Complaint in this case on the __27th__ day of July 2020 via electronic mail.

### XAPO (GIBRALTAR) LIMITED

BY: _____
*(Signature)*

_____
*(Print Name)*

_____
*(Title/Office)*

_____
*(Current Address)*

_____
*(Current Address)*

_____
*(Current Address)*

Date of Signature: __July_____, 2020_____

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

# EXHIBIT "B"

## SERVICE OF DOCUMENTS PURSUANT TO THE HAGUE SERVICE CONVENTION

| | |
|---|---|
| **From:** | Registrar, Supreme Court, Gibraltar |
| **To:** | Bailiff Manager |
| **Date:** | 25 September 2020 |
| **Subject:** | Service of Documents – **XAPO (GIBRALTAR) LIMITED**, 6 Bayside Road, Unit 1.02, 1st Floor, World Trade Center, Gibraltar |
| **Our ref:** | H005/20 |

I would be grateful if you would serve the attached documents:

1. Date of Service: _25 September 2020._

2. Place of Service: _WTC, Xapos Offices_

3. Full name of person on whom documents served: _Hear Joseph Bocca_

4. Relationship of that person to the person/company on whom the documents are being served: _HR Manager._

5. Signature of person served: _____

KARL TONNA
**Registrar**

BAILIFF: _____

IF NOT SERVED – REASONS FOR NON-SERVICE: _____

_____

_____

_____

## SUMMARY OF THE DOCUMENT TO BE SERVED

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.**
**(Article 5, fourth paragraph)**

**Name and address of the requesting authority:**
David C. Silver, Esq.
Authorized to act as Requesting Authority
Silver Miller
11780 W. Sample Road
Coral Springs, FL 33065 USA

**Particulars of the parties\*:**

**XAPO (GIBRALTAR) LIMITED** (Defendant)
6 Bayside Road, Unit 1.02, 1st Floor
World Trade Center
Gibraltar

## JUDICIAL DOCUMENT\*\*

**Nature and purpose of the document:**

To give notice to the Defendant of the commencement of a civil claim for computer theft, fraud, and compensatory and punitive damages, and to summons it to serve written defenses to the claim.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**

Civil claim for determination of issues as stated in the documents to be determined by the Court of original jurisdiction.

**Date and place for entering appearance\*\*:**

Not applicable (N/A)

**Court which has given judgment\*\*:**

Not applicable (N/A)

**Date of judgment\*\*:**

Not applicable (N/A)

**Time-limits stated in the document\*\*:**

Defendant is to serve written defenses (Answer) to the action upon Plaintiff or attorney for Plaintiff within 21 calendar days after service of the Summons (not counting the day you received it).

## EXTRAJUDICIAL DOCUMENT\*\*

**Nature and purpose of the document:** Not applicable (N/A)

**Time-limits stated in the document\*\*:** Not applicable (N/A)

\* If appropriate, identity and address of the person interested in the transmission of the document.
\*\* Delete if inappropriate.

3

USM-94

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

|   |   |   |
|---|---|---|
| DENNIS NOWAK, an individual | ) ) ) ) | |
| _Plaintiff(s)_ | ) ) | |
| v. | ) | Civil Action No. |
| XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals | ) ) ) ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   XAPO (GIBRALTAR) LIMITED
6 Bayside Road, Unit 1.02 1st Floor
World Trade Center
Gibraltar

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Brandon S. Reif, Esq.       - and -          David C. Silver, Esq.
Reif Law Group, P.C.                             Silver Miller
1925 Century Park East - Suite 1700       11780 W. Sample Road
Los Angeles, CA 90067                        Coral Springs, FL 33065
E-mail:  Docket@ReifLawGroup.com         E-mail: DSilver@SilverMillerLaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT
Susan Y. Soong

Date:    6/2/20

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Brandon S. Reif, Esq. (SBN 214706)
E-Mail: Docket@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

David C. Silver (to be admitted *pro hac
vice*) DSilver@SilverMillerLaw.com
Jason S. Miller (to be admitted *pro hac vice*)
JMiller@SilverMillerLaw.com
**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 516-6000

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS NOWAK, an individual, | **COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals, | |
| Defendants. | |

Plaintiff DENNIS NOWAK, an individual ("Plaintiff"), brings this action against XAPO, INC., a Delaware corporation, XAPO (GIBRALTAR) LIMITED, a foreign corporation, INDODAX, a foreign company, and JOHN DOE NOS. 1-10, individuals.  Plaintiff alleges the following:

