```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
      NOWAK,                     )   CV-20-3643-BLF
 5                               )
                  PLAINTIFF,     )   SAN JOSE, CALIFORNIA
 6                               )
            VS.                  )   NOVEMBER 12, 2020
 7                               )
      XAPO, INC. ET AL,          )   PAGES 1-12
 8                               )
                  DEFENDANT.     )
 9                               )
      _____)
10
                   TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE BETH LABSON FREEMAN
                  UNITED STATES DISTRICT JUDGE
12

13                    A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:     BY:  DAVID CHAD SILVER
                              SILVER MILLER
16                            11780 W SAMPLE RD
                              CORAL SPRINGS, FL 33065
17

18

19     FOR THE DEFENDANT:     BY:  STEVEN PAUL RAGLAND
                                   VICTOR CHIU
20                            KEKER, VAN NEST & PETERS LLP
                              633 BATTERY STREET
21                            SAN FRANCISCO, CA 94111

22

23     OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1          SAN JOSE, CALIFORNIA              NOVEMBER 12, 2020

2                    P R O C E E D I N G S

3          (COURT CONVENED AT 9:00 A.M.)

4              THE CLERK:  CALLING CASE 20-3643.  NOWAK VERSUS XAPO,

5      ET AL.

6          COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES.  AND

7      IF WE COULD BEGIN WITH PLAINTIFFS AND THEN MOVE TO DEFENDANTS.

8              MR. SILVER:  DAVID SILVER FOR PLAINTIFF, DENNIS

9      NOWAK.

10             THE COURT:  GOOD MORNING, MR. SILVER.

11             MR. RAGLAND:  GOOD MORNING, YOUR HONOR.

12         STEVEN RAGLAND WITH KECKER, VAN NEST & PETERS ON BEHALF OF

13     XAPO, INC.  I'M ALSO JOINED BY MY COLLEAGUE, VICTOR CHIU.

14             THE COURT:  GOOD MORNING.

15             MR. CHIU:  GOOD MORNING, YOUR HONOR.

16             THE COURT:  ALL RIGHT.  LET ME GIVE YOU SOME COMMENTS

17     THAT I HAVE, HAVING REVIEWED THE PAPERS, AND THEN I WILL HEAR

18     ARGUMENT FROM YOU.

19         MR. SILVER, I CERTAINLY RECOGNIZE WHY YOUR CLIENT, HAVING

20     SUFFERED THIS ENORMOUS THEFT, WOULD BE GOING AFTER A DEEP

21     POCKET, I JUST DON'T THINK YOUR THEORIES OF LIABILITY HOLD UP.

22         I DON'T SEE HOW YOUR CFAA CLAIM CAN GO FORWARD.  I DON'T

23     SEE AN AIDING AND ABETTING CLAIM UNDER FEDERAL LAW FOR THIS

24     STATUTE.  AND EVEN IF THERE WAS ONE, IT WOULD HAVE TO BE AIDING

25     AND ABETTING THE HACK ITSELF, NOT HAVING THE BUCKET READY TO,
```

