KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
VICTOR T. CHIU - # 305404
vchiu@keker.com
JASON S. GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
XAPO, INC.

Specially appearing on behalf of
XAPO (GIBRALTAR) LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>                 Plaintiff,<br><br>        v.<br><br>XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals,<br><br>                 Defendants. | Case No. 5:20-CV-03643-BLF<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS XAPO, INC. AND XAPO (GIBRALTAR) LIMITED TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        May 27, 2021<br>Time:        9:00 a.m.<br>Dept.:       Courtroom 3 – 5th Floor<br>Judge:       Hon. Beth Labson Freeman<br><br>Date Filed:  June 1, 2020<br><br>Trial Date:  None set |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ i

STATEMENT OF ISSUES TO BE DECIDED ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.    INTRODUCTION ..............................................................................................1

II.   BACKGROUND ................................................................................................3

III.  ARGUMENT .....................................................................................................4

    A.    The Court should dismiss for lack of subject matter jurisdiction. ...........................4

    B.    This Court has no personal jurisdiction over Xapo Gibraltar. .................................5

        1.    Xapo Gibraltar is not subject to general jurisdiction in California. .............6

        2.    Xapo Gibraltar is not subject to specific jurisdiction in California. ............7

        3.    Plaintiff cannot establish an alter-ego theory of jurisdiction. ......................9

            a.    The Xapo entities do not have a "unity of interest or ownership." ................................................................................9

            b.    Plaintiff fails to allege any "fraud or injustice" tied to the Xapo entities' corporate form. ........................................14

    C.    Plaintiff fails to adequately allege any claims against Xapo, Inc. or Xapo Gibraltar. ............................................................................................14

        1.    Plaintiff cannot state a claim against either Xapo, Inc. or Xapo Gibraltar because he has again improperly lumped them together. ...........14

        2.    Plaintiff fails to allege a sufficient California nexus for any claim. ..........15

        3.    Plaintiff fails to state a claim for aiding and abetting conversion and fraud (Counts II and III). .............................................................17

            a.    Plaintiff fails to allege that either Xapo entity had actual knowledge of conversion or fraud. .................................17

            b.    Plaintiff fails to allege "substantial assistance" to conversion or fraud. .......................................................................19

        4.    Plaintiff fails to state a claim for negligence (Count VI). .........................20

            a.    Neither Xapo, Inc. nor Xapo Gibraltar owes any duty of care to Plaintiff, a noncustomer. ................................................20

            b.    Plaintiff fails to allege breach of any cognizable duty. ...............22

1              5.     Plaintiff fails to state a claim for constructive trust (Count IX). ...............23

2       D.     The Court should dismiss without leave to amend. .................................................23

3   IV.     CONCLUSION...........................................................................................................24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abedi v. New Age Med. Clinic PA*,
No. 17-CV-1618-AWI, 2018 WL 3155618 (E.D. Cal. June 25, 2018) ...................................8

*Apple Inc. v. Allan & Assocs. Ltd.*,
445 F. Supp. 3d 42 (N.D. Cal. 2020) ...................................................................................12

*Asahi Metal Indus. Co. v. Super. Ct.*,
480 U.S. 102 (1987)...............................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................15

*Berk v. Coinbase, Inc.*,
No. 19-16594, 2020 WL 7658357 (9th Cir. Dec. 23, 2020)................................................22

*BNSF Railway Co. v. Tyrrell*,
137 S. Ct. 1549 (2017)...........................................................................................................6

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)...............................................................................................................5

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
No. 15-CV-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ...................................16

*Chunghwa Telecom Glob., Inc. v. Medcom, LLC*,
No. 13-CV-02104-HRL, 2013 WL 5688941 (N.D. Cal. Oct. 16, 2013) .................................7

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) .................................................................................11

*Cotton v. Wells Fargo Bank N.A.*,
No. 11-CV-1001758-CJC, 2011 WL 13227816 (C.D. Cal. Feb. 22, 2011) ..........................20

*Craig v. Atl. Richfield Co.*,
19 F.3d 472 (9th Cir. 1994) ...................................................................................................5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)................................................................................................................6

*Daniels Sharpsmart, Inc. v. Smith*,
889 F.3d 608 (9th Cir. 2018) ...............................................................................................17

*Diaz v. Intuit, Inc.*,
No. 15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018)...........................20, 21

*Ehret v. Uber Tech. Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...................................................................15

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ......................................................................17, 18

*GEC US 1 LLC v. Frontier Renewables, LLC*,
    No. 16-CV-1276-YGR, 2017 WL 605070 (N.D. Cal. Feb. 15, 2017) ...................................10

*Glass Egg Digital Media v. Gameloft, Inc.*,
    No. 17-CV-04165-MMC, 2018 WL 500243 (N.D. Cal. Jan. 22, 2018)...............................11

*Guan v. Bi*,
    No. 13-CV-05537-WHO, 2014 WL 953757 (N.D. Cal. Mar. 6, 2014)...................................5

*Harris Rutsky & Co. Insurance Services v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ...............................................................11, 12, 14

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*,
    270 F. App'x 570 (9th Cir. 2008) ...............................................................20, 23

*Lee v. Am. Nat. Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ..........................................................................5

*Mackintosh v. JPMorgan Chase Bank*,
    No. 18-CV-03348-SK, 2018 WL 3913791 (N.D. Cal. July 13, 2018) ...................................17

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    No. 19-CV-03345-EMC, 2019 WL 4963253 (N.D. Cal. Oct. 8, 2019) ...........................12, 13

*Namer v. Bank of Am.*,
    No. 16-CV-3024, 2017 WL 4391710 (S.D. Cal. Oct. 2, 2017) ......................................18

*Nat'l Collegiate Athletic Ass'n v. Miller*,
    10 F.3d 633 (9th Cir. 1993) .........................................................................17

*Nelson v. Fluoropharma Med., Inc.*,
    No. 12-CV-2674-BEN, 2013 WL 12097687 (S.D. Cal. May 7, 2013) ...................................7

*NetApp, Inc. v. Nimble Storage, Inc.*,
    No. 13-CV-05058-LHK, 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ...................................13

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ..................................................................14

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
    20 F.3d 987 (9th Cir. 1994) ..........................................................................5

*Park Miller, LLC v. Durham Grp., Ltd.*,
    No. 19-CV-04185-WHO, 2020 WL 1955652 (N.D. Cal. Apr. 23, 2020) .............................14

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985) ................................................................................................17

*Picot v. Weston*,
　780 F.3d 1206 (9th Cir. 2015) ...................................................................................7

*Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
　No. 16-CV-00669-YGR, 2017 WL 201703 (N.D. Cal. Jan. 18, 2017) ...................14

*Ranza v. Nike, Inc.*,
　793 F.3d 1059 (9th Cir. 2015) ....................................................................6, 9, 12, 14

*Reddy v. Litton Indus., Inc.*,
　912 F.2d 291 (9th Cir. 1990) ...................................................................................23

*Republic of Kazakhstan v. Ketebaev*,
　No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017) .................8

*Reynolds v. Binance Holdings Ltd.*,
　No. 20-CV-02117-JSC, 2020 WL 5074391 (N.D. Cal. Aug. 26, 2020)............10, 14

*Rojas v. Hamm*,
　No. 18-CV-01779-WHO, 2019 WL 3779706 (N.D. Cal. Aug. 12, 2019) .....9, 10, 11

*Royal Primo Corp. v. Whitewater W. Indus., Ltd*,
　No. 15-CV-04391-JCS, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016) ...................16

*Rush v. Savchuk*,
　444 U.S. 320 (1980) ...................................................................................................5

*Russo v. APL Marine Servs., Ltd.*,
　135 F. Supp. 3d 1089 (C.D. Cal. 2015) ...................................................................17

*S. Cal. Gas Leak Cases*, 7 Cal. 5th 391 (2019).............................................................20

*Sajfr v. BBG Commc'ns, Inc.*,
　No. 10-CV-2341-AJB, 2012 WL 398991 (S.D. Cal. Jan. 10, 2012) .......................16

*Sanford v. MemberWorks, Inc.*,
　625 F.3d 550 (9th Cir. 2010) .....................................................................................5

*Schwarzenegger v. Fred Martin Motor Co.*,
　374 F.3d 797 (9th Cir. 2004) .....................................................................................6

*Stewart v. Screen Gems-EMI Music, Inc.*,
　81 F. Supp. 3d 938 (N.D. Cal. 2015) ......................................................................12

