KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
VICTOR T. CHIU - # 305404
vchiu@keker.com
JASON S. GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
XAPO, INC.

Specially appearing on behalf of
XAPO (GIBRALTAR) LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals,<br><br>    Defendants. | Case No. 5:20-CV-03643-BLF<br><br>**DECLARATION OF JULIE JO IN SUPPORT OF MOTION BY DEFENDANTS XAPO, INC. AND XAPO (GIBRALTAR) LIMITED TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:     May 27, 2021<br>Time:    9:00 a.m.<br>Dept.:   Courtroom 3 – 5th Floor<br>Judge:  Hon. Beth Labson Freeman<br><br>Date Filed: June 1, 2020<br><br>Trial Date: None set |

I, Julie Jo, hereby declare:

1. I have been employed by Xapo, Inc. since 2018 as Legal Counsel, and am currently appointed as its Secretary and as its acting Chief Compliance Officer.

2. In my capacity as Legal Counsel, Secretary, and acting Chief Compliance Officer, I am familiar with the financial and corporate records of Xapo, Inc. I make the following declaration on the basis of my personal knowledge in support of the Motion by Defendants Xapo, Inc. and Xapo (Gibraltar) Limited ("Xapo Gibraltar") to Dismiss Plaintiff's Amended Complaint. If called as a witness, I could testify competently as to the facts stated herein.

***Xapo, Inc.'s Business***

3. Xapo, Inc. is properly incorporated in Delaware and has its own articles of incorporation and bylaws.

4. Xapo, Inc. provides a way to store, use, and manage Bitcoins through a wallet and a cold storage vault. These services concerning Bitcoin do not involve electronic money ("e-money") as that term is used in the context of Xapo Gibraltar's business. Xapo, Inc. is not a cryptocurrency "exchange" and does not provide the ability for users of Xapo, Inc.'s services to trade securities or cryptocurrency with each other on its platform.

5. Xapo, Inc. does not offer services to individuals residing outside of the United States. As such, only United States customers are able to open a Bitcoin wallet or vault account with Xapo, Inc.

***Xapo, Inc. and Xapo Gibraltar operate independently of each other.***

6. Xapo, Inc. is a wholly owned subsidiary of Xapo Holdings Limited.

7. Xapo, Inc. and Xapo Gibraltar operate independently of each other. Xapo, Inc. does not have, and has never had, any control over Xapo Gibraltar's operations. Xapo, Inc. does not, and has never, directed Xapo Gibraltar to perform any action or dictated any aspect of Xapo Gibraltar's day-to-day operations. Conversely, Xapo Gibraltar does not have, and never has, exerted control over Xapo, Inc.'s operations, and has never directed Xapo, Inc. to perform any action or dictated any aspect of Xapo, Inc.'s day-to-day operations.

8.      There is no overlap between Xapo Gibraltar's business, which solely involves providing e-money services to customers abroad, and Xapo, Inc.'s business, which solely involves providing Bitcoin-related services to United States customers.

9.      Xapo, Inc. and Xapo Gibraltar each have separately constituted and operated boards of directors. The Xapo, Inc. Board of Directors makes all of the director-level policy and management decisions for Xapo, Inc.

10.     Xapo, Inc. has appointed officers that carry out Xapo, Inc.'s day-to-day operations. Xapo, Inc.'s day-to-day operations are carried out independently from any other organization, including Xapo Gibraltar.

11.     Xapo, Inc. has entered into a written agreement with its parent corporation. That agreement provides Xapo, Inc. with access to services (such as IT, tax services, and compliance support) from employees or contractors of its parent corporation in exchange for a fee. Xapo, Inc. pays for and receives these services independently of Xapo Gibraltar, which has separately signed its own similar agreement to receive similar services from some of these same employees or contractors of the parent corporation, Xapo Holdings.

***Xapo, Inc. follows all corporate formalities.***

12.     Xapo Gibraltar and Xapo, Inc. do not share any office space or physical presence.

13.     Xapo, Inc. creates and maintains its own corporate records, including financial statements, payroll records, and financial plans and projections, that pertain solely to Xapo, Inc.'s operations.  Xapo, Inc. keeps these corporate records itself, separate from any corporate records for Xapo Gibraltar.

14.     Xapo, Inc.'s Board of Directors holds regular board meetings and keeps a record of those board meetings as required under its articles of incorporation, bylaws, and Delaware law. Those board meetings are completely separate from any board meetings for Xapo Gibraltar.

15.     Xapo, Inc. pays a licensing fee to its parent corporation to use the "Xapo" tradename.

***Xapo, Inc.'s finances are separate from Xapo Gibraltar's.***

16. Xapo, Inc. and Xapo Gibraltar have entirely separate finances and do not share any bank accounts or commingle their money.

17. Xapo, Inc. is sufficiently capitalized to run its day-to-day operations and pays for those expenses itself.

18. Xapo, Inc. has never held itself out as liable for the debts of Xapo Gibraltar. As far as I am aware, Xapo Gibraltar has never represented that it is liable for the debts of Xapo, Inc.

19. Xapo, Inc. has never transferred money to Xapo Gibraltar or vice versa.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on February 3, 2021 in New York, New York.

_____
JULIE JO