1  KEKER, VAN NEST & PETERS LLP
   STEVEN P. RAGLAND - # 221076
2  sragland@keker.com
   ERIN E. MEYER - # 274244
3  emeyer@keker.com
   VICTOR T. CHIU - # 305404
4  vchiu@keker.com
   JASON S. GEORGE - # 307707
5  jgeorge@keker.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
7  Facsimile:     415 397 7188

8  Attorneys for Defendant
   XAPO, INC.
9
   Specially appearing on behalf of
10 XAPO (GIBRALTAR) LIMITED

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14 DENNIS NOWAK, an individual,              Case No. 5:20-CV-03643-BLF

15              Plaintiff,                   **DECLARATION OF ALBERT AGIUS IN**
                                             **SUPPORT OF MOTION BY**
16        v.                                 **DEFENDANTS XAPO, INC. AND XAPO**
                                             **(GIBRALTAR) LIMITED TO DISMISS**
17 XAPO, INC., a Delaware corporation; XAPO  **PLAINTIFF'S AMENDED COMPLAINT**
   (GIBRALTAR) LIMITED, a foreign
18 corporation; INDODAX, a foreign company;  Date:      May 27, 2021
   and JOHN DOE NOS. 1-10, individuals,      Time:      9:00 a.m.
19                                           Dept.:     Courtroom 3 – 5th Floor
              Defendants.                    Judge:     Hon. Beth Labson Freeman
20
                                             Date Filed: June 1, 2020
21
                                             Trial Date:  None set
22

23

24

25

26

27

28

I, Albert Agius, hereby declare:

1.      I have been employed by Xapo (Gibraltar) Limited ("Xapo Gibraltar") since 2018 as Legal Counsel.

2.      In my capacity as Legal Counsel, I am familiar with the financial and corporate records of Xapo Gibraltar. I make the following declaration on the basis of my personal knowledge in support of the Motion by Defendants Xapo, Inc. and Xapo Gibraltar to Dismiss Plaintiff's Amended Complaint. If called as a witness, I could testify competently as to the facts stated herein.

3.      All of the statements in this declaration are made to the best of my knowledge based on my personal experience working for Xapo Gibraltar and my review of its business and financial records.

***Xapo Gibraltar is a Gibraltarian company that provides electronic money services.***

4.      Xapo Gibraltar is a company registered and incorporated in Gibraltar. It is properly incorporated with its own Memorandum & Articles of Association. Xapo Gibraltar is licensed and regulated by the Gibraltar Financial Services Commission under the Financial Services (Electronic Money) Regulations 2011 as an "Electronic Money Institution." Xapo Gibraltar's principal place of business is in Gibraltar.

5.      Electronic money (also called "e-money") refers to fiat currency controlled by a government's central authority—such as Euros or British pounds—that is issued, stored, and used in an electronic format through an authorized e-money provider, such as Xapo Gibraltar. Xapo Gibraltar has always operated as an online bank where customers store fiat currencies, such as Euros or Dollars (not cryptocurrency assets like Bitcoin), in online accounts. Xapo Gibraltar has only ever offered its e-money services to customers that reside outside the United States.

6.      Xapo Gibraltar does not provide, and has never provided, any services related to cryptocurrency such as Bitcoin. It has never been possible for a Xapo Gibraltar customer to use their Xapo Gibraltar account to store or perform transactions with Bitcoin or any other cryptocurrency. Xapo Gibraltar is not an "exchange" and does not provide services that allow the trade of securities or cryptocurrency between users.

7.      I am aware that other Xapo entities, such as Xapo, Inc., provide services for storing and transferring Bitcoin. As far as I am aware, Xapo, Inc. only provides those services to individuals within the United States. Xapo Gibraltar's business, which involves the provision of e-money services to non-United States residents, has no overlap with Xapo, Inc.'s United States-only cryptocurrency-related services.

8.      Xapo Gibraltar is not, and has never been, licensed to do business in California or in any state in the United States. Xapo Gibraltar does not do any business or provide any services in California or the United States. Xapo Gibraltar has never directly solicited business from or advertised to California consumers or consumers in the United States generally.

9.      Xapo Gibraltar does not maintain any office or place of business in California or anywhere in the United States. Nor does Xapo Gibraltar own any real property in California or the United States. Xapo Gibraltar does not pay taxes in or have a registered agent for service of process in California or in the United States. Xapo Gibraltar maintains offices only in Gibraltar.