## INTRODUCTION

Plaintiff alleges in this Complaint claims for: (i) Violation of California Penal Code § 496 (Possession of Stolen Property); (ii) Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4) (Computer Fraud and Abuse Act); and (iii) Violation of California Penal Code § 502 et seq. (Assisting Unlawful Access To Computer), based upon his own knowledge and acts, and based on facts obtained upon investigation by his counsel, which include, *inter alia*: (a) documents and account records maintained by Plaintiff or for his benefit, and (b) blockchain tracing and analytical reports prepared by international investigative firm Kroll.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## PARTIES

1.      Plaintiff DENNIS NOWAK is a natural person and is a resident of Germany.

2.      Defendant XAPO, INC. is a Delaware corporation with its principal place of business in Palo Alto, California.  XAPO, INC. provides each of its accountholders a bitcoin wallet combined with a cold storage vault and a bitcoin-based debit card.  XAPO, INC. holds client bitcoins following a full reserve banking and fully segregated model, which allows for verification that funds held by XAPO, INC. are in an individual multi-signature bitcoin address and not pooled or co-mingled with other users' funds.

3.      Defendant XAPO (GIBRALTAR) LIMITED is a foreign corporation registered and incorporated in Gibraltar with Company No. 111928.  According to

information published on its own website, XAPO (GIBRALTAR) LIMITED is licensed and regulated by the Gibraltar Financial Services Commission under the Financial Services (Electronic Money) Regulations 2011 as an "Electronic Money institution" with License No. FSC0063BNK. Notwithstanding its Gibraltar registry, XAPO (GIBRALTAR) LIMITED has extensive ties to the United States -- including this jurisdiction -- and is essentially a United States-based entity, as management of the company's affairs are greatly guided by its team of advisors, including Lawrence H. Summers (former Secretary of the U.S. Department of the Treasury under President Bill Clinton), Dee Hock (founder of Visa), and John Reed (former Chairman and Chief Executive Officer of Citibank).

4. XAPO, INC. and XAPO (GIBRALTAR) LIMITED commonly operate with their sibling entities around the world under the shared tradename "XAPO"; and XAPO, INC. and XAPO (GIBRALTAR) LIMITED will be collectively referred to herein simply as "XAPO," as their own website does not differentiate between the separate corporate entities. Upon information and belief, the entities are all dominated by the same individuals, use the same corporate decision-makers, the same resources, and the same business connections. Thus, they are essentially one-and-the-same business, regardless of the particular name under which each company's operations are conducted.

5. Defendant INDODAX is a cryptocurrency exchange headquartered in Indonesia. With more than a million users on a 24-hour trading platform, INDODAX allows its accountholders to trade bitcoin to other digital assets such as Ethereum, Litecoin, Dogecoin, DASH, Ripple, Stellar, XEM, NXT, and Bitshares.

6. Defendants JOHN DOE NOS. 1-10 are a collection of hackers and thieves whose identities are presently unknown but who were instrumental in stealing Plaintiff's assets, storing those stolen assets in accounts held at XAPO and INDODAX, and exposing Plaintiff to the harm alleged in this action. Plaintiff is working with multiple

law enforcement agencies to identify the hacker(s) involved in this matter, the XAPO and INDODAX accountholders, and others involved in this theft.

7. In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiff but respecting whom Plaintiff currently lacks specific facts to permit him to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiff is not waiving his right to amend this pleading to add such parties, should the facts warrant the addition of such parties.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

9. Furthermore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treatises of the United States. Additionally, the Court has supplemental jurisdiction over the California statutory and common law claims pursuant to 28 U.S.C. § 1337.

10. This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

11. Upon information and belief, Defendants each service accountholders in this jurisdiction and reap from those accountholders large sums of money and other assets, including valuable cryptocurrency.

12. Moreover, Defendants each either conduct business in and maintain operations in this District -- including operating computer servers and storage vaults -- or have sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper pursuant to 28 U.S.C. § 1391 in that: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (c) Defendants have received substantial compensation and other transfers of money and digital assets in this District by doing business here and engaging in activities having an effect in this District.

## **GENERAL ALLEGATIONS**

### I.    **Background on Cryptocurrency**

14.     Bitcoin ("BTC") and Ether ("ETH") are virtual currencies that may be traded on online exchanges for conventional currencies, including the U.S. Dollar, Euros, and the Japanese Yen, or used to purchase goods and services online.  Bitcoin and Ether have no single administrator or central authority or repository.

15.     Bitcoin and Ether are but two of the cryptocurrencies that investors typically use to trade on cryptocurrency exchanges -- both in spot transactions and in leveraged margin trading.