1    FOR ANYONE TO PUT MONEY IN, NOT JUST FOR THIEVES.  SO I JUST

2    DON'T SEE HOW THAT THEORY EVEN WORKS.

3         I ALSO DON'T THINK THAT YOU HAVE ALLEGED DAMAGES OR LOSS

4    UNDER THE STATUTE.  AND ALTHOUGH IT IS AN OUT-OF-DISTRICT CASE,

5    THE DCR MARKETING CASE I THINK IS DIRECTLY ON POINT, AND I TEND

6    TO AGREE WITH IT.

7         I WOULD CERTAINLY GIVE YOU LEAVE TO AMEND TO EXPLAIN WHAT

8    KROLL DID.  THE WAY YOU DESCRIBE WHAT KROLL DID DOESN'T APPEAR

9    TO BE IN LINE WITH THE KIND OF INVESTIGATIVE FEES THAT YOU

10   COULD RECOVER UNDER THE STATUTE, BUT I THINK IT WOULD CERTAINLY

11   BE FAIR TO LET YOU AMEND.  AND IN FACT, I WILL GIVE YOU ONE

12   MORE CHANCE ON THE WHOLE CASE.  I DO THINK THAT SECTION 9(B)

13   APPLIES, AND I DON'T HAVE PLEADING WITH PARTICULARITY UNDER

14   SECTION 9(B).

15        YOU ALSO HAVE MERGED THE XAPO DEFENDANTS AS IF THEY ARE

16   ONE, WITHOUT ALLEGING ANY FACTS TO SHOW ME THAT THEY ARE.  THE

17   FACT THAT THEY ARE A FAMILY OF COMPANIES THAT PUTS OUT A SINGLE

18   WEBSITE SIMPLY ISN'T ENOUGH.

19        SO AGAIN, I WOULD BE GLAD TO GIVE YOU THE OPPORTUNITY, BUT

20   YOU HAVE TO ALLEGE WHAT THEY DID SEPARATELY.  IT'S NOT ACTUALLY

21   CLEAR TO ME, ALTHOUGH YOU ARGUE IT IN YOUR OPPOSITION, THAT

22   ANYTHING HAPPENED IN CALIFORNIA OR THAT THE FUNDS WERE IN THE

23   XAPO, INC. ACCOUNTS AS OPPOSED TO THE XAPO GIBRALTAR.  AND XAPO

24   GIBRALTAR HAS NOT BEEN SERVED, OR AT LEAST THEY HAVEN'T

25   APPEARED.  I DON'T KNOW WHETHER YOU ARE GOING THROUGH THE HAGUE

1    CONVENTION, AND IT JUST TAKES AN EXTRAORDINARY AMOUNT OF TIME,

2    OR QUITE WHERE WE ARE ON THAT.

3        THE PROBLEM I HAVE WITH THE OTHER CLAIMS WHICH ARE UNDER

4    STATE LAW, FIRST, IF I DON'T ALLOW THE CFAA CLAIM, I PROBABLY

5    WILL NOT ACCEPT SUPPLEMENTAL JURISDICTION.

6        HOWEVER, SINCE I'M GIVING YOU LEAVE TO AMEND, I WANT TO

7    WALK THROUGH THOSE STATE LAW CLAIMS, BUT I DON'T THINK THAT YOU

8    HAVE IDENTIFIED FACTS THAT SHOW KNOWLEDGE AND THE INTENT THAT

9    IS NECESSARY UNDER THOSE STATUTES FOR RECEIVING STOLEN GOODS.

10        YOU BASICALLY ALLEGE THAT THE POLICIES, KNOW YOUR CLIENT,

11   OR KNOW YOUR CUSTOMER, AND ANTI-MONEY LAUNDERING, THAT BECAUSE

12   THIS THEFT OCCURRED AND THE FUNDS WERE DEPOSITED AT XAPO,

13   THEREFORE, IPSE DIXIT, THE POLICIES COULD NOT HAVE BEEN

14   ADEQUATE.  THAT'S NOT TELLING ME ANYTHING, I'M IN A BIG CIRCLE

15   THERE, SO I NEED SOME FACTS ON THAT.

16        I DON'T EVEN KNOW WHAT THE STANDARD IS.  I DON'T EVEN KNOW

17   WHAT'S REQUIRED OF COMPANIES.  BUT YOU'RE BASICALLY MAKING THE

18   XAPO THE GUARANTOR THAT NO ILLEGAL FUNDS WILL GO INTO THEIR

19   ACCOUNTS, BASED ON THE WAY YOU'VE ALLEGED IT SO FAR, AND THAT

20   IS SIMPLY NOT SUFFICIENT.

21        I CAN'T TELL, IN TERMS OF RECEIPT OF STOLEN PROPERTY,

22   WHETHER THIS IS MERE NEGLIGENCE OR ACTUALLY SUFFICIENT

23   DELIBERATE IGNORANCE WHERE THEY KNEW THAT THERE WAS A

24   PROBABILITY THAT THIS SORT OF THING WOULD HAPPEN.