*Talece Inc. v. Zheng Zhang*,
　No. 20-CV-03579-BLF, 2020 WL 6205241 (N.D. Cal. Oct. 22, 2020).................17

*Tidenberg v. Bidz.com, Inc.*,
   No. 08-CV-5553-PSG, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ......................................17

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...............................................................................................................12, 13

*Vacless Sys., Inc. v. Vac-Alert IP Holdings, LLC*,
   No. 10-CV-09284-SVW, 2011 WL 13217924 (C.D. Cal. June 24, 2011)............................13

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................................................7, 8

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...............................................................................15, 16

**State Cases**

*Biakanja v. Irving*,
   49 Cal. 2d 647 (1958) ...............................................................................................................21

*Casey v. U.S. Bank Nat'l Assn.*,
   127 Cal. App. 4th 1138 (2005) ........................................................................................ *passim*

*Chazen v. Centennial Bank*,
   61 Cal. App. 4th 532 (1998) .....................................................................................................21

*Higgins v. Higgins*,
   11 Cal. App. 5th 648 (2017) .....................................................................................................23

*Software Design & Application, Ltd. v. Hoefer & Arnett, LLC*,
   49 Cal. App. 4th 472 (1996) ..........................................................................................20, 21, 22

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) .......................................................................................................15, 16

*Wallman v. Suddock*,
   200 Cal. App. 4th 1288 (2011) .................................................................................................20

**Federal Statutes**

18 U.S.C. § 1030.............................................................................................................................4

28 U.S.C. § 1331.............................................................................................................................4

28 U.S.C. § 1332.............................................................................................................................4

28 U.S.C. § 1367.............................................................................................................................5

**State Statutes**

Cal. Civil Code § 1714...................................................................................................................16

Cal. Civil Code § 1709.................................................................................................16

Cal. Civil Code § 1710.................................................................................................16

Cal. Civil Code § 3336.................................................................................................16

Cal. Penal Code § 496.................................................................................................24

**Rules**

Fed. R. Civ. P. 8.........................................................................................................17

Fed. R. Civ. P. 9.........................................................................................................17

Fed. R. Civ. P. 12...............................................................................................1, 3, 14

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 27, 2021, at 9:00 a.m., or as soon thereafter as this matter can be heard, in the courtroom of District Judge Beth Labson Freeman, located at 280 South 1st Street, San Jose, CA 95113, Defendants Xapo, Inc. and Xapo (Gibraltar) Limited will move this Court for an order dismissing the Amended Complaint of Plaintiff Dennis Nowak, without leave to amend, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declarations of Albert Agius, Julie Jo, and Jason George, all files and records in this action, oral argument, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to or at the hearing on this matter.

Dated: February 3, 2021

KEKER, VAN NEST & PETERS LLP

By:   *s/Steven P. Ragland*
STEVEN P. RAGLAND
ERIN E. MEYER
VICTOR T. CHIU
JASON S. GEORGE

Attorneys for Defendant
XAPO, INC.

Specially appearing on behalf of XAPO (GIBRALTAR) LIMITED

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should exercise subject matter jurisdiction over this dispute.

2.      Whether the Court has personal jurisdiction over Xapo (Gibraltar) Limited.

3.      Whether the amended complaint improperly lumps together Xapo, Inc. and Xapo (Gibraltar) Limited.

4.      Whether the amended complaint's state-law claims have impermissible extraterritorial effect.

5.      Whether the amended complaint states a claim for aiding and abetting conversion and fraud against Xapo, Inc. and Xapo (Gibraltar) Limited.

6.      Whether the amended complaint states a claim of negligence against Xapo, Inc. and Xapo (Gibraltar) Limited.

7.      Whether the amended complaint states a claim for constructive trust against Xapo, Inc. and Xapo (Gibraltar) Limited.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION[1]

The Court made plain in its order dismissing the original complaint what Plaintiff Dennis Nowak had to allege for his claims to survive: facts specific to each defendant that showed actual involvement in or substantial assistance to the alleged theft of Plaintiff's 500 Bitcoins, or, alternatively, actual knowledge by each individual defendant sufficient to state a claim. *See* Dkt. No. 49 ("MTD Order") at 3-6. The Court rejected Plaintiff's theory of liability: that Defendant Xapo, Inc. somehow knew of or aided the theft based on the conclusory assertion of inadequate Know Your Customer ("KYC") and Anti-Money Laundering ("AML") policies. *See id.*

Plaintiff's Amended Complaint does not come close to satisfying the requirements set out in the Court's order. He now asserts an entirely new set of claims against Defendants Xapo, Inc. and Xapo (Gibraltar) Limited (abandoning ***all*** of his original claims against those entities), but the

---

[1] In all citations included herein, internal citations, quotation marks, and alterations have been removed, and emphases added, unless otherwise noted.

fundamental problems with his theory of the case remain. He nowhere alleges (nor could he) that the Xapo entities were involved with, or substantially assisted, the alleged theft of his Bitcoins. And he continues to rely on a flawed theory of the case: that the Xapo entities' supposedly inadequate KYC and AML policies make them liable for the prior acts of all of their customers. Yet Plaintiff still fails to even allege anything specific about the Xapo entities' policies, let alone why they were inadequate.

And there are even more fundamental problems with Plaintiff's Amended Complaint. There is no longer a possible basis for this Court to exercise subject matter jurisdiction because the pleadings fail to raise a federal question, and there can be no diversity jurisdiction in a case— like this one—where a single foreign plaintiff sues foreign and domestic defendants. The Court also cannot exercise personal jurisdiction over Xapo (Gibraltar) Limited ("Xapo Gibraltar") because it is a foreign entity that operates entirely abroad.

But even if the Court had jurisdiction, Plaintiff fails to state a claim. As a threshold matter, just as with the prior complaint, all of Nowak's state-law claims fail because (1) the Amended Complaint improperly "lumps together defendants Xapo, Inc. and Xapo (Gibraltar) Limited," MTD Order at 3; and (2) he does not allege "a sufficient nexus between California and Defendant's alleged wrongful conduct," *id.* at 9.

Plaintiff's specific claims against the Xapo entities—(1) aiding and abetting fraud and conversion; (2) negligence; and (3) constructive trust—are also fatally flawed. The aiding-and-abetting claims fail because Plaintiff nowhere alleges that the Xapo entities had actual knowledge of, or substantially assisted with, the alleged theft. His conclusory, unsupported assertions that the Xapo entities had inadequate KYC and AML policies and that the movement of Bitcoins between Kraken and Xapo was "suspicious" do not come close to stating a claim. His negligence claim likewise fails, both because the Xapo entities owe no legal duty of care to a noncustomer like Nowak, and because Plaintiff's vague references to the Xapo entities' KYC and AML policies do not constitute a breach (even if a duty existed). The constructive trust claim, as a corollary to the other claims, must also be dismissed.

The dismissal should be without leave to amend because Plaintiff failed to heed the

1 Court's prior guidance and further amendment would be futile.

2 **II.     BACKGROUND**

3         Dennis Nowak filed his original complaint on June 1, 2020. Defendant Xapo, Inc. filed a

4 motion to dismiss, Dkt. No. 22, which the Court granted in its entirety. On December 21, 2020,

5 Plaintiff filed the operative Amended Complaint. Dkt. No. 51 ("Am. Compl.").

6         Plaintiff is currently a resident of Curaçao (formerly of Germany), *see* Am. Compl. ¶ 1 &

7 Compl. ¶ 1, who allegedly stored Bitcoins in an account with non-party Kraken, a Northern

8 California-based cryptocurrency exchange, Am. Compl. ¶ 38. Plaintiff does not allege that his

9 Bitcoins were stored on Kraken servers in California, but rather that his Bitcoins were "accessible

10 through" those servers. *Id.* ¶ 40. He alleges that ten John Doe defendants "infiltrated" his account,

11 withdrawing 500 Bitcoins. *Id.* ¶ 44. Plaintiff's counsel then hired "international investigative firm

12 Kroll to trace" the stolen Bitcoins. *Id.* ¶ 45. The firm purportedly discovered that the John Doe

13 defendants placed them in different "hot wallet" addresses. *Id.* ¶ 50. "A 'hot wallet' refers to a

14 cryptocurrency wallet that is online and connected in some way to the Internet." *Id*. at 11 n.5.