10.      It would be a serious burden on Xapo Gibraltar to produce witnesses from outside the United States for testimony in California.

11.      In sum, Xapo Gibraltar has no California or United States customers, offices, or operations.

12.      I have reviewed Plaintiff's allegation in paragraph 3 of his Amended Complaint that Xapo Gibraltar is "essentially a United States-based entity." That statement is false. Xapo Gibraltar is a Gibraltarian corporation that operates entirely outside of the United States and only provides its e-money services to customers who reside outside of the United States.

***Xapo Gibraltar and Xapo, Inc. operate independently of each other.***

13.      Xapo Gibraltar is a wholly owned subsidiary of Xapo Holdings Limited.

14.      Xapo Gibraltar and Xapo, Inc. operate independently from each other. Xapo Gibraltar does not have, and has never had, any control over Xapo, Inc.'s operations. Xapo Gibraltar does not, and has never, directed Xapo, Inc. to perform any action or dictated any aspect of Xapo, Inc.'s day-to-day operations. Likewise, Xapo, Inc. does not have, and never has, exerted

1634339

control over Xapo Gibraltar's operations, and has never directed Xapo Gibraltar to perform any action or dictated any aspect of Xapo Gibraltar's day-to-day operations.

15.     There is no overlap between Xapo Gibraltar's and Xapo, Inc.'s business or operations. Xapo Gibraltar provides e-money services to customers abroad, while Xapo, Inc. provides cryptocurrency-related services to United States customers.

16.     Xapo Gibraltar and Xapo, Inc. each have separately constituted and operated boards of directors. The Xapo Gibraltar Board of Directors makes all of the director-level policy and management decisions for Xapo Gibraltar.

17.     Xapo Gibraltar has officers properly appointed under Gibraltar law that carry out Xapo Gibraltar's day-to-day operations. Xapo Gibraltar's day-to-day operations are carried out independently from any other organization, including Xapo, Inc.

18.     Xapo Gibraltar has employees working in its Gibraltar offices. None of those individuals are employees of both Xapo Gibraltar and Xapo, Inc., and none of them provide services to Xapo, Inc.

19.     Xapo Gibraltar has entered into a written agreement with its parent corporation. That agreement provides Xapo Gibraltar with access to services (such as IT, tax services, and compliance support) from employees or contractors of its parent corporation in exchange for a fee. Xapo Gibraltar pays for and receives these services independently of Xapo, Inc., which separately signed its own similar agreement to receive similar services from some of these same employees or contractors of the parent corporation, Xapo Holdings.

### *Xapo Gibraltar follows all corporate formalities.*

20.     Xapo Gibraltar maintains physical offices in Gibraltar. It previously had a physical office through Regus at Unit 1.02, First Floor, World Trade Center, 6 Bayside Road, Gibraltar, GX11 1AA, and recently moved to physical offices located at 1 Casemates Square, Gibraltar, GX11 1AA. Neither of these offices was/is a "virtual" office, but rather are physical offices where employees worked/work.

21.     One of Xapo Gibraltar's employees received personal service of the summons and original complaint in this case at the above World Trade Center address. A true and correct copy

1634339

of the proof of service for the summons and complaint is attached to this declaration as **Exhibit A**.

22.     Xapo Gibraltar and Xapo, Inc. do not share any office space or physical presence.

23.     Xapo Gibraltar creates and maintains its own corporate records, including financial statements, payroll records, and financial plans and projections, that pertain solely to Xapo Gibraltar's operations.  Xapo Gibraltar keeps these corporate records itself, separate from any corporate records for Xapo, Inc.

24.     Xapo Gibraltar's Board of Directors holds official board meetings four times a year and keeps a record of those board meetings as required by Gibraltar law. Those board meetings are completely separate from any board meetings for Xapo, Inc.

25.     Xapo Gibraltar pays a licensing fee to its parent corporation to use the "Xapo" tradename.

***Xapo Gibraltar's finances are separate from Xapo, Inc.'s finances.***

26.     Xapo, Inc. and Xapo Gibraltar have entirely separate finances and do not share any bank accounts or commingle their money.

27.     Xapo Gibraltar is sufficiently capitalized to run its day-to-day operations and pays for those expenses itself.

28.     Xapo Gibraltar has never held itself out as liable for the debts of Xapo, Inc. As far as I am aware, Xapo, Inc. has never represented that it is liable for the debts of Xapo Gibraltar.