### II.    **Plaintiff's Assets Were Stolen from his Cryptocurrency Exchange Account**

16.     At all times relevant hereto, Plaintiff maintained an account at a Northern California-based cryptocurrency exchange ("U.S.A. EXCHANGE") in which Plaintiff held, among other digital currencies, bitcoin.

17.     On September 18, 2018, to prevent unauthorized access to his U.S.A. EXCHANGE account, Plaintiff secured his account with a new login two-factor authentication through Google Authenticator.

18.     On or about November 20, 2018, Plaintiff deposited into his U.S.A. EXCHANGE account 500 bitcoin (500 BTC) in three separate deposits: (1) a 200 BTC deposit, (2) a second 200 BTC deposit, and (3) a 100 BTC deposit.

19.     At the time Plaintiff made those deposits, the 500 BTC were valued at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00).[1]

20.     Just a few days after he had deposited the 500 BTC into his account, Plaintiff's account at U.S.A. EXCHANGE was infiltrated by JOHN DOE NOS. 1-10, who withdrew all 500 BTC over the course of slightly more than two days in November 2018, *to wit*:

| Date/Time of Cryptocurrency Theft | Cryptocurrency Assets Stolen | Approximate Value of Funds/Assets Stolen on Date of Theft[2] |
|---|---|---|
| November 21, 2018 10:54 a.m. | 66.99950 BTC | $305,000.00 |
| November 22, 2018 11:31 a.m. | 67.499950 BTC | $310,000.00 |
| November 23, 2018 11:49 a.m. | 66.99950 BTC | $305,000.00 |
| November 23, 2018 4:44 p.m. | 298.19950 BTC | $1,380,000.00 |
| TOTAL | 499.69845 BTC[3] | $2,300,000.00 |

21.     Undersigned counsel has engaged international investigative firm Kroll to trace the BTC transferred and withdrawn from Plaintiff's U.S.A. EXCHANGE account in or about November 21-23, 2018.

---

[1] As of the date of this filing, those 500 BTC are valued at approximately Four Million Five Hundred Thousand Dollars ($4,500,000.00).

[2] Valuation of the stolen funds/assets is calculated using market data compiled by www.CoinMarketCap.com, which takes the volume weighted average of all prices reported at several dozen cryptocurrency markets serving investors in the United States and abroad.

[3] Transaction fees assessed on each of these unauthorized withdrawals increased the total amount withdrawn to 500 BTC.

22.     As concluded by Kroll, 479.69 BTC of the 499.69845 BTC transferred from Plaintiff's U.S.A. EXCHANGE account were transferred to two deposit addresses controlled by INDODAX.

23.     From those two deposit addresses, the funds were then moved to a hot wallet[4] at INDODAX where, upon information and belief, the assets are still located.

24.     The Kroll analysis further shows that as of February 7, 2020, an additional 19.99 BTC of Plaintiff's original 499.69 BTC are held in two hot wallet addresses controlled by XAPO.

25.     As such, 499.68 of the 499.69845 BTC pilfered from Plaintiff's U.S.A. EXCHANGE account have been located, *to wit*:

| Owner of Source Addresses | Owner of Destination Addresses | Number of Destination Addresses | Total Estimated Amount of Funds Involved in the Event which were Sent from Source Addresses and Reached Destination Addresses |
|---|---|---|---|
| U.S.A. EXCHANGE | INDODAX (*deposit addresses and hot wallets*) | 3 | 479.69 BTC |
| U.S.A. EXCHANGE | XAPO (*hot wallets*) | 2 | 19.99 BTC |
| | | TOTAL | 499.68 BTC |

---

[4] A "hot wallet" refers to a cryptocurrency wallet that is online and connected in some way to the Internet. A "hot wallet" stands in contrast to "cold storage," which refers to a method for electronically storing cryptocurrency in a location that is not connected to the Internet.

26.     The Kroll analysis further suggests that there has been no obvious attempt to layer the transaction in such a way as to obfuscate the destination of the funds. Plaintiff's BTC was transferred from his U.S.A. EXCHANGE account to addresses at INDODAX and XAPO in less than half-a-dozen steps, as shown below, where nodes represent individual addresses and arrows represent groups of transactions between those addresses:



27.     Neither Plaintiff nor any person or entity under Plaintiff's control owns or controls any of the destination addresses at INDODAX or XAPO referenced above.

## III.    Due to Faulty Security or Knowing Indifference, Stolen Cryptocurrency is Often Stored at Xapo and Indodax

28.     In addition to Plaintiff's losses, Kroll also traced the origin of other BTC transferred to the two INDODAX deposit addresses and the two XAPO hot wallet

addresses to which Plaintiff's stolen BTC were sent; and Kroll concluded that the majority of the transfers into those four addresses came from U.S.A. EXCHANGE.