25        SO I'M JUST NOT -- AS YOU CAN SEE, I THINK YOU HAVE A LONG

1    WAY TO GO ON YOUR CLAIMS.  AND THERE ARE SOME OTHER ISSUES,

2    MR. RAGLAND, I KNOW THAT YOU BROUGHT UP IN YOUR PAPERS, AND I

3    WILL CERTAINLY INVITE YOU TO HAVE COMMENTS ON THOSE.

4         AND AS I SAY, I'M CERTAINLY WILLING TO GIVE MR. SILVER ONE

5    MORE PASS THROUGH THIS.

6         SO MR. RAGLAND, IT'S YOUR MOTION, WOULD YOU LIKE TO GET

7    STARTED?

8              MR. RAGLAND:  THANK YOU, YOUR HONOR.

9         I DON'T THINK I NEED TO ARGUE THE MOTION, GIVEN

10    YOUR HONOR'S COMMENTS.

11         I WILL NOTE, HOWEVER, I AM SPECIALLY APPEARING ON BEHALF

12    OF XAPO GIBRALTAR, AND IT HAS BEEN SERVED.

13              THE COURT:  OH, OKAY.  THANK YOU.

14              MR. RAGLAND:  WE HAVE, YOUR HONOR, A RESPONSE DATE TO

15    THE COMPLAINT ON BEHALF OF XAPO GIBRALTAR OF NOVEMBER 20TH.  I

16    EXPECT, GIVEN YOUR HONOR'S COMMENTS, THAT WE ARE NOT GOING TO

17    NEED TO RESPOND TO THE COMPLAINT BECAUSE IT WILL BE DISMISSED

18    AND THERE WILL BE AN AMENDED COMPLAINT, BUT I JUST WANT TO MAKE

19    SURE THAT'S CLEAR SO I DON'T MISS ANY OF MY DEADLINES.

20              THE COURT:  GOOD.  AND AT THE CONCLUSION OF THIS

21    HEARING IF I STICK TO MY TENTATIVE, THEN I'M SURE MR. SILVER

22    WOULD BE GLAD TO STIPULATE TO EXTEND XAPO GIBRALTAR'S ANSWER

23    UNTIL THE AMENDED COMPLAINT IS FILED, BECAUSE IT WOULD BE A

24    WASTE OF EVERYBODY'S TIME.

25         ALL RIGHT.  I KNOW THERE WERE OTHER POINTS YOU MADE IN

1    YOUR PAPERS.  WAS THERE ANYTHING ELSE YOU WANTED TO COMMENT ON?

2              MR. RAGLAND:  I DON'T THINK THERE'S ANYTHING ELSE I

3    NEED TO COMMENT ON AT THIS TIME, YOUR HONOR.

4         I'M HAPPY TO ANSWER ANY QUESTIONS OR ADDRESS THINGS THAT

5    MAY COME UP FROM MR. SILVER.

6              THE COURT:  OKAY.  AND I WILL LET YOU HAVE THE LAST

7    WORD AS WELL.

8         MR. SILVER, COMMENTS?

9              MR. SILVER:  I THINK YOUR HONOR HAS BEEN PRETTY CLEAR

10   AND THAT YOU WOULD EXPECT TO SEE AN AMENDED COMPLAINT.

11        I TAKE NO ISSUE.  I DON'T THINK IT'S WORTH SPLITTING HAIRS

12   AT THIS TIME OVER SOME OF THE LEGALESE, AS I DO BELIEVE WE WILL

13   HAVE SUFFICIENT FACTS TO SATISFY YOUR HONOR IN AN AMENDED

14   COMPLAINT.

15        SO FROM THAT -- AND I AGREE I HAVE NO ISSUE, AS LONG AS WE

16   ARE GOING TO PUSH BACK THE XAPO GIBRALTAR, WE CAN MAKE

17   EVERYTHING ONE UNIFORM SCHEDULE MOVING ORDER FORWARD.

18              THE COURT:  GOOD.  THAT'S GREAT.

19              MR. SILVER:  SORRY, ONE OTHER POINT.

20        INDODAX ALSO APPEARS, GIVEN YOUR RULING, THEY DID -- WE

21   SERVED THEM THROUGH THE ALTERNATIVE SERVICE THAT YOU APPROVED.

22   COUNSEL CONTACTED ME, APPEARED, WE AGREED TO PUSH BACK.  SINCE

23   I WILL DO AN AMENDED COMPLAINT, I WILL DO AN AMENDED COMPLAINT

24   TO EVERYBODY.

25        SO I THINK IF WE DO THAT, IF YOU GIVE ME, SAY -- I'M A

```
1       LITTLE SHORT STAFFED AS WE -- AS SOME OF YOU ARE IN THE