15         Plaintiff alleges that the John Doe defendants deposited 20 of the stolen Bitcoins in "two

16 hot wallet addresses controlled by XAPO." *Id.* ¶ 49. The remaining 480 Bitcoins were allegedly

17 stored in hot wallets controlled by Defendant Indodax, an Indonesian company. *Id.* ¶ 50. Plaintiff

18 still does not allege that any of the hot wallets or the servers containing their information were in

19 California, or even the United States. *See id.* ¶¶ 48-49.

20         As defined in the Amended Complaint, "XAPO" refers to two entities: Xapo, Inc. and

21 Xapo Gibraltar. Am. Compl. ¶ 4. Although Plaintiff alleges generally that the Xapo entities are

22 "alter egos" and "one-and-the-same business," *see generally id.* ¶¶ 4-10, the Xapo entities are

23 entirely separate businesses that follow all corporate formalities. *See* Declaration of Albert Agius

24 ("Agius Decl.") ¶¶ 13-29; Declaration of Julie Jo ("Jo Decl.") ¶¶ 6-19. This Motion presents

25 evidence outside the Amended Complaint solely for purpose of challenging personal jurisdiction

26 over Xapo Gibraltar, pursuant to Federal Rule of Civil Procedure 12(b)(2).

27         Each company is separately incorporated, is sufficiently capitalized, and is run by its own

28 board of directors and officers. Agius Decl. ¶¶ 4, 16-17, 27; Jo Decl. ¶¶ 3, 9-10, 17. Their

businesses are distinct because Xapo, Inc. is a Delaware corporation that provides ***cryptocurrency wallets*** to customers ***within*** the United States, Jo Decl. ¶¶ 3-5; *see also* Am. Compl. ¶ 2. Xapo Gibraltar, on the other hand, is a foreign corporation registered and incorporated in Gibraltar and is an "Electronic Money institution." Am. Compl. ¶ 3. Its services do ***not*** include cryptocurrency wallets and it only has customers ***outside*** the United States. Agius Decl. ¶¶ 4-6.

Plaintiff does not allege that either Xapo, Inc. or Xapo Gibraltar assisted the John Doe defendants in "infiltrat[ing]" his account. Am. Compl. ¶ 44. Nor does Plaintiff allege that Xapo, Inc. or Xapo Gibraltar committed any affirmative misconduct, whether in California or elsewhere. Rather, as in the prior complaint, Plaintiff alleges that "XAPO" should have implemented different AML and KYC protocols, *id.* ¶ 62, and if they did so, they would somehow have known that the 20 Bitcoins deposited in a "XAPO" hot wallet were stolen, *id.* ¶¶ 62, 82, 95. Plaintiff generally discusses AML and KYC policies in the context of "cryptocurrency exchanges," *id.* ¶¶ 20-37, but never specifically asserts that an industry standard exists for such policies (much less a legal or regulatory standard). Critically, he fails to allege that the Xapo entities are "cryptocurrency exchanges" and makes no attempt to explain how their AML and KYC policies were in any way deficient.

Based only on the John Doe defendants' alleged use of "XAPO's" hot-wallet product to store 20 Bitcoins, Plaintiff asserts four claims under California law against both Xapo, Inc. and Xapo Gibraltar: (1) aiding and abetting conversion; (2) aiding and abetting fraud; (3) negligence; and (4) constructive trust. *Id.* at 16-28.

## III.   ARGUMENT

### A.   The Court should dismiss for lack of subject matter jurisdiction.

In the initial complaint, Plaintiff's sole basis for asserting federal-question jurisdiction was a claim alleging violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(4). This Court dismissed that claim and Plaintiff chose not to re-plead it and has not asserted any federal claim at all in the Amended Complaint. There is thus no basis for federal-question jurisdiction under 28 U.S.C. § 1331.

There is likewise no diversity jurisdiction under 28 U.S.C. § 1332. As the Ninth Circuit

has held, "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994). And because diversity must be ***complete***, that is, satisfied "for each defendant," *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004-05 (9th Cir. 2001), there is no diversity jurisdiction in a case between a foreign plaintiff and foreign defendant, even where one of the other defendants is a citizen of the United States. *Craig v. Atl. Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994); *see also Guan v. Bi*, No. 13-CV-05537-WHO, 2014 WL 953757, at *6 (N.D. Cal. Mar. 6, 2014) (in the converse situation, finding no complete diversity where a United States-citizen plaintiff and foreign plaintiff sued only foreign defendants). Because this case involves a foreign plaintiff (a former German resident, now residing in Curaçao, with no allegation of other citizenship) suing foreign defendants (including Xapo Gibraltar and Indodax), Plaintiff fails to establish complete diversity. Therefore, diversity jurisdiction is lacking over "the entire case." *Lee*, 260 F.3d at 1005.

To the extent Plaintiff asks for an exercise of supplemental jurisdiction over his state-law claims, the Court should decline such invitation. Under 28 U.S.C. § 1367(c)(3), the Court may dismiss state-law claims where the Court "has dismissed all claims over which it has original jurisdiction." And "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (following *Cohill*).

**B.      This Court has no personal jurisdiction over Xapo Gibraltar.**

Even if the Court were to exercise subject matter jurisdiction, it nonetheless lacks personal jurisdiction over Xapo Gibraltar, which is a foreign corporation with no presence and no customers in the United States. Although Plaintiff alleges that personal jurisdiction is proper because "at least one" defendant operates in California, Am. Compl. ¶ 16, personal jurisdiction must be met "as to each defendant." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Plaintiff "bears the burden of establishing that jurisdiction is appropriate" by alleging facts and submitting evidence sufficient to make a "prima facie" case that exercising personal jurisdiction over Xapo

Gibraltar complies with California's long-arm statute and federal due process (which, for purposes of the Court's analysis, are not meaningfully different). *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800-01 (9th Cir. 2004); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (same analysis for Oregon long-arm statute). While "***uncontroverted*** allegations" in the Amended Complaint are taken as true, Plaintiff "may not simply rest on the bare allegations of [his] complaint." *Ranza*, 793 F.3d at 1068. There are two differing "categories of personal jurisdiction"—"general" and "specific." *Id.* Neither applies to Xapo Gibraltar here.

### 1.     Xapo Gibraltar is not subject to general jurisdiction in California.

Only in an "exceptional case" will general jurisdiction exist anywhere other than an entity's "place of incorporation" or "principal place of business." *Ranza*, 793 F.3d at 1069. A case is only "exceptional" if the business has "affiliations with the State [that] are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014); *see id.* at 122 (requiring "constant and pervasive" contacts).

Plaintiff does not allege that California is Gibraltar's state of incorporation or its principal place of business; indeed, both are located in Gibraltar. *See* Am. Compl. ¶ 3 (alleging registration and incorporation in Gibraltar); Agius Decl. ¶ 4 (Gibraltar is Xapo Gibraltar's principal place of business). Instead, Plaintiff solely asserts that Xapo Gibraltar "has extensive ties to the United States – including this jurisdiction – and is essentially a United States-based entity" because it has advisors who might be in the United States. Am. Compl. ¶ 3.

These allegations do not show "exceptional" or "constant and pervasive" contacts that justify jurisdiction outside of Xapo Gibraltar's country of incorporation and principal place of business. Indeed, even the existence of operations and employees in the jurisdiction in question are not generally enough to satisfy general jurisdiction requirements. In *BNSF Railway Co. v. Tyrrell*, for example, the United States Supreme Court found no "exceptional" circumstances justifying general jurisdiction in Montana over a railroad company even though it had "over 2,000 miles of railroad track and more than 2,000 employees in Montana." 137 S. Ct. 1549, 1558-59 (2017). The proper analysis required "an appraisal of a corporation's activities in their entirety" and jurisdiction was not proper where the contacts amounted to only 6% of the company's total

1    track mileage and 5% of its total work force. *Id.* at 1554, 1559.

2         Plainly, the allegations here are far different than those that were still found wanting in

3    *BNSF*. Here, Plaintiff points to "advisors" but never explicitly alleges that they live in California

4    or provide advice to Xapo Gibraltar from California. But even if he had, it would make no

5    difference. Xapo Gibraltar operates entirely abroad: it has no offices or property and does not

6    advertise or pay taxes in California or the United States and, indeed, provides services only to

7    customers *outside* of the United States. Agius Decl. ¶¶ 5, 7-12. The alleged location of advisors

8    does not alter the scope of Xapo Gibraltar's operations or show continuous and systematic

9    contacts with California that render the company essentially at home in California. *See Nelson v.*

10   *Fluoropharma Med., Inc.*, No. 12-CV-2674-BEN, 2013 WL 12097687, at *3 (S.D. Cal. May 7,

11   2013) (three members of "Scientific Advisory Board" residing in California insufficient for

12   general jurisdiction over company). Plaintiff fails to show any basis for general jurisdiction.