29.     Xapo Gibraltar has never transferred money to Xapo, Inc or vice versa.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on February 3, 2021 in Gibraltar.


By: _____
                    ALBERT AGIUS

DECLARATION OF ALBERT AGIUS IN SUPPORT OF MOTION TO DISMISS
Case No. 5:20-cv-03643-BLF

1634339

# Exhibit A

## SERVICE OF DOCUMENTS PURSUANT TO THE HAGUE SERVICE CONVENTION

| | |
|---|---|
| **From:** | Registrar, Supreme Court, Gibraltar |
| **To:** | Bailiff Manager |
| **Date:** | 25 September 2020 |
| **Subject:** | Service of Documents – **XAPO (GIBRALTAR) LIMITED**, 6 Bayside Road, Unit 1.02, 1st Floor, World Trade Center, Gibraltar |
| **Our ref:** | H005/20 |

I would be grateful if you would serve the attached documents:

1. Date of Service:                  *25 September 2020.*

2. Place of Service:                 *WTC, Xapo offices*

3. Full name of person on whom documents served:     *Aleut Joseph Bocca*

4. Relationship of that person to the person/company on whom the documents are being served:     *HR Manager.*

5. Signature of person served:     _____

KARL TONNA
**Registrar**

BAILIFF: _____

IF NOT SERVED – REASONS FOR NON-SERVICE: _____

_____

_____

_____

## SUMMARY OF THE DOCUMENT TO BE SERVED

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.**
**(Article 5, fourth paragraph)**

**Name and address of the requesting authority:**
David C. Silver, Esq.
Authorized to act as Requesting Authority
Silver Miller
11780 W. Sample Road
Coral Springs, FL 33065 USA

**Particulars of the parties\*:**

**XAPO (GIBRALTAR) LIMITED** (Defendant)
6 Bayside Road, Unit 1.02, 1st Floor
World Trade Center
Gibraltar

## JUDICIAL DOCUMENT\*\*

**Nature and purpose of the document:**

To give notice to the Defendant of the commencement of a civil claim for computer theft, fraud, and compensatory and punitive damages, and to summons it to serve written defenses to the claim.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**

Civil claim for determination of issues as stated in the documents to be determined by the Court of original jurisdiction.

**Date and place for entering appearance\*\*:**

Not applicable (N/A)

**Court which has given judgment\*\*:**

Not applicable (N/A)

**Date of judgment\*\*:**

Not applicable (N/A)

**Time-limits stated in the document\*\*:**

Defendant is to serve written defenses (Answer) to the action upon Plaintiff or attorney for Plaintiff within 21 calendar days after service of the Summons (not counting the day you received it).

## EXTRAJUDICIAL DOCUMENT\*\*

**Nature and purpose of the document:** Not applicable (N/A)

**Time-limits stated in the document\*\*:** Not applicable (N/A)

\* If appropriate, identity and address of the person interested in the transmission of the document.
\*\* Delete if inappropriate.

3

USM-94

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| DENNIS NOWAK, an individual | ) |
|  | ) |
|  | ) |
|  | ) |
| _Plaintiff(s)_ | ) |
| v. | )    Civil Action No. |
| XAPO, INC., a Delaware corporation; | ) |
| XAPO (GIBRALTAR) LIMITED, a foreign corporation; | ) |
| INDODAX, a foreign company; and | ) |
| JOHN DOE NOS. 1-10, individuals | ) |
| _Defendant(s)_ | ) |

### SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_ XAPO (GIBRALTAR) LIMITED
6 Bayside Road, Unit 1.02 1st Floor
World Trade Center
Gibraltar

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brandon S. Reif, Esq.          - and -       David C. Silver, Esq.
Reif Law Group, P.C.                          Silver Miller
1925 Century Park East - Suite 1700          11780 W. Sample Road
Los Angeles, CA 90067                         Coral Springs, FL 33065
E-mail:  Docket@ReifLawGroup.com              E-mail: DSilver@SilverMillerLaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT
_Susan Y. Soong_

_Cindy Hernandez_

Date:  ___6/2/20___                          _____
                                             _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Brandon S. Reif, Esq. (SBN 214706)
E-Mail: Docket@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

David C. Silver (to be admitted *pro hac vice*) DSilver@SilverMillerLaw.com
Jason S. Miller (to be admitted *pro hac vice*)
JMiller@SilverMillerLaw.com
**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 516-6000