29.    Of the estimated 1,258.85 BTC transferred from attributable sources to the two INDODAX deposit addresses, 698.72 BTC (including Plaintiff's 479.69 BTC), or over 55%, was transferred from U.S.A. EXCHANGE.

30.    Of the estimated 105.4 BTC transferred from attributable sources to the two XAPO hot wallet addresses, 56.97 BTC (including Plaintiff's 19.99 BTC), or over 54% of those funds, were transferred from U.S.A. EXCHANGE.

31.    As such, a further 256.01 BTC were transferred from U.S.A. EXCHANGE to the same addresses that hold Plaintiff's stolen BTC.[5]

32.    As of the date of this filing, those 256.01 BTC are valued at approximately $2,300,000.00 USD, bringing the total value of the 755.69 BTC from U.S.A. EXCHANGE addresses currently held in the four INDODAX and XAPO addresses to approximately $6,800,000.00.[6]

33.    The methodology of the specific theft identified by Kroll -- with funds leaving U.S.A. EXCHANGE and a small split going to two XAPO wallets and the rest going to two INDODAX wallets -- appears to have been followed on more occasions than just the theft from Plaintiff, given the sums above.

34.    In the cryptocurrency industry -- just as in the financial and banking industries -- it is standard for custodial firms and exchanges like XAPO and INDODAX to employ rigorous "Know Your Customer" (KYC) and "Anti-Money-Laundering" (AML) policies and procedures.

35.    The general goal of AML is to ensure that firms are able to detect and prevent money laundering and to protect themselves and the financial systems in which they operate from the damage it causes.

---

[5] 219.03 BTC transferred to the INDODAX addresses and 36.98 BTC transferred to the XAPO addresses.

[6] Using a conversion of 1 BTC = $9,000.00 USD.

36.     KYC is important because the risk-based approach to AML is predicated upon firms knowing who their customers are and what level of money laundering risk they present.

37.     Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.

38.     In the instant matter, it appears that XAPO and INDODAX have permitted, whether intentionally or not, criminal activity by allowing their custodial vaults and exchanges to serve as shelters for thieves like Defendants JOHN DOE NOS. 1-10 to store purloined assets.

39.     Beyond the four addresses at INDODAX and XAPO, Kroll's initial analysis shows that more than 2,900 BTC have been transferred from over 24,000 U.S.A. EXCHANGE addresses to over 500 INDODAX addresses since January 2017 -- thus demonstrating that the U.S.A. EXCHANGE-to- INDODAX movement of the BTC stolen from Plaintiff is far from an isolated incident.

40.     XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings. For example, U.S.A. EXCHANGE knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.

41.     Moreover, XAPO and INDODAX each know or should have known that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff.

42.     Plaintiff brings this action to hold XAPO and INDODAX liable for aiding and abetting Defendants JOHN DOE NOS. 1-10's misappropriation of Plaintiff's assets

and for creating and maintaining systems that unjustly allow thieves to hide stolen property in XAPO's and INDODAX's custodial vaults.

43.     Plaintiff has duly performed all of his duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been  performed, or else have been excused or waived.

44.     To enforce his rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.

**COUNT I**
**Violation of California Penal Code § 496**
**(Possession of Stolen Property)**
**(By Plaintiff Against All Defendants)**

45.     Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 44 above, and further alleges:

46.     This cause of action asserts a claim against XAPO, INDODAX, and JOHN DOE NOS. 1-10 for the actual theft of Plaintiff's property as well as for receiving, aiding in concealing, and withholding from Plaintiff the stolen property.

47.     In pertinent part, Cal. Penal Code sec. 496(a) imposes liability upon "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained" and provides that "[a] principal in the actual theft of the property may be convicted pursuant to this section."

48.     Furthermore, Cal. Penal Code sec. 496(c) provides: "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

49.     Plaintiff's cryptocurrency assets were stolen from him, or were obtained by, Defendants JOHN DOES NO. 1-10 in a manner constituting theft.

10
COMPLAINT

by, Defendants JOHN DOE NOS. 1-10 in a manner constituting theft.

50.    Defendants JOHN DOE NOS. 1-10 knew the property was stolen.

51.    Likewise, Defendants XAPO and INDODAX knew or should have known the property was so stolen or obtained.

52.    Defendants received and had (and, upon information and belief, still have) possession of the property stolen from Plaintiff.