2       EPICENTER OF WHAT'S GOING ON, WE WOULD APPRECIATE 30 DAYS FOR
3       AN AMENDED COMPLAINT, AND THEN WE CAN DO A BRIEFING SCHEDULE
4       FOR EVERYONE FROM THERE ON OUT.
5               THE COURT:  I THINK 30 DAYS IS MORE THAN REASONABLE.
6           MR. RAGLAND, YOU DON'T DISAGREE WITH THAT, DO YOU?
7               MR. RAGLAND:  NO, I DON'T.  AND WITH THE BRIEFING
8       SCHEDULE, WE JUST NEED TO TAKE ACCOUNT THE HOLIDAYS.
9               THE COURT:  OF COURSE.  YOU BEAT ME TO IT.
10          I WOULD EXPECT THAT IF YOU FILED YOUR AMENDED COMPLAINT ON
11      THE 12TH OF DECEMBER, THAT YOU WILL GIVE ALL THE DEFENDANTS AT
12      LEAST UNTIL THE MIDDLE OF JANUARY TO FILE A RESPONSE.
13          WE ALL NEED SOME VACATION, THIS HAS BEEN A HARD YEAR.  AND
14      IF THAT CAN'T BE WORKED OUT, MR. RAGLAND, YOU CAN ASK ME, BUT
15      MR. SILVER SOUNDS LIKE HE'S QUITE REASONABLE TO WORK WITH.
16              MR. RAGLAND:  I'M SURE WE COULD FIGURE IT OUT,
17      YOUR HONOR.
18              MR. SILVER:  NO ISSUE ON THAT, YOUR HONOR.
19              THE COURT:  OKAY.  AND INDODAX OF COURSE MAY HAVE,
20      AND XAPO GIBRALTAR MAY HAVE PERSONAL JURISDICTION ISSUES THAT
21      THEY ARE GOING TO BE RAISING.
22          SO LET ME MAKE A COUPLE OF THINGS CLEAR.  YOU CANNOT FILE,
23      MR. RAGLAND, SEPARATE BRIEFS FOR XAPO GIBRALTAR AND XAPO, INC.
24      IT'S ONE BRIEF, THE NORMAL PAGE LIMITS.  ARE YOU REPRESENTING
25      INDODAX?
```

```
1              MR. RAGLAND:  I AM NOT, YOUR HONOR.

2              THE COURT:  OKAY.  WELL, THEN THEY WILL FILE WHATEVER

3    THEY WANT TO FILE.  MAYBE THEY WILL JUST ANSWER, ONE NEVER

4    KNOWS, OR MAYBE THEY WILL DO NOTHING.

5              THEY HAVE BEEN SERVED, YOU'VE HEARD FROM COUNSEL, I EXPECT

6    THERE WILL BE SOME PERSONAL JURISDICTION ISSUES FOR THOSE

7    COMPANIES, BECAUSE THERE USUALLY ARE.  AND MR. SILVER, YOU MAY

8    HAVE ALREADY HAD THAT CONVERSATION WITH THEM.

9              MR. SILVER:  I HAVE.  THEY ARE COMPETENT COUNSEL, I

10   EXPECT THEM TO COME IN AND MOVE TO DISMISS.

11             MR. RAGLAND:  SO YOUR HONOR, ONE QUESTION, JUST SO

12   I'M CLEAR, BECAUSE I DO BELIEVE THAT XAPO GIBRALTAR WILL HAVE

13   JURISDICTIONAL DEFENSES, SO ALL OF THAT NEEDS TO FIT INTO ONE

14   BRIEF, INCLUDING ALL THE 12(B)(6)?

15             THE COURT:  YOU GET ONE RULE 12 MOTION FOR ALL YOUR

16   CLIENTS, AND IT JUST DOESN'T TAKE THAT MUCH -- THERE'S JUST NOT

17   THAT MUCH TO SAY ON PERSONAL JURISDICTION, FRANKLY.

18             MR. RAGLAND:  RIGHT.  RIGHT.  UNDERSTOOD.

19             THE COURT:  NOW I'M GOING TO -- I DON'T KNOW WHETHER

20   JURISDICTIONAL DISCOVERY IS GOING TO BE AN ISSUE, AND I JUST --

21   JUST LET ME ADDRESS THAT TO SAVE SOME TIME.

22             IT MIGHT NOT BE NECESSARY, BUT IT'S NOT ENOUGH IN AN

23   OPPOSITION TO SIMPLY SAY, WE NEED JURISDICTIONAL DISCOVERY.  I

24   ACTUALLY NEED A DISCOVERY PLAN AND A TIMELINE FOR ME TO EVEN

25   CONSIDER IT, AND THAT NEEDS TO BE WITHIN YOUR OPPOSITION OF
```

1    25 PAGES.