13        **2.    Xapo Gibraltar is not subject to specific jurisdiction in California.**

14        For specific jurisdiction, Plaintiff must establish that "the defendant's suit-related

15   conduct . . . create[d] a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S.

16   277, 284 (2014). Courts apply a three-part test, which requires Plaintiff to show, for claims based

17   in tort, that (1) Xapo Gibraltar "purposefully direct[ed]" its activities towards the forum state;

18   (2) the claims "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) the

19   exercise of jurisdiction "comport[s] with fair play and substantial justice, *i.e.*, it [is] reasonable."

20   *Picot v. Weston*, 780 F.3d 1206, 1211-12 (9th Cir. 2015).

21        For the first element, "purposeful direct[ion]," Plaintiff must satisfy another three-part test

22   by showing that Xapo Gibraltar "(1) committed an intentional act, (2) expressly aimed at the

23   forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

24   *Id.* at 1213-14. Plaintiff cannot satisfy any of these factors because Plaintiff's Amended

25   Complaint improperly lumps Xapo, Inc. and Xapo Gibraltar together as a single "XAPO" entity.

26   *See* Am. Compl. ¶ 4. He thus does not "allege sufficient facts to enable the court to properly

27   assess each defendant's role (if any) in the alleged activities for the purpose of evaluating whether

28   they are subject to personal jurisdiction." *Chunghwa Telecom Glob., Inc. v. Medcom, LLC*, No.

---

7

13-CV-02104-HRL, 2013 WL 5688941, at *4 (N.D. Cal. Oct. 16, 2013). Plaintiff also does not allege any specific acts whatsoever by Xapo Gibraltar. This is no surprise because no such facts exist. Xapo Gibraltar is an "Electronic Money" ("e-money") institution, Am. Compl. ¶ 3; that is, an online bank where customers store fiat currencies, such as Euros or Dollars (not cryptocurrency assets like Bitcoin), in online accounts. Agius Decl. ¶ 5. Bitcoin "wallets," which are the only alleged connection between the hack and the Xapo entities, are not part of Xapo Gibraltar's business. *Id.* ¶ 6.

Nor could Plaintiff make any allegation that Xapo Gibraltar "expressly aimed" any intentional act at California because, as discussed above, Xapo Gibraltar operates entirely abroad with no California or United States customers, offices, or operations. Agius Decl. ¶¶ 5, 7-12. Plaintiff also fails to plead any California nexus to the alleged conduct, *see* Section III.C.2, *infra*, let alone Xapo Gibraltar's knowledge of or involvement in any such California connection. *See Abedi v. New Age Med. Clinic PA*, No. 17-CV-1618-AWI, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018) (finding no purposeful direction where the defendant "did not know that it was sending text messages into California"). Plus, the alleged receipt ***abroad*** from the hackers of Bitcoins purportedly stolen in California is insufficient for "express aiming" because personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State" and "the defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 284, 286 (emphasis in original).

Finally, Plaintiff fails to allege that Xapo Gibraltar knew that harm was likely to be suffered in California because Plaintiff alleges no actual knowledge of the alleged theft, *see* Section III.C.3.a, *infra*, or its purported California connection. And the only alleged harm is to Plaintiff, who resides abroad. *See Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017) (requiring "[h]arm suffered in the forum state"). Plaintiff does not even allege that Kraken suffered harm, and any such harm would be insufficient anyway. *See id.* at *7-*9 (finding no foreseeable harm based on accessing servers belonging to a non-party (Google) headquartered in California). Plaintiff therefore cannot satisfy a single element of the "purposeful direction" test.

1    As to the remaining specific jurisdiction elements, without any Xapo Gibraltar conduct

2    directed at California, Plaintiff's claims cannot "arise[] out of forum-related activities." And

3    exercising personal jurisdiction over the claim of a foreign Plaintiff against a foreign defendant

4    does not comport with "fair play and substantial justice" where Xapo Gibraltar operates abroad

5    and no forum-related conduct has been alleged. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480

6    U.S. 102, 113-16 (1987) (holding that the exercise of jurisdiction was unreasonable for dispute

7    between a foreign plaintiff and defendant due to "the international context, the heavy burden on

8    the alien defendant, and the slight interests of the plaintiff and the forum State"). The Court thus

9    lacks specific jurisdiction over Xapo Gibraltar.

10             **3.      Plaintiff cannot establish an alter-ego theory of jurisdiction.**

11    Xapo Gibraltar anticipates that Plaintiff will seek to impute Xapo, Inc.'s contacts with

12    California to Xapo Gibraltar by arguing that the two companies are alter egos. To establish an

13    alter-ego theory of personal jurisdiction, however, Plaintiff must show that Xapo Gibraltar "is not

14    really separate from" Xapo, Inc. *Ranza*, 793 F.3d at 1073. To that end, Plaintiff must establish

15    "(1) that there is such unity of interest and ownership that the separate personalities of the two

16    entities no longer exist and (2) that failure to disregard their separate identities would result in

17    fraud or injustice." *Id.* He has not done so and cannot do so.

18             **a.      The Xapo entities do not have a "unity of interest or
                         ownership."**
19

20    The "unity of interest and ownership" prong requires "a showing that the parent controls

21    the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.*

22    There must be "pervasive control" as when a parent corporation "dictates every facet of the

23    subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."

24    *Id.* For this inquiry, courts consider multiple factors, including

25             (1) the commingling of funds and other assets of the entities, (2) the holding out by
                 one entity that it is liable for the debts of the other, (3) identical equitable
                 ownership of the entities, (4) use of the same offices and employees, (5) use of one
26               as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization,
                 (7) disregard of corporate formalities, (8) lack of segregation of corporate records,
27               and (9) identical directors and officers.

28    *Rojas v. Hamm*, No. 18-CV-01779-WHO, 2019 WL 3779706, at *8 (N.D. Cal. Aug. 12, 2019).

"Disregarding the corporate entity is recognized as an 'extreme remedy,' and courts will only pierce the corporate veil in 'exceptional circumstances.'" *Reynolds v. Binance Holdings Ltd.*, No. 20-CV-02117-JSC, 2020 WL 5074391, at *4 (N.D. Cal. Aug. 26, 2020).

Here, no "exceptional circumstances" justify disregarding the corporate form. Plaintiff makes ***no*** factual allegations regarding six of the nine factors, including (1) whether the Xapo entities commingled funds; (2) whether one entity holds itself out as liable for the debts of the other; (3) the adequacy of the capitalization of either entity; (4) use of one company as a mere shell or conduit for the affairs of the other; (5) the lack of segregation of corporate records; and (6) how, if at all, the Xapo entities "disregard[ed]" corporate formalities. To the extent Plaintiff makes any allegations relevant to these factors, they are conclusory. For example, Plaintiff alleges that Xapo Gibraltar was a "mere instrumentality," the Xapo entities "failed to maintain an arm's length relationship," and they "interchangeably used the corporate entities to procure labor, services, or merchandise for common corporate purposes." *See* Am. Compl. ¶¶ 5-6, 8. These allegations merely parrot other formulations of the unity-of-interest factors. *See GEC US 1 LLC v. Frontier Renewables, LLC*, No. 16-CV-1276-YGR, 2017 WL 605070, at *5 (N.D. Cal. Feb. 15, 2017) (listing factors under California law).

Plaintiff makes no factual allegations on these six factors because Xapo, Inc. and Xapo Gibraltar are separate entities that follow all corporate formalities. The two entities are not in a parent-subsidiary relationship, or any relationship of control. Instead, they are independently operated businesses owned by Xapo Holdings Limited that are incorporated and operate in different countries. *See Rojas*, 2019 WL 3779706, at *9 ("Two independent legal entities doing business under a global organization of member firms is not enough to demonstrate an alter ego relationship."); Agius Decl. ¶¶ 4-5, 7-14; Jo Decl. ¶¶ 3, 5-8; Am. Compl. ¶¶ 2-3. Xapo, Inc. has never had control over Xapo Gibraltar or dictated any of its actions or its day-to-day operations, or vice versa. Agius Decl. ¶ 14; Jo Decl. ¶ 7. Indeed, their businesses do not even overlap, as they provide different kinds of services to different customers: Xapo, Inc. provides cryptocurrency wallets and vaults to customers within the United States, while Xapo Gibraltar provides e-money accounts for storing fiat currencies, such as Euros or Dollars (not cryptocurrencies), to customers

1  abroad. Agius Decl. ¶¶ 5-6, 15; Jo Decl. ¶¶ 4-5, 8.