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DENNIS NOWAK, an individual,<br><br>      Plaintiff,<br><br>    v.<br><br>XAPO, INC., a Delaware corporation;<br>XAPO (GIBRALTAR) LIMITED, a foreign<br>corporation; INDODAX, a foreign company;<br>and JOHN DOE NOS. 1-10, individuals,<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DENNIS NOWAK, an individual ("Plaintiff"), brings this action against XAPO, INC., a Delaware corporation, XAPO (GIBRALTAR) LIMITED, a foreign corporation, INDODAX, a foreign company, and JOHN DOE NOS. 1-10, individuals.  Plaintiff alleges the following:

## INTRODUCTION

Plaintiff alleges in this Complaint claims for: (i) Violation of California Penal Code § 496 (Possession of Stolen Property); (ii) Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4) (Computer Fraud and Abuse Act); and (iii) Violation of California Penal Code § 502 et seq. (Assisting Unlawful Access To Computer), based upon his own knowledge and acts, and based on facts obtained upon investigation by his counsel, which include, *inter alia*: (a) documents and account records maintained by Plaintiff or for his benefit, and (b) blockchain tracing and analytical reports prepared by international investigative firm Kroll.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## PARTIES

1.       Plaintiff DENNIS NOWAK is a natural person and is a resident of Germany.

2.       Defendant XAPO, INC. is a Delaware corporation with its principal place of business in Palo Alto, California.  XAPO, INC. provides each of its accountholders a bitcoin wallet combined with a cold storage vault and a bitcoin-based debit card.  XAPO, INC. holds client bitcoins following a full reserve banking and fully segregated model, which allows for verification that funds held by XAPO, INC. are in an individual multi-signature bitcoin address and not pooled or co-mingled with other users' funds.

3.       Defendant XAPO (GIBRALTAR) LIMITED is a foreign corporation registered and incorporated in Gibraltar with Company No. 111928.  According to

1
COMPLAINT

1  information published on its own website, XAPO (GIBRALTAR) LIMITED is licensed

2  and regulated by the Gibraltar Financial Services Commission under the Financial

3  Services (Electronic Money) Regulations 2011 as an "Electronic Money

4  institution" with License No. FSC0063BNK.    Notwithstanding its Gibraltar

5  registry, XAPO (GIBRALTAR) LIMITED has extensive ties to the United States

6  -- including this jurisdiction -- and is essentially a United States-based entity, as

7  management of the company's affairs are greatly guided by its team of advisors,

8  including Lawrence H. Summers (former Secretary of the U.S. Department of the

9  Treasury under President Bill Clinton), Dee Hock (founder of Visa), and John Reed

10  (former Chairman and Chief Executive Officer of Citibank).

11       4.      XAPO, INC. and XAPO (GIBRALTAR) LIMITED commonly

12  operate with their sibling entities around the world under the shared tradename

13  "XAPO"; and XAPO, INC. and XAPO (GIBRALTAR) LIMITED will be

14  collectively referred to herein simply as "XAPO," as their own website does not

15  differentiate between the separate corporate entities.   Upon information and belief,

16  the entities are all dominated by the same individuals, use the same corporate

17  decision-makers, the same resources, and the same business connections.   Thus,

18  they are essentially one-and-the-same business, regardless of the particular name

19  under which each company's operations are conducted.

20       5.      Defendant INDODAX is a cryptocurrency exchange headquartered

21  in Indonesia.   With more than a million users on a 24-hour trading platform,

22  INDODAX allows its accountholders to trade bitcoin to other digital assets such

23  as Ethereum, Litecoin, Dogecoin, DASH, Ripple, Stellar, XEM, NXT, and Bitshares.

24       6.      Defendants JOHN DOE NOS. 1-10 are a collection of hackers and

25  thieves whose identities are presently unknown but who were instrumental in stealing

26  Plaintiff's assets, storing those stolen assets in accounts held at XAPO and

27  INDODAX, and exposing Plaintiff to the harm alleged in this action.   Plaintiff is

28  working with multiple

1  law enforcement agencies to identify the hacker(s) involved in this matter, the XAPO

2  and INDODAX accountholders, and others involved in this theft.