53.    Defendants are liable to Plaintiff for three times the amount of Plaintiff's actual damages, the costs of this suit, and all reasonable attorney's fees incurred by plaintiff in connection herewith.

## COUNT II
### Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4)
### (Computer Fraud and Abuse Act)
### (By Plaintiff Against All Defendants)

54.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 44 above, and further alleges:

55.    This cause of action asserts a claim against XAPO and INDODAX for violations of 18 U.S.C. § 1030(a)(4) (the "Computer Fraud and Abuse Act") for aiding an abetting unauthorized access to a protected computer to obtain property, done with an intent to defraud, and for furthering fraudulent activity thereby to obtain something of value.

56.    The computer Plaintiff used to access and manage his cryptocurrency accounts is a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) because it is used in interstate or foreign commerce or communication, including sending and receiving electronic mail and accessing and interacting with the internet.

57.    Defendants JOHN DOE NOS. 1-10, without authorization or by exceeding authorization conditionally granted to any of them, accessed, knowingly and with intent to defraud Plaintiff, Plaintiff's protected computer.

58.    By their conduct, the unknown and unauthorized Defendants JOHN DOE NOS. 1-10 intentionally furthered a fraud upon Plaintiff and obtained Plaintiff's valuable

cryptocurrency.

59. Defendants XAPO and INDODAX provided the unknown and unauthorized persons vital assistance in carrying out the fraud by providing them safe havens -- and continue to do so through the date of this filing -- that allowed the unknown and unauthorized Defendants JOHN DOE NOS. 1-10 to hide stolen property in XAPO's and INDODAX's custodial vaults.

60. Defendants XAPO and INDODAX knew or should have known the property was so stolen or obtained.

61. As a consequence of Defendants' actions and omissions, Plaintiff has suffered damages.

## COUNT III
### Violation of California Penal Code § 502 *et seq.*
### (Assisting Unlawful Access To Computer)
### (By Plaintiff Against All Defendants)

62. Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 -44 above, and further alleges:

63. This cause of action asserts a claim against XAPO and INDODAX for violations of California Penal Code § 502 *et seq.* for knowingly and without permission allowing an unauthorized third party(ies) to access Plaintiff's computers, computer systems, and computer networks.

64. As alleged herein, XAPO and INDODAX, in or about November-December 2018, provided safe haven to unauthorized parties Defendants JOHN DOE NOS. 1-10 -- and continue to do so through the date of this filing -- that allowed them to hide stolen property in XAPO's and INDODAX's custodial vaults.

65. At the time XAPO and INDODAX provided safe harbor and secure vaulting of the funds stolen from Plaintiff, XAPO and INDODAX were aware of the prevalence of money laundering and the need to prevent such activity from taking place under, or with the assistance of, their custodianship.

66. Although XAPO and INDODAX were aware of the necessity for safeguards providing for KYC and AML standards and to protect against trafficking of stolen property, XAPO and INDODAX did not adhere to those safeguards -- thus allowing Defendants JOHN DOE NOS. 1-10 to use XAPO and INDODAX's vaults as purported "safe havens" to hide the assets stolen from Plaintiff and others.

67. Instead, XAPO and INDODAX cooperated with Defendants JOHN DOE NOS. 1-10 and provided them substantial assistance by accepting the cryptocurrency stolen by Defendants JOHN DOE NOS. 1-10.

68. XAPO and INDODAX's blatant disregard of applicable security procedures as well as their willing cooperation with the hackers/thieves constitutes knowing cooperation with an unauthorized individual accessing Plaintiff's computers, computer systems, and computer networks.

69. Because of the conduct of XAPO and INDODAX as alleged herein, Plaintiff is entitled to compensatory damages and injunctive relief under Penal Code § 502(e)(1). Plaintiff is also entitled to reasonable attorneys' fees pursuant to Penal Code § 502(e)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for relief and judgment against Defendants, as follows:

    A. An award of any and all damages recoverable under law -- jointly and severally entered against Defendants -- including but not limited to compensatory damages, punitive damages, incidental damages, and consequential damages;

    B. Return of Plaintiff's stolen personal property;

    C. An award of pre-judgment and post-judgment interest;

    D. An award of Plaintiff's reasonable attorney's fees, expenses and the costs of this action; and

E. An award granting other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all claims so triable.

**REIF LAW GROUP, P.C.**

Dated: June 1, 2020

By: *Brandon S. Reif*

Brandon S. Reif

David C. Silver (to be admitted *pro hac vice*)
Jason S. Miller (to be admitted *pro hac vice*)
**SILVER MILLER**

*Attorneys for Plaintiff Dennis Nowak*