2        SOMETIMES I NEED TO RULE ON THE INITIAL MOTION TO KNOW

3    WHETHER JURISDICTIONAL DISCOVERY IS APPROPRIATE, THAT I CAN'T

4    JUST SHORT CIRCUIT THE PROCESS.

5        SOME PARTIES -- SOMETIMES PLAINTIFFS COME IN AND THEY ASK

6    FOR JURISDICTIONAL DISCOVERY BEFORE I'VE BEEN ABLE TO CONSIDER

7    THE MOTION.  AND I MEAN, THERE HAVE BEEN SOME CASES WHERE I'VE

8    SIMPLY DENIED JURISDICTIONAL DISCOVERY AND GRANTED THE MOTION

9    TO DISMISS, BECAUSE IT BECOMES CLEAR THAT THERE'S NOTHING

10   THERE.

11       I DON'T KNOW ANYTHING ABOUT THIS CASE WITH THESE OTHER

12   PARTIES, I HAVEN'T SEEN THEM AT ALL, BUT I JUST WANT TO SAVE

13   YOU ALL THE EFFORT, AND THAT SHOULD MAKE IT CLEAR.

14       IF THE -- IF A MOTION TO DISMISS IS FILED, SAY

15   MID-JANUARY, I'M NOT GOING TO SEE YOU UNTIL MID-SPRING, APRIL,

16   MAY.  IT'S GOING TO BE QUITE A BIT OF TIME, AND IT MAY EVEN BE

17   THAT THERE'S TIME FOR YOU TO WORK OUT, BY AGREEMENT, CERTAIN

18   DISCOVERY, IF IT'S CLEAR THAT THAT WOULD BE HELPFUL.

19       SO ONCE YOU FILE THE MOTIONS TO DISMISS AND GET A HEARING

20   DATE, YOU WILL SEE HOW MUCH TIME YOU HAVE, IF YOU WANT TO

21   MODIFY THE BRIEFING SCHEDULE, A STIP AND ORDER IS ABSOLUTELY

22   FINE, I JUST REQUIRE THE CLOSING BRIEFS TO BE AT LEAST 14 DAYS

23   BEFORE THE HEARING.

24       AND LET ME JUST COMMENT -- LET ME LOOK IN YOUR PAPERS, I

25   DON'T THINK THAT IT WOULD AN ISSUE, MERCIFULLY I DON'T THINK

1    YOU ARE PEOPLE WHO FOOTNOTE A LOT, WHICH I REALLY APPRECIATE,

2    BUT JUST A LITTLE BIT.

3        LET ME JUST COMMENT THAT IF YOU MUST USE FOOTNOTES, WHICH

4    I SOMETIMES READ AND MOSTLY DON'T, THEY MUST BE DOUBLE SPACED

5    AND 12 POINT FONT, OTHERWISE I WILL JUST STRIKE YOUR BRIEF AND

6    YOU WILL HAVE TO REDO IT FOR ME.

7        THAT'S ALL IN MY STANDING ORDERS, BUT YOU KNOW,

8    SOMETIMES -- AND MY ORDERS HAVE FOOTNOTES, I KNOW.  SOMETIMES A

9    FOOTNOTE IS AN ASIDE OF SOMETHING YOU JUST WANT TO NOTE.  BUT

10   BOB YOUR HEAD UP AND DOWN OFTEN TIMES IN A DAY LOOKING AT

11   FOOTNOTES AND TEXT, AND YOU WILL SEE RIGHT AWAY WHY I DON'T

12   LIKE FOOTNOTES.  YOU KNOW, I DON'T KNOW WHAT HAPPENED TO THE

13   GOOD OLD FASHIONED PARENTHETICAL, I REALLY MUCH PREFER THAT,

14   BUT I'M NOT CUTTING DOWN ANYTHING YOU CAN SAY IN YOUR BRIEF,

15   BUT JUST HOW YOU FORMAT IT.

16       ALL RIGHT.  I'M GOING TO PUT OUT A VERY BRIEF ORDER ON

17   THIS, MR. SILVER.  I THINK YOU UNDERSTAND.  CLEARLY YOU HAD THE

18   EXCELLENT BRIEFING FROM MR. RAGLAND AS WELL THAT OUTLINED THE

19   CONCERNS.  AND THEN 30 DAYS FROM THE DATE OF MY ORDER, OKAY.

20           MR. SILVER:  THANK YOU VERY MUCH, YOUR HONOR.

21           MR. RAGLAND:  THANK YOU, YOUR HONOR.

22       HOPEFULLY WE WILL SEE YOU IN PERSON IN THE SPRING.

23           THE COURT:  I HOPE SO.  I HOPE SO.  MAYBE WE CAN GET

24   SOME GOOD NEWS, WE CAN READ ABOUT A VACCINE, BUT THE WINTER IS

25   GOING TO BE A LITTLE BIT TIGHT, I THINK.

1           ALL RIGHT.  THANK YOU ALL.  I THINK THAT TAKES CARE OF

2      THIS MOTION.

3               MR. RAGLAND:  THANK YOU.

4               MR. SILVER:  THANK YOU, YOUR HONOR.

5          (THE PROCEEDINGS WERE CONCLUDED AT 9:13 A.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 11/19/20