2        The entities each have a separately constituted and operated board of directors that

3  manages each company. Agius Decl. ¶ 16; Jo Decl. ¶ 9. Each company has officers that run day-

4  to-day operations. Agius Decl. ¶ 17; Jo Decl. ¶ 10. Each company has its own incorporating

5  documents, holds meetings of its respective board on a regular basis, and keeps records of those

6  meetings. Agius Decl. ¶¶ 4, 24; Jo Decl. ¶¶ 3, 14. Each company produces and stores separately

7  its own corporate records, including financial statements and projections. Agius Decl. ¶ 23; Jo

8  Decl. ¶ 13. Both companies are adequately capitalized and pay their own operating expenses.

9  Agius Decl. ¶ 27; Jo Decl. ¶ 17. There is no commingling of funds between the companies, and

10  the companies do not transfer money to each other. Agius Decl. ¶¶ 26, 29; Jo Decl. ¶¶ 16, 19.

11  Neither Xapo entity has ever represented that it is liable for the debts of the other. Agius Decl.

12  ¶ 28; Jo Decl. ¶ 18.

13        Although Plaintiff alleges that the Xapo entities use the same tradename and do not

14  distinguish themselves on their website, Am. Compl. ¶¶ 4, 9, that does not satisfy any unity-of-

15  interest factor. Entities presenting themselves "as one online does not rise to the level of unity of

16  interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp.

17  3d 970, 984 (N.D. Cal. 2016); *see also Rojas*, 2019 WL 3779706, at *10 (following *Corcoran*).

18  Indeed, the "shared use of trade names, logos, and websites" is a "characteristic of the typical

19  corporate structure of many companies." *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-CV-

20  04165-MMC, 2018 WL 500243, at *4 (N.D. Cal. Jan. 22, 2018). And here, the Xapo website

21  ***does*** explicitly distinguish between Xapo Gibraltar and Xapo, Inc., stating: "Xapo services are

22  provided by several Xapo Group companies, each of them render specific services under the

23  terms of use and/or service provided by each company." Declaration of Jason George, Ex. A.

24  Moreover, each Xapo entity pays to license the "Xapo" trade name, and its shared use thus does

25  not indicate any possible abandonment of corporate formalities. Agius Decl. ¶ 25; Jo Decl. ¶ 15.

26        Plaintiff's remaining allegations—which all concern shared management personnel,

27  shared staff, and shared offices—are legally insufficient to establish alter ego liability, even if

28  taken as true. For instance, in *Harris Rutsky & Co. Insurance Services v. Bell & Clements Ltd.*,

the Ninth Circuit found a parent's 100% ownership of its subsidiary, overlapping senior directors and officers, shared offices, and overlapping staff insufficient to find that the entities were alter egos. 328 F.3d 1122, 1135 (9th Cir. 2003); *see also Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (finding no unity of interest despite common equitable ownership of the companies, use of the same offices and employees, and identical officers and directors). For this reason, as discussed in more detail below, the Court should find no unity of interest here between Xapo Gibraltar and Xapo, Inc.

*Management Personnel.* Plaintiff alleges that Xapo Gibraltar and Xapo, Inc. "use the same corporate decision-makers" and that Wences Casares "manages and controls" both entities. Am. Compl. ¶¶ 4, 6. But the presence of "shared management personnel alone [is] insufficient to establish the requisite level of control" for alter ego status. *Ranza*, 793 F.3d at 1073. It is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Indeed, courts "presume" management personnel change hats in this way "[i]n the absence of evidence of ***actual control*** [of one entity over the other]." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020). As a result, the court in *Apple* found no unity of interest even where a single person was the sole shareholder and managing director of two companies. *Id.* 53-55; *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 19-CV-03345-EMC, 2019 WL 4963253, at *12, *15 (N.D. Cal. Oct. 8, 2019) (finding no unity interest despite an allegation of "a single set of executive officers and directors").

Here, Plaintiff pleads no facts that could establish "actual control" of one Xapo entity over another. As discussed above, Xapo, Inc. and Xapo Gibraltar do not control each other's operations, Agius Decl. ¶ 14; Jo Decl. ¶ 7, and each company follows all corporate formalities, *see* Agius Decl. ¶¶ 13-29; Jo Decl. ¶¶ 6-19. The management and control of each company rests in its own board of directors and officers (not Wences Casares alone, as Plaintiff implies). Agius Decl. ¶¶ 16-17; Jo Decl. ¶¶ 9-10. As a result, the Court can and should presume that any overlapping directors and officers "'change hats' to represent the two corporations separately."

1   *Bestfoods*, 524 U.S. at 69.

2       ***Office and Staff***. Plaintiff alleges that the two Xapo entities "share staff . . . and physical

3   presence" and that Xapo Gibraltar "maintains only a virtual office, with no staff or presence of its

4   own." Am. Compl. ¶¶ 7, 10. But courts have held that such allegations fail to show the disregard

5   of corporate formalities and pervasive control necessary for a unity of interest. *See MLC*

6   *Intellectual*, 2019 WL 4963253, at *12, *15 ("employees who overlap" insufficient to show

7   pervasive control); *Vacless Sys., Inc. v. Vac-Alert IP Holdings, LLC*, No. 10-CV-09284-SVW,

8   2011 WL 13217924, at *5 (C.D. Cal. June 24, 2011) (allegation of shared office insufficient

9   without evidence that it "resulted in the disregard of corporate formalities").

10      Moreover, Plaintiff's allegations are inaccurate. Xapo, Inc. and Xapo Gibraltar do not

11  share any office space. Agius Decl. ¶¶ 20-22; Jo Decl. ¶ 12. Prior to late 2020, Xapo Gibraltar

12  had physical office space through Regus at Unit 1.02, First Floor, World Trade Center, 6 Bayside

13  Road, Gibraltar, GX11 1AA, where its employees worked. Agius Decl. ¶ 20. It recently moved to

14  physical offices located at 1 Casemates Square, Gibraltar, GX11 1AA. *Id.* These are not "virtual"

15  offices. *Id.* Xapo Gibraltar employs permanent staff at these offices in Gibraltar, and that staff

16  does not provide any services to Xapo, Inc. Agius Decl. ¶¶ 18, 20. Indeed, Plaintiff's allegation

17  that Xapo Gibraltar has no employees and that its offices are merely virtual is surprising because

18  a Xapo Gibraltar staff member received personal service of the summons and complaint in this

19  case at the World Trade Center location, as shown by the proof of service. *See* Agius Decl. Ex. A.

20      Xapo, Inc. and Xapo Gibraltar both receive some services (such as IT, tax services, and

21  compliance support) from employees or contractors of their parent corporation, but each entity

22  has separately executed a written contract with the parent corporation and pays a fee for obtaining

23  those services. Agius Decl. ¶ 19; Jo Decl. ¶ 11. The use of these services from the non-party

24  parent corporation does not show that the two subsidiaries have disregarded corporate formalities.

25  *Cf. NetApp, Inc. v. Nimble Storage, Inc.*, No. 13-CV-05058-LHK, 2015 WL 400251, at *5-*6

26  (N.D. Cal. Jan. 29, 2015) (finding alter ego theory insufficiently alleged despite allegation that

27  one company "handle[d] administrative tasks" for the other). To the extent there are any other

28  overlaps in staffing, such overlaps would be legally insufficient for the reasons discussed above.

*See, e.g.*, *Harris*, 328 F.3d at 1135 (shared employees insufficient for alter ego finding).

Plaintiff cannot show unity of interest between Xapo Gibraltar and Xapo, Inc.

> **b.      Plaintiff fails to allege any "fraud or injustice" tied to the Xapo entities' corporate form.**

Because Plaintiff "has not satisfied the 'unity of interest and ownership' prong of the alter ego test," the Court can dismiss for lack of personal jurisdiction and "need not analyze the 'fraud or injustice' prong." *Ranza*, 793 F.3d at 1075 n.9. But even if the Court reaches this inquiry, the result should be the same. This prong requires "conduct amounting to bad faith [that] makes it inequitable for the corporate owner to hide behind the corporate form," such as where the corporate form is used to "wrongfully avoid liability." *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 201703, at *8 (N.D. Cal. Jan. 18, 2017) (collecting cases). No such conduct exists here. Indeed, Plaintiff's Amended Complaint fails to "ma[ke] mention of a 'possible inequitable result' under this prong," and thus fails to satisfy it. *Reynolds*, 2020 WL 5074391, at *7; *see also Park Miller, LLC v. Durham Grp., Ltd.*, No. 19-CV-04185-WHO, 2020 WL 1955652, at *14 (N.D. Cal. Apr. 23, 2020) (finding no personal jurisdiction where the complaint failed to "state any inequitable result that would result from respecting the corporate form of these separate entities").