3      7.    In addition to those persons and entities set forth as Defendants herein, there

4  are likely other parties who may well be liable to Plaintiff but respecting whom Plaintiff

5  currently lacks specific facts to permit him to name such person or persons as a party

6  defendant.  By not naming such persons or entities at this time, Plaintiff is not waiving his

7  right to amend this pleading to add such parties, should the facts warrant the addition of

8  such parties.

9                  **JURISDICTION AND VENUE**

10      8.    This Court has subject matter jurisdiction over this action pursuant to 28

11  U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand

12  Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action

13  between citizens of different states.

14      9.    Furthermore, this Court has subject matter jurisdiction over this action

15  pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treatises of

16  the United States.   Additionally, the Court has supplemental jurisdiction over the

17  California statutory and common law claims pursuant to 28 U.S.C. § 1337.

18      10.    This Court has personal jurisdiction over Defendants because: (a) at least

19  one Defendant is operating, present, and/or doing business within this District, and (b)

20  Defendants' breaches and unlawful activity occurred within this District.

21      11.    Upon information and belief, Defendants each service accountholders in

22  this jurisdiction and reap from those accountholders large sums of money and other

23  assets, including valuable cryptocurrency.

24      12.    Moreover, Defendants each either conduct business in and maintain

25  operations in this District -- including operating computer servers and storage vaults -- or

26  have sufficient minimum contacts with this District as to render the exercise of

27  jurisdiction by this Court permissible under traditional notions of fair play and

28  substantial justice.

13.     Venue is proper pursuant to 28 U.S.C. § 1391 in that: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (c) Defendants have received substantial compensation and other transfers of money and digital assets in this District by doing business here and engaging in activities having an effect in this District.

## GENERAL ALLEGATIONS

### I.     Background on Cryptocurrency

14.     Bitcoin ("BTC") and Ether ("ETH") are virtual currencies that may be traded on online exchanges for conventional currencies, including the U.S. Dollar, Euros, and the Japanese Yen, or used to purchase goods and services online. Bitcoin and Ether have no single administrator or central authority or repository.

15.     Bitcoin and Ether are but two of the cryptocurrencies that investors typically use to trade on cryptocurrency exchanges -- both in spot transactions and in leveraged margin trading.

### II.     Plaintiff's Assets Were Stolen from his Cryptocurrency Exchange Account

16.     At all times relevant hereto, Plaintiff maintained an account at a Northern California-based cryptocurrency exchange ("U.S.A. EXCHANGE") in which Plaintiff held, among other digital currencies, bitcoin.

17.     On September 18, 2018, to prevent unauthorized access to his U.S.A. EXCHANGE account, Plaintiff secured his account with a new login two-factor authentication through Google Authenticator.

18.     On or about November 20, 2018, Plaintiff deposited into his U.S.A. EXCHANGE account 500 bitcoin (500 BTC) in three separate deposits: (1) a 200 BTC deposit, (2) a second 200 BTC deposit, and (3) a 100 BTC deposit.

COMPLAINT

19.   At the time Plaintiff made those deposits, the 500 BTC were valued at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00).[1]

20.   Just a few days after he had deposited the 500 BTC into his account, Plaintiff's account at U.S.A. EXCHANGE was infiltrated by JOHN DOE NOS. 1-10, who withdrew all 500 BTC over the course of slightly more than two days in November 2018, to wit:

| Date/Time of Cryptocurrency Theft | Cryptocurrency Assets Stolen | Approximate Value of Funds/Assets Stolen on Date of Theft[2] |
|---|---|---|
| November 21, 2018 10:54 a.m. | 66.99950 BTC | $305,000.00 |
| November 22, 2018 11:31 a.m. | 67.499950 BTC | $310,000.00 |
| November 23, 2018 11:49 a.m. | 66.99950 BTC | $305,000.00 |
| November 23, 2018 4:44 p.m. | 298.19950 BTC | $1,380,000.00 |
| TOTAL | 499.69845 BTC[3] | $2,300,000.00 |

21.   Undersigned counsel has engaged international investigative firm Kroll to trace the BTC transferred and withdrawn from Plaintiff's U.S.A. EXCHANGE account in or about November 21-23, 2018.

---

[1] As of the date of this filing, those 500 BTC are valued at approximately Four Million Five Hundred Thousand Dollars ($4,500,000.00).

[2] Valuation of the stolen funds/assets is calculated using market data compiled by www.CoinMarketCap.com, which takes the volume weighted average of all prices reported at several dozen cryptocurrency markets serving investors in the United States and abroad.