> **C.      Plaintiff fails to adequately allege any claims against Xapo, Inc. or Xapo Gibraltar.**

Even if Plaintiff could overcome the jurisdictional defects of the Amended Complaint, Plaintiff fails to state a claim under Rule 12(b)(6) for several independently sufficient reasons.

> **1.      Plaintiff cannot state a claim against either Xapo, Inc. or Xapo Gibraltar because he has again improperly lumped them together.**

This Court previously granted Xapo, Inc.'s motion to dismiss partly because Plaintiff's "Complaint lumps together defendants Xapo, Inc. and Xapo (Gibraltar) Limited, alleging conduct by 'Xapo' without distinguishing what each entity did." MTD Order at 3. The Court instructed Plaintiff to "identify exactly what action each took that caused his harm, without resorting to generalized allegations against 'Xapo.'" *Id.* (citing *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 907-08 (N.D. Cal. 2018)). Plaintiff has entirely ignored this instruction and, once again, defines the term "XAPO" to include Xapo, Inc. and Xapo Gibraltar. Am. Compl. ¶ 4. The

14

Amended Complaint's only allegations, which also fail for the reasons set forth below, are made against this "XAPO" entity. The Court should dismiss on this basis alone.

### 2. Plaintiff fails to allege a sufficient California nexus for any claim.

This Court previously dismissed Plaintiff's state-law claims because his allegations failed to "show a sufficient nexus between California and defendant's alleged wrongful conduct." MTD Order at 9. The Court relied on case law noting the "strong presumption against the extraterritorial application of California law" which requires that the harm "emanate[] from California." *Id.* (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206-09 (2011), *Ehret v. Uber Tech. Inc.*, 68 F. Supp. 3d 1121, 1129-33 (N.D. Cal. 2014), and *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096-97 (C.D. Cal. 2015)). The Court instructed Plaintiff to "clarify the Court's extraterritorial reach over the state law claims" "[i]n an amended pleading." *Id.*

Plaintiff has not complied with this instruction. Instead, he repeats the same allegations this Court identified as deficient, *see* MTD Order at 9, namely, that (1) Plaintiff, a foreign resident, "maintained an account" at a Northern California-based cryptocurrency exchange (now identified as Kraken), Am. Compl. ¶ 38; (2) the account "was infiltrated" by the John Doe hackers, *id.* ¶¶ 12, 44; and (3) the stolen funds were traced to hot wallet addresses controlled by "XAPO," *id.* ¶¶ 49-51.

To the extent Plaintiff includes any new allegations in the Amended Complaint, they are entirely insufficient to establish a California nexus. ***First***, Plaintiff alleges that "the initial act of theft occurred in this jurisdiction," and Plaintiff's Bitcoins were transferred to XAPO "from this jurisdiction." Am. Compl. ¶ 46. But this is nothing more than a "naked assertion[] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff does not allege the location of the hackers or the computers they accessed to carry out the theft. Although Plaintiff alleges that his Kraken account "***was accessible*** through Kraken's Northern California-based servers," Am. Compl. ¶ 40, it does not follow that the theft itself occurred, or that the transfer originated, in California by accessing those servers. And Plaintiff still fails to allege that his cryptocurrency was ever even stored in California.

Plaintiff's original complaint also alleged facts antithetical to his California-theft theory;

namely, that the hackers accessed *Plaintiff's* computer, which was presumably located with him in Germany. *See* Compl. ¶¶ 1, 57. Plaintiff's allegations of a California theft, already insufficiently pled, are implausible in light of these prior allegations. *See Royal Primo Corp. v. Whitewater W. Indus., Ltd*, No. 15-CV-04391-JCS, 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016) ("[T]he court may also consider the prior allegations . . . to assess whether an amended complaint plausibly suggests an entitlement to relief.").

**Second**, Plaintiff alleges that the "XAPO" "hot wallet addresses" where the hackers sent the Bitcoins "are accessible worldwide but controlled by control individuals in Northern California." Am. Compl. ¶ 49. But Plaintiff still fails to allege that the Bitcoins themselves were stored in California during or after the alleged theft, or that any of these unnamed "control individuals" made decisions in California relevant to Plaintiff's claims. *See Warner*, 105 F. Supp. 3d at 1097 (finding California nexus implausible "without additional facts suggesting that Tinder made the advertising and other business decisions from California").

The Court should dismiss Plaintiff's claims, which are all based in California law, because they have no California nexus. California's Civil Code codifies, or defines damages for, claims of negligence, fraud, and conversion, Cal. Civil Code §§ 1714 (responsibility for negligence), 1709-10 (liability for deceit), 3336 (damages for conversion), and there is a strong presumption against applying California statutes extraterritorially, *see Sullivan*, 51 Cal. 4th at 1206-09 (presumption against extraterritorial application of California law). To the extent Plaintiff's claims are based in the common law (as opposed to statutory authority), multiple courts have refused extraterritorial application of California law. *See Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *7 (N.D. Cal. Apr. 24, 2017) ("[T]he Court will not presume that the California common law is meant to have extraterritorial effect."); *Sajfr v. BBG Commc'ns, Inc.*, No. 10-CV-2341-AJB, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding that the California legislature does not intend "its common law" to apply extraterritorially). Although case law is mixed on whether the presumption against extraterritorial application of California law applies to common law claims, at least one court finding the presumption not to apply still required the plaintiff to plead that the "conduct which gives rise to

1    liability . . . occurs in California." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096

2    (C.D. Cal. 2015). No such allegations of California conduct exist here.

3            In any event, as discussed in Xapo, Inc.'s prior motion to dismiss, Dkt. No. 22, at 13-14,

4    the United States Constitution prevents extraterritorial application of California law due to (1) the

5    dormant Commerce Clause's prohibition on a state's "direct[] regulat[ion] [of] interstate

6    commerce," *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 638-39 (9th Cir. 1993),

7    including "wholly out-of-state transactions," *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608,

8    614-15 (9th Cir. 2018); and (2) the due process clause's requirement that, for California law to

9    apply, California must "have a significant contact or significant aggregation of contacts to the

10   claims asserted," *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985); *Tidenberg v.*

11   *Bidz.com, Inc.*, No. 08-CV-5553-PSG, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009).

12           **3.      Plaintiff fails to state a claim for aiding and abetting conversion and
                        fraud (Counts II and III).**

13           To state a claim for aiding and abetting an intentional tort, Plaintiff must allege that the

14   Xapo entities (1) had "actual knowledge" that the Does' conduct "constitute[d] a breach of duty";

15   and (2) provided "substantial assistance or encouragement" to that breach. *In re First Alliance*

16   *Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal.

17   App. 4th 1138, 1144-46 (2005)). Plaintiff must plead with Rule 9(b) particularity his aiding and

18   abetting fraud claim, *Mackintosh v. JPMorgan Chase Bank*, No. 18-CV-03348-SK, 2018 WL

19   3913791, at *3 (N.D. Cal. July 13, 2018), as well as his aiding and abetting conversion claim

20   because the conversion is part of the same alleged "unified course of fraudulent conduct," *see*

21   *Talece Inc. v. Zheng Zhang*, No. 20-CV-03579-BLF, 2020 WL 6205241, at *5 (N.D. Cal. Oct. 22,

22   2020) (applying Rule 9(b) to conversion claim).

23           Here, Plaintiff fails to state an aiding-and-abetting claim under either Rule 8 or Rule 9(b).

24           **a.      Plaintiff fails to allege that either Xapo entity had actual
                        knowledge of conversion or fraud.**

25

26           Aiding-and-abetting liability requires "actual knowledge of the specific primary wrong,"

27   *Casey*, 127 Cal. App. 4th at 1145, and that the defendant acted to aid the primary tortfeasor "'with

28   knowledge of the object to be attained'" by making "'a conscious decision to participate in

tortious activity for the purpose of assisting another in performing a wrongful act,'" *id.* at 1146. The actual knowledge standard cannot be satisfied by "a vague suspicion of wrongdoing." *In re First Alliance*, 471 F.3d at 993 n.4; *see also Casey*, 127 Cal. App. 4th at 1151 (alleged knowledge of "suspicious account activities—even money laundering—*without more*, does not give rise to tort liability") (emphasis in original). The Court must "carefully scrutinize" actual knowledge allegations. *Casey*, 127 Cal. App. 4th at 1152.