[3] Transaction fees assessed on each of these unauthorized withdrawals increased the total amount withdrawn to 500 BTC.

22.    As concluded by Kroll, 479.69 BTC of the 499.69845 BTC transferred from Plaintiff's U.S.A. EXCHANGE account were transferred to two deposit addresses controlled by INDODAX.

23.    From those two deposit addresses, the funds were then moved to a hot wallet[4] at INDODAX where, upon information and belief, the assets are still located.

24.    The Kroll analysis further shows that as of February 7, 2020, an additional 19.99 BTC of Plaintiff's original 499.69 BTC are held in two hot wallet addresses controlled by XAPO.

25.    As such, 499.68 of the 499.69845 BTC pilfered from Plaintiff's U.S.A. EXCHANGE account have been located, *to wit*:

| Owner of Source Addresses | Owner of Destination Addresses | Number of Destination Addresses | Total Estimated Amount of Funds Involved in the Event which were Sent from Source Addresses and Reached Destination Addresses |
|---|---|---|---|
| U.S.A. EXCHANGE | INDODAX (*deposit addresses and hot wallets*) | 3 | 479.69 BTC |
| U.S.A. EXCHANGE | XAPO (*hot wallets*) | 2 | 19.99 BTC |
| | | TOTAL | 499.68 BTC |

---

[4] A "hot wallet" refers to a cryptocurrency wallet that is online and connected in some way to the Internet. A "hot wallet" stands in contrast to "cold storage," which refers to a method for electronically storing cryptocurrency in a location that is not connected to the Internet.

COMPLAINT

1    26.    The Kroll analysis further suggests that there has been no obvious attempt
2  to layer the transaction in such a way as to obfuscate the destination of the funds.
3  Plaintiff's BTC was transferred from his U.S.A. EXCHANGE account to addresses at
4  INDODAX and XAPO in less than half-a-dozen steps, as shown below, where nodes
5  represent individual addresses and arrows represent groups of transactions between those
6  addresses:



22    27.    Neither Plaintiff nor any person or entity under Plaintiff's control owns or
23  controls any of the destination addresses at INDODAX or XAPO referenced above.

25  **III.    Due to Faulty Security or Knowing Indifference, Stolen Cryptocurrency is**
26  **Often Stored at Xapo and Indodax**

27    28.    In addition to Plaintiff's losses, Kroll also traced the origin of other BTC
28  transferred to the two INDODAX deposit addresses and the two XAPO hot wallet

1    addresses to which Plaintiff's stolen BTC were sent; and Kroll concluded that the

2    majority of the transfers into those four addresses came from U.S.A. EXCHANGE.

3        29.    Of the estimated 1,258.85 BTC transferred from attributable sources to the

4    two INDODAX deposit addresses, 698.72 BTC (including Plaintiff's 479.69 BTC), or

5    over 55%, was transferred from U.S.A. EXCHANGE.

6        30.    Of the estimated 105.4 BTC transferred from attributable sources to the two

7    XAPO hot wallet addresses, 56.97 BTC (including Plaintiff's 19.99 BTC), or over 54%

8    of those funds, were transferred from U.S.A. EXCHANGE.

9        31.    As such, a further 256.01 BTC were transferred from U.S.A. EXCHANGE

10   to the same addresses that hold Plaintiff's stolen BTC.[5]

11       32.    As of the date of this filing, those 256.01 BTC are valued at approximately

12   $2,300,000.00 USD, bringing the total value of the 755.69 BTC from U.S.A.

13   EXCHANGE addresses currently held in the four INDODAX and XAPO addresses to

14   approximately $6,800,000.00.[6]

15       33.    The methodology of the specific theft identified by Kroll -- with funds

16   leaving U.S.A. EXCHANGE and a small split going to two XAPO wallets and the rest

17   going to two INDODAX wallets -- appears to have been followed on more occasions

18   than just the theft from Plaintiff, given the sums above.

19       34.    In the cryptocurrency industry -- just as in the financial and banking

20   industries -- it is standard for custodial firms and exchanges like XAPO and INDODAX

21   to   employ   rigorous   "Know   Your   Customer"   (KYC)   and   "Anti-Money-

22   Laundering" (AML) policies and procedures.

23       35.    The general goal of AML is to ensure that firms are able to detect and

24   prevent money laundering and to protect themselves and the financial systems in which

25   they operate from the damage it causes.