Plaintiff fails to allege that either Xapo, Inc. or Xapo Gibraltar had actual knowledge of fraud or conversion at any relevant point in time. Plaintiff does not, for instance, allege that either Xapo entity knew of the alleged theft when the hackers allegedly "deposited the stolen bitcoin" in a "Xapo" account or "facilitated transactions" with it. *See* Am. Compl. ¶¶ 83, 96. Instead, Plaintiff asserts that "XAPO . . . w[as] informed by law enforcement no later than ***June 2020*** that bitcoin was stolen from Plaintiff's Kraken account." Am. Compl. ¶ 94; *see also id.* ¶ 82 (stating "XAPO" had "actual knowledge" "by no later than June 2020"). Critically, Plaintiff alleges his Bitcoins were stolen in November 2018. *Id.* ¶ 45. His allegations about the Xapo entities' alleged knowledge more than eighteen months later are plainly insufficient. *See Namer v. Bank of Am.*, No. 16-CV-3024, 2017 WL 4391710, at *3 (S.D. Cal. Oct. 2, 2017) (requiring "actual contemporaneous knowledge"). Moreover, Plaintiff fails to combine these skeletal, conclusory knowledge allegations with ***any*** allegations of conduct by "Xapo" after it supposedly learned that the Bitcoins were stolen. Plaintiff does not even allege that the Bitcoins were in a "Xapo" hot wallet in June 2020. *See* Am. Compl. ¶ 49 (alleging that the (inaccurate) Kroll analysis placed Plaintiff's Bitcoins in a "XAPO" account as of ***February 2020***).

Plaintiff's allegations about "Xapo's" alleged knowledge in June 2020 (which is when the Complaint in this case was filed) are likewise insufficient to show actual knowledge. Plaintiff makes an "information and belief" allegation that "law enforcement" informed "Xapo" of the theft, Am. Compl. ¶¶ 82, 95, but never identifies any "law enforcement" agency that investigated the alleged theft, let alone which one "informed" "Xapo" of it. Nor does Plaintiff plead facts showing that the alleged communication provided ***actual*** knowledge as opposed to information about Plaintiff's allegations. Indeed, in June 2020, Plaintiff purported to "inform" Xapo, Inc. of

the alleged theft by filing this suit, but as this Court held, that did not provide actual knowledge. *See* MTD Order at 4.

Plaintiff also alleges that the "volume and frequency of transactions . . . were atypical, suspicious, and raised an inference" the Bitcoins were stolen. Am. Compl. ¶¶ 82, 95. But Plaintiff fails to allege facts or industry practice to support the conclusion that a transfer of 20 Bitcoins was "suspicious" in 2018. In any event, this is an allegation of mere "suspicion and surmise" that "do[es] not constitute actual knowledge." *Casey*, 127 Cal. App. 4th at 1147; *see also id.* at 1149 (bank had no actual knowledge even where account holders would "carry[] large, unreported amounts of cash out of the bank in 'unmarked duffel bags'").

Finally, Plaintiff alleges that "Xapo" has "atypical policies" and does not require "meaningful identification or KYC information." Am. Compl. ¶¶ 82, 95. But Plaintiff does not define a "typical" industry-standard KYC policy for hot wallet services, *see* Section III.C.4.b, *infra*, or say in what way the KYC information collected was not "meaningful." Even if certain policies were "atypical," atypical policies provide no basis for inferring actual knowledge of a single accountholder's "specific primary wrong." *Casey*, 127 Cal. App. 4th at 1145; *see id.* at 1142 (no actual knowledge alleged where plaintiff claimed the bank "violat[ed] banking regulations and the [banks'] own internal policies and procedures").

Independent from the above, the aiding-and-abetting fraud (as opposed to conversion) claim fails for another reason. Plaintiff alleges that "XAPO" had "actual knowledge of the hackers' fraud," Am. Compl. ¶ 95, but fails to plead facts that either Xapo, Inc. or Xapo Gibraltar knew that the hackers had committed fraud (*i.e.*, had made misrepresentations to Kraken) in obtaining Plaintiff's Bitcoin, as opposed to carrying out the transfer by other means. Plaintiff thus fails to plead actual knowledge of the crime allegedly committed. *Casey*, 127 Cal. App. 4th at 1146 (requiring knowledge of what "'that tort' is").

> **b.    Plaintiff fails to allege "substantial assistance" to conversion or fraud.**

Because Plaintiff fails to plead actual knowledge, the Court may dismiss the aiding-and-abetting claims on that basis alone and need not reach the "substantial assistance" element. *See Casey*, 127 Cal. App. 4th at 1145, 1153 (affirming demurrer based on lack of actual knowledge).

19

If the Court does reach this element, though, Plaintiff's allegations on this factor—purported "atypical" policies, allowing the deposit of the allegedly stolen Bitcoins, and the "refus[al]" to freeze accounts—do not show substantial assistance. Am. Compl. ¶¶ 83, 96. Plaintiff must allege affirmative actions that were a "substantial factor in causing plaintiff's injury." *Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008). It is insufficient to merely allege a "failure to act." *Diaz v. Intuit, Inc.*, No. 15-CV-01778-EJD, 2018 WL 2215790, at *8 (N.D. Cal. May 15, 2018) ("[F]ailure to act allegations regarding, *inter alia*, maintaining deficient protocols, policies and practices enabling fraud, [and] failing to provide notice . . . are insufficient to establish substantial assistance[.]"). Courts also have typically found a bank liable for substantial assistance only where there was repeated conduct. *See Cotton v. Wells Fargo Bank N.A.*, No. 11-CV-1001758-CJC, 2011 WL 13227816, at *1, *3 (C.D. Cal. Feb. 22, 2011) (collecting cases, and finding no substantial assistance for a single wire transfer of $1,780,000). And, as discussed above, though "ordinary business transactions" may constitute substantial assistance, Plaintiff must plead that the defendant "actually knew those transactions were assisting the customer in committing a specific tort." *Casey*, 127 Cal. App. 4th at 1145. Plaintiff's allegations fail to meet these requirements, and thus cannot show substantial assistance. The Court should dismiss the aiding-and-abetting claims.

### 4.      Plaintiff fails to state a claim for negligence (Count VI).

To allege negligence, Plaintiff must plead, among other elements, "that the defendant had a legal duty of care towards the plaintiff" and "breach of that duty." *Wallman v. Suddock*, 200 Cal. App. 4th 1288, 1308 (2011). Plaintiff fails to adequately allege either element.

### a.      Neither Xapo, Inc. nor Xapo Gibraltar owes any duty of care to Plaintiff, a noncustomer.

Plaintiff fails to plead that either Xapo, Inc. or Xapo Gibraltar has a legal duty of care to Plaintiff. A duty of care "is the essential prerequisite to a negligence cause of action, determined as a matter of law by the court." *Software Design & Application, Ltd. v. Hoefer & Arnett, LLC*, 49 Cal. App. 4th 472, 478 (1996). Generally, there is no duty in a case involving "negligently inflicted purely economic losses" unless the plaintiff and defendant have a "special relationship," as determined through an analysis of multiple factors. *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391,

400-01 (2019) (discussing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958), and the factors it describes). California courts have distilled a clear rule in the context of financial institutions like banks: "a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder," *Casey*, 127 Cal. App. 4th at 1149, with an exception in "extraordinary and specific circumstances," *Software Design*, 49 Cal. App. 4th at 479. Such extraordinary and specific circumstances exist "only in narrow factual" scenarios involving "the negotiation of a check by a person who is not the named payee." *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 545 (1998); *cf. Diaz*, 2018 WL 2215790, at *5 (in the context of TurboTax, requiring "objective indicia" of the alleged fraud, and finding none). Thus, in *Software Design*, the Court of Appeal found no duty to a noncustomer where, rather than the suspicious negotiation of a check, "funds were deposited into the precise accounts to which they were directed by wire transfer." 49 Cal. App. 4th at 481. For other account activity, the *Software Design* court held that absent "suspicious *instruments*," there is no "duty to supervise account activity or otherwise track frequent and/or large dollar transactions in deposit accounts." *Id.* (emphasis in original).