26

27   _____
     [5] 219.03 BTC transferred to the INDODAX addresses and 36.98 BTC transferred to the XAPO
28   addresses.

     [6] Using a conversion of 1 BTC = $9,000.00 USD.

36.    KYC is important because the risk-based approach to AML is predicated upon firms knowing who their customers are and what level of money laundering risk they present.

37.    Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.

38.    In the instant matter, it appears that XAPO and INDODAX have permitted, whether intentionally or not, criminal activity by allowing their custodial vaults and exchanges to serve as shelters for thieves like Defendants JOHN DOE NOS. 1-10 to store purloined assets.

39.    Beyond the four addresses at INDODAX and XAPO, Kroll's initial analysis shows that more than 2,900 BTC have been transferred from over 24,000 U.S.A. EXCHANGE addresses to over 500 INDODAX addresses since January 2017 -- thus demonstrating that the U.S.A. EXCHANGE-to- INDODAX movement of the BTC stolen from Plaintiff is far from an isolated incident.

40.    XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings. For example, U.S.A. EXCHANGE knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.

41.    Moreover, XAPO and INDODAX each know or should have known that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff.

42.    Plaintiff brings this action to hold XAPO and INDODAX liable for aiding and abetting Defendants JOHN DOE NOS. 1-10's misappropriation of Plaintiff's assets

1   and for creating and maintaining systems that unjustly allow thieves to hide stolen
2   property in XAPO's and INDODAX's custodial vaults.

3   43.   Plaintiff has duly performed all of his duties and obligations, and
4   any conditions precedent to Plaintiff bringing this action have occurred, have
5   been  performed, or else have been excused or waived.

6   44.   To enforce his rights, Plaintiff has retained undersigned counsel and
7   is obligated to pay counsel a reasonable fee for its services, for which Defendants are
8   liable as a result of their bad faith and otherwise.

**COUNT I**
**Violation of California Penal Code § 496**
**(Possession of Stolen Property)**
**(By Plaintiff Against All Defendants)**

11   45.   Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 44
12   above, and further alleges:

13   46.   This cause of action asserts a claim against XAPO, INDODAX, and
14   JOHN DOE NOS. 1-10 for the actual theft of Plaintiff's property as well as for
15   receiving, aiding in concealing, and withholding from Plaintiff the stolen property.

16   47.   In pertinent part, Cal. Penal Code sec. 496(a) imposes liability upon
17   "[e]very person who buys or receives any property that has been stolen or that has
18   been obtained in any manner constituting theft or extortion, knowing the property to
19   be so stolen or obtained or who conceals, sells, withholds, or aids in concealing,
20   selling, or withholding any property from the owner, knowing the property to be so
21   stolen or obtained" and provides that "[a] principal in the actual theft of the property
22   may be convicted pursuant to this section."

23   48.   Furthermore, Cal. Penal Code sec. 496(c) provides: "Any person who has
24   been injured by a violation of subdivision (a) or (b) may bring an action for three
25   times the amount of actual damages, if any, sustained by the plaintiff, costs of suit,
26   and reasonable attorney's fees."

27   49.   Plaintiff's cryptocurrency assets were stolen from him, or were obtained
28   by, Defendants JOHN DOES NO. 1-10 in a manner constituting theft.

1    by, Defendants JOHN DOE NOS. 1-10 in a manner constituting theft.

2    50.    Defendants JOHN DOE NOS. 1-10 knew the property was stolen.

3    51.    Likewise, Defendants XAPO and INDODAX knew or should have known

4 the property was so stolen or obtained.

5    52.    Defendants received and had (and, upon information and belief, still have)

6 possession of the property stolen from Plaintiff.

7    53.    Defendants are liable to Plaintiff for three times the amount of Plaintiff's

8 actual damages, the costs of this suit, and all reasonable attorney's fees incurred

9 by plaintiff in connection herewith.

10                     **COUNT II**

11      **Aiding and Abetting Violation of 18 U.S.C. § 1030(a)(4)**
               **(Computer Fraud and Abuse Act)**

12          **(By Plaintiff Against All Defendants)**

13    54.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 44

14 above, and further alleges:

15    55.    This cause of action asserts a claim against XAPO and INDODAX for

16 violations of 18 U.S.C. § 1030(a)(4) (the "Computer Fraud and Abuse Act") for aiding

17 an abetting unauthorized access to a protected computer to obtain property, done

18 with an intent to defraud, and for furthering fraudulent activity thereby to obtain

19 something of value.