Here, Plaintiff does not plead the "extraordinary and specific" circumstances necessary to establish a duty owed to him as a noncustomer. As in *Software Design*, there was no facially suspicious financial instrument that revealed the alleged theft; instead, the Bitcoins were deposited into the accounts "to which they were directed." *Id.* The size and number of the transfers to "XAPO" hot wallets are also insufficient because there is no duty to "track frequent and/or large dollar transactions" absent such "suspicious instruments." *Id.*; *see also id.* at 483 ("Account activity, whether in large sums or small, whether frequent or infrequent . . . is expected, routine behavior."). And, as noted above, Plaintiff provides no basis to conclude that the deposit of 20 Bitcoins into two Xapo hot wallet addresses was suspicious at all in 2018.

Nor can Plaintiff plead a duty based on allegedly deficient KYC and AML policies. Such allegations fall outside the just-discussed "narrow factual" scenarios imposing a duty. And as discussed below, Plaintiff fails to plead what the duty would be, *i.e.*, what an industry standard policy required. And, in any event, *Software Design* held that a bank's failure to meet self-imposed "industry safeguards" did not create a duty because "account opening or screening

procedures [do not] exist to *protect strangers with whom [banks] do no business*. Rather, they exist to protect the banks." *Id.* at 482 (emphasis in original). Here, Plaintiff fails to allege any basis to find that KYC and AML policies are intended to protect noncustomers. *See* Am. Compl. ¶ 33 (goal of AML policies is for firms to "protect themselves and the financial system[]").

Plaintiff alleges throughout the Amended Complaint that "Xapo" owes duties as an "exchange." *See, e.g.*, Am. Compl. ¶ 135. Critically, however, Plaintiff does not actually describe either Xapo, Inc. or Xapo Gibraltar as exchanges, *id.* ¶¶ 2-3, and they are not, in fact, exchanges. Plaintiff defines an "exchange" as a marketplace where customers "trade[]" Bitcoins with other users, *id.* ¶ 26, 135, but Plaintiff makes no allegation that "Xapo" provides such services. Instead, he alleges that Xapo, Inc. provides cryptocurrency wallets and vaults for Bitcoin and that Xapo Gibraltar is an e-money institution. *Id.* ¶¶ 2-3. They are custodians, not exchanges. But even if the Xapo entities were considered "exchanges," there is no reason to conclude that the above duty analysis would differ. *Cf. Berk v. Coinbase, Inc.*, No. 19-16594, 2020 WL 7658357, at *2 (9th Cir. Dec. 23, 2020) (applying normal California tort and contract principles to cryptocurrency exchange relationship with customers).

Courts refuse to impose a duty on banks because doing so would "violate . . . customers' right to privacy," force banks to "act as the guarantor" of transactions, and thus lead to "loss of privacy, expense and commercial havoc." *Casey*, 127 Cal. App. 4th at 1149; *Software Design*, 49 Cal. App. 4th at 482 (holding that burden of duty to inquire about prospective customers to "divin[e] illegal conduits for embezzled funds" would be "out of proportion to the potential harm averted by such a result" because it would be "intrusive for the citizenry and add to the cost of financial transactions"). The Xapo entities owe no duty to Plaintiff here.

### b.    Plaintiff fails to allege breach of any cognizable duty.

Plaintiff also fails to adequately allege any breach. Plaintiff claims that "Xapo" breached a duty of care by "failing to implement appropriate KYC and AML policies and protocols." Am. Compl. ¶ 149. The Court previously recognized that Plaintiff's allegations about defendants' KYC and AML policies were "conclusory." MTD Order at 5. Plaintiff still fails to allege what constitutes an appropriate KYC or AML policy (whether defined by industry standard or by law

or regulation). As an initial matter, beyond a lone statement that "custodial firms" utilize KYC and AML policies, Am. Compl. ¶ 30, Plaintiff's descriptions of KYC and AML policies essentially all concern "exchanges," *see id.* ¶ 31 (stating that KYC refers to procedures "a cryptocurrency exchange employs"); *see generally id.* ¶¶ 20-37. As discussed above, Plaintiff fails to adequately allege that the Xapo entities are exchanges or that the hackers used "exchange" services to which these allegations would apply. Even as to exchanges, Plaintiff has not adequately alleged how an appropriate policy could have identified the deposits here as suspicious or what the specific deficiencies were with "Xapo's" KYC and AML policies. *See* Am. Compl. ¶ 31 (stating that "the robustness of KYC procedures varies across companies and jurisdictions"); *id.* ¶ 33 (noting that the "***general goal*** of AML is to ensure that firms are able to detect and prevent money laundering"). Plaintiff thus fails to allege breach of any duty.

### 5.    Plaintiff fails to state a claim for constructive trust (Count IX).

For constructive trust, Plaintiff must show "the defendant's acquisition or detention of the property interest by some wrongful act." *Higgins v. Higgins*, 11 Cal. App. 5th 648, 659 (2017). Because Plaintiff has not alleged any aiding-or-abetting or negligence claims, his constructive trust claim also fails. *See Impac*, 270 F. App'x at 572 (affirming dismissal of constructive trust claim because plaintiff failed to allege "wrongful act on the part of defendants").

### D.    The Court should dismiss without leave to amend.

The Court should dismiss Plaintiff's Amended Complaint without leave to amend because "any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Plaintiff ignored the Court's direction in its order granting Xapo, Inc.'s motion to dismiss, and has not shown (and cannot show) the ability to plead different facts sufficient to state a claim.

As to subject matter jurisdiction, the Court informed Plaintiff's counsel at the hearing on Xapo, Inc.'s motion to dismiss that without the CFAA claim, the Court "probably will not accept supplemental jurisdiction." Dkt. No. 47, at 4 (Tr. of Nov. 12, 2020 Hr'g). Yet Plaintiff dropped the CFAA claim and failed to plead a legitimate basis for federal-question or diversity jurisdiction, *see* Section III.A, *supra*, showing that further amendment would be futile.

As to personal jurisdiction, Xapo, Inc. and Xapo Gibraltar have submitted significant

1   evidence demonstrating no possible basis for alleging general jurisdiction, specific jurisdiction, or

2   an alter-ego theory of jurisdiction over Xapo Gibraltar. *See* Section III.B, *supra*. Plaintiff cannot

3   re-plead Xapo Gibraltar as a party due to this evidence and his reliance on conclusory allegations.

4          For the remaining claims, the Court previously dismissed because Plaintiff lumped Xapo,

5   Inc. and Xapo Gibraltar together and failed to plead a California nexus. MTD Order at 3, 9. The

6   Court told Plaintiff to rectify those deficiencies in an Amended Complaint. *Id.* Plaintiff has failed

7   to do so. *See* Sections III.C.1, III.C.2, *supra*. The same is true for Plaintiff's aiding-and-abetting

8   conversion and fraud claims. The Court previously held that Plaintiff had failed to plead actual

9   knowledge in the context of the California Penal Code § 496 claim. MTD Order at 4. Plaintiff has

10  failed, once again, to plead actual knowledge. *See* Section III.C.3.a, *supra*.

11         Plaintiff's negligence claim should also be dismissed without leave to amend because

12  Plaintiff fails to allege a legal duty as a matter of law. *See* Section III.C.4, *supra*. Also, the Court

13  previously identified Plaintiff's failure to plead industry standard KYC and AML policies and the

14  defects in any Defendant's specific policies, and Plaintiff has failed to correct this deficiency. *Id.*

15         The constructive trust claim should be dismissed without leave to amend because it

16  depends on other claims that must be dismissed without leave to amend. *See* Section III.C.5.

17  **IV.    CONCLUSION**

18         For the foregoing reasons, this Court should (1) dismiss Plaintiff's Amended Complaint in

19  its entirety on subject matter jurisdiction grounds; (2) dismiss claims against Xapo Gibraltar for

20  lack of personal jurisdiction; and (3) dismiss the four claims against Xapo Gibraltar for failure to

21  state a claim. The Amended Complaint should be dismissed without leave to amend.

22  Dated: February 3, 2021                           KEKER, VAN NEST & PETERS LLP

23

24                                        By:   *s/Steven P. Ragland*
                                                STEVEN P. RAGLAND
25                                              ERIN E. MEYER
                                                VICTOR T. CHIU
26                                              JASON S. GEORGE

27                                              Attorney for Defendant XAPO, INC.

28                                              Specially appearing on behalf of XAPO
                                                (GIBRALTAR) LIMITED