20    56.    The computer Plaintiff used to access and manage his cryptocurrency

21 accounts is a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) because it is

22 used in interstate or foreign commerce or communication, including sending

23 and receiving electronic mail and accessing and interacting with the internet.

24    57.    Defendants JOHN DOE NOS. 1-10, without authorization or by exceeding

25 authorization conditionally granted to any of them, accessed, knowingly and with

26 intent to defraud Plaintiff, Plaintiff's protected computer.

27    58.    By their conduct, the unknown and unauthorized Defendants JOHN DOE

28 NOS. 1-10 intentionally furthered a fraud upon Plaintiff and obtained Plaintiff's valuable

1  cryptocurrency.

2      59.    Defendants XAPO and INDODAX provided the unknown and

3  unauthorized persons vital assistance in carrying out the fraud by providing them safe

4  havens -- and continue to do so through the date of this filing -- that allowed the unknown

5  and unauthorized Defendants JOHN DOE NOS. 1-10 to hide stolen property in XAPO's

6  and INDODAX's custodial vaults.

7      60.    Defendants XAPO and INDODAX knew or should have known the

8  property was so stolen or obtained.

9      61.    As a consequence of Defendants' actions and omissions, Plaintiff has

10  suffered damages.

### COUNT III
**Violation of California Penal Code § 502 *et seq.***
**(Assisting Unlawful Access To Computer)**
**(By Plaintiff Against All Defendants)**

14      62.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 -44

15  above, and further alleges:

16      63.    This cause of action asserts a claim against XAPO and INDODAX for

17  violations of California Penal Code § 502 *et seq*. for knowingly and without permission

18  allowing an unauthorized third party(ies) to access Plaintiff's computers, computer

19  systems, and computer networks.

20      64.    As alleged herein, XAPO and INDODAX, in or about November-

21  December 2018, provided safe haven to unauthorized parties Defendants JOHN DOE

22  NOS. 1-10 -- and continue to do so through the date of this filing -- that allowed them to

23  hide stolen property in XAPO's and INDODAX's custodial vaults.

24  65.    At the time XAPO and INDODAX provided safe harbor and secure

25  vaulting of the funds stolen from Plaintiff, XAPO and INDODAX were aware of the

26  prevalence of money laundering and the need to prevent such activity from taking

27  place under, or with the assistance of, their custodianship.

28

66.    Although XAPO and INDODAX were aware of the necessity for safeguards providing for KYC and AML standards and to protect against trafficking of stolen property, XAPO and INDODAX did not adhere to those safeguards -- thus allowing Defendants JOHN DOE NOS. 1-10 to use XAPO and INDODAX's vaults as purported "safe havens" to hide the assets stolen from Plaintiff and others.

67.    Instead, XAPO and INDODAX cooperated with Defendants JOHN DOE NOS. 1-10 and provided them substantial assistance by accepting the cryptocurrency stolen by Defendants JOHN DOE NOS. 1-10.

68.    XAPO and INDODAX's blatant disregard of applicable security procedures as well as their willing cooperation with the hackers/thieves constitutes knowing cooperation with an unauthorized individual accessing Plaintiff's computers, computer systems, and computer networks.

69.    Because of the conduct of XAPO and INDODAX as alleged herein, Plaintiff is entitled to compensatory damages and injunctive relief under Penal Code § 502(e)(1).   Plaintiff is also entitled to reasonable attorneys' fees pursuant to Penal Code § 502(e)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for relief and judgment against Defendants, as follows:

     A. An award of any and all damages recoverable under law -- jointly and severally entered against Defendants -- including but not limited to compensatory damages, punitive damages, incidental damages, and consequential damages;

     B. Return of Plaintiff's stolen personal property;

     C. An award of pre-judgment and post-judgment interest;

     D. An award of Plaintiff's reasonable attorney's fees, expenses and the costs of this action; and

COMPLAINT

E. An award granting other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all claims so triable.

**REIF LAW GROUP, P.C.**

Dated: June 1, 2020                    By: *Brandon S. Reif*
                                       Brandon S. Reif

David C. Silver (to be admitted *pro hac vice*)
Jason S. Miller (to be admitted *pro hac vice*)
**SILVER MILLER**

*Attorneys for Plaintiff Dennis Nowak*

14
COMPLAINT