Brandon S. Reif (SBN: 214706)
E-Mail: Docket@ReifLawGroup.com
**REIF LAW GROUP, P.C.**
1925 Century Park East - Suite 1700
Los Angeles, California 90067
Telephone: (310) 494-6500

*Counsel for Plaintiff Dennis Nowak*
[*Additional Counsel listed on signature block*]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>XAPO, INC., a Delaware corporation;<br>XAPO (GIBRALTAR) LIMITED, a<br>foreign corporation;<br>INDODAX, a foreign company; and<br>JOHN DOE NOS. 1-10, individuals,<br><br>Defendants. | Case No. 5:20-cv-03643-BLF<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO: (1) DEFENDANTS XAPO, INC. AND XAPO (GIBRALTAL) LIMITED'S MOTION TO DISMISS AMENDED COMPLAINT; AND (2) DEFENDANT INDODAX'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:    May 27, 2021<br>Time:    9:00 a.m.<br>Dept.:    Courtroom 3<br>Judge:  Hon. Beth Labson Freeman<br><br>Date Filed:   June 1, 2020<br>Trial Date:    None set |

# **TABLE OF CONTENTS**

**Page**

RELEVANT FACTUAL BACKGROUND ................................................................. 1

ARGUMENT ....................................................................................................... 3

I.    STANDARD OF LAW ................................................................................. 3

II.   THE COURT MAY EXERCISE JURISDICTION OVER THIS MATTER ........................ 3

    A.   Subject Matter Jurisdiction ................................................................. 3

    B.   Personal Jurisdiction ......................................................................... 5

         1.   Xapo, Inc. ............................................................................ 5

         2.   Xapo (Gibraltar) ................................................................. 5

         3.   Indodax ............................................................................... 6

III.  PLAINTIFF HAS ADEQUATELY PLEADED EACH OF HIS CLAIMS ......................... 8

    A.   Conversion (Count I) ......................................................................... 9

         1.   Ownership or Right to Possession ......................................... 9

         2.   Wrongful Disposition of Property ......................................... 9

         3.   Damages ............................................................................. 10

    B.   Aiding and Abetting Conversion (Count II) and Aiding and Abetting Fraud (Count III) . 10

    C.   Violations of California Penal Code §496 (Possession and Concealment of Stolen Property) (Count IV) ........................................................... 12

    D.   Violation of California's Unfair Competition Law (Count V) ....................... 12

    E.   Negligence (Counts VI and VIII) ........................................................ 14

    F.   Constructive Trust (Count IX) ........................................................... 16

CONCLUSION ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                      **<u>Page(s)</u>**

*Achal v. Gate Gourmet, Inc.*

    114 F. Supp. 3d 781 (N.D. Cal. 2015) ................................................................. 3

*Aifang v. Velocity VII Ltd. Partnership*

    Case No. 14-cv-07060-SJO (MANx), 2015 WL 12745806 (C.D. Cal. Sept. 30,

    2015) ................................................................................................... *passim*

*Ehret v. Uber Tech., Inc.*

    68 F.Supp.3d 1121 (N.D. Cal. 2014) ................................................................. 12

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*

    328 F.3d 1122 (9th Cir. 2003).............................................................................. 6

*Hullinger v. Anand*

    Case No. 15-cv-07185-SJO (FFMx), 2016 WL 4409196 (C.D. Cal. Aug. 11, 2016)

    .............................................................................................................. 11

*Hudson Martin Ferrante Street Witten & Demaria, P.C. v. Forsythe*

    Case No. 16-cv-06551-BLF, 2017 WL 1315576 (N.D. Cal. Apr. 7, 2017)

    (Freeman, J.) ........................................................................................... 8

*Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*

    631 F.3d 1133, 1137 (9th Cir. 2011).................................................................... 4

*J&J Sports Prods., Inc. v. Lorenzana*

    Case No. 5:13-cv-05554-BLF, 2014 WL 3053483 (N.D. Cal. July 2, 2014)

    (Freeman, J.) ........................................................................................... 8

*Laub v. U.S. Dep't of Interior*

    342 F.3d 1080 (9th Cir. 2003)............................................................................... 6

*MacDermid, Inc. v. Deiter*

    702 F.3d 725 (2d Cir. 2012) ................................................................................ 7

*Micron Tech., Inc. v. United Microelectronics Corp.*

    Case No. 17-cv-06932-MMC, 2019 WL 1959487 (N.D. Cal. May 2, 2019).... 4, 8

*MMCA Group Ltd. v. Hewlett-Packard Co.*

   Case No. C-06-7067-MMC, 2007 WL 2572220 (N.D. Cal. Sept. 5, 2007).......... 6

*N. Star Int'l v. Ariz. Corp. Comm'n*

   720 F.2d 578 (9th Cir. 1983)................................................................... 3

*NetApp, Inc. v. Nimble Storage, Inc.*

   41 F.Supp.3d 816 (N.D. Cal. 2014)............................................... 6, 7, 8

*Opera Gallery Trading, Ltd. v. Golden Trade Fine Art, Inc.*

   Case No. 2:15-cv-00569-SVW-RZ, 2016 WL 7665408 (C.D. Cal. Jan. 6, 2016)

   ………………………………………………………………………………….... 10

*Panavision Int'l, L.P. v. Toeppen*

   141 F.3d 1316 (9th Cir. 1998)............................................................ 7, 8

*Shwarz v. United States*

   234 F.3d 428 (9th Cir. 2000)................................................................. 3

*Sinotrans Container Lines, Co. v. N. China Cargo Serv., Inc.*

   Case No. CV 06-7848-SVW (Ex), 2008 WL 3048855 (C.D. Cal. Jan. 31, 2008),

   as corrected (Mar. 7, 2008)................................................................. 4

*United States v. Ritchie*

   342 F.3d 903 (9th Cir. 2003)................................................................. 3

*Wells Fargo & Co. v. Wells Fargo Express Co.*

   556 F.2d 406 (9th Cir. 1977)................................................................. 6


**State Cases**

*People v. Grant*

   113 Cal.App.4th 579 (2003)................................................................ 12

*Kwikset Corp. v. Superior Court*

   51 Cal.4th 310 (2011)........................................................................ 13

TABLE OF AUTHORITIES

**Federal Statutes**

28 U.S.C. § 1332...................................................................................... 3, 4

**State Statutes**

California Business and Professions Code §§ 17200–17209............................. 12, 13

California Penal Code § 496............................................................... 11, 12

**Rules**

Federal Rule of Civil Procedure 9(b)............................................................ 10

Federal Rule of Civil Procedure 12(b)(6)....................................................... 3

TABLE OF AUTHORITIES

Plaintiff DENNIS NOWAK, an individual ("Plaintiff"); respectfully submits this memorandum of points and authorities in opposition to the motion jointly filed by Defendants XAPO, INC., a Delaware corporation, and XAPO (GIBRALTAR) LIMITED, a foreign corporation (collectively, the "XAPO DEFENDANTS") (ECF No. 57) and the motion filed by Defendant PT INDODAX NASIONAL INDONEISA, a foreign corporation ("INDODAX") (ECF No. 54), in which the defendants each request that the Court dismiss Plaintiff's Amended Complaint (ECF No. 51 ["Amended Compl."]).  For the reasons more fully set forth below, the Motions to Dismiss lack merit.  When accepting as true all of the well-pleaded facts set forth in Plaintiff's Amended Complaint -- as the Court is required to do at this preliminary stage of the litigation -- it is clear that Plaintiff has asserted viable bases for jurisdiction over the defendants as well as each of Plaintiff's claims against all defendants.  As such, the Motions to Dismiss should be denied.

## **RELEVANT FACTUAL BACKGROUND**

This action arises out of the November 2018 theft from Plaintiff of 500 bitcoin (BTC) -- valued at the time at approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00)[1] -- which were held in an account Plaintiff maintained at Northern California-based cryptocurrency exchange Payward, Inc. d/b/a Kraken ("Kraken").  Amended Compl. at ¶¶ 42-44. To be clear, the initial act of theft occurred in this jurisdiction; and the cryptocurrency stolen from Plaintiff was transferred to INDODAX and XAPO from this jurisdiction.  Id. at ¶ 46.  Specifically, over the ensuing few months, 479.69 of the stolen BTC were electronically transferred from this jurisdiction and deposited into two deposit addresses (and subsequently one hot wallet[2]) controlled by INDODAX.  Id. at ¶¶ 47, 50.  Similarly, 19.99 BTC of Plaintiff's original 499.69 BTC are held

---

[1] As of the date of this filing, those 500 BTC are valued at approximately Twenty-Five Million Dollars ($25,000,000.00).

[2] A "hot wallet" refers to a cryptocurrency wallet that is online and connected in some way to the Internet.  A "hot wallet" stands in contrast to "cold storage," which refers to a method for electronically storing cryptocurrency in a location that is not connected to the Internet.

in two hot wallet addresses controlled by XAPO.[3]  Id. at ¶¶ 49, 50.  As concluded by international investigative firm Kroll, the stolen BTC appear to still be housed at INDODAX and XAPO.  Id. at ¶¶ 48, 49.  Neither Plaintiff nor any person or entity under Plaintiff's control owns or controls any of the destination addresses at INDODAX or XAPO into which the stolen assets were placed.  Id. at ¶ 52.

The methodology of the specific theft identified by Kroll -- with funds electronically leaving Kraken and a small split going to two XAPO wallets and the rest going to two INDODAX wallets -- appears to have been followed on more occasions than just the theft from Plaintiff.  *Id*. at ¶ 58.  Moreover, it appears that notwithstanding their obligations to employ rigorous "Know Your Customer" (KYC) and "Anti-Money-Laundering" (AML) policies and procedures, XAPO and INDODAX have permitted criminal activity by allowing their custodial vaults and exchanges to serve as shelters for thieves like Defendants JOHN DOE NOS. 1-10 to store purloined assets -- including those assets stolen from Plaintiff.  *Id*. at ¶¶ 30-37, 59.  XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings.  *Id*. at ¶¶ 62-63.  For example, Kraken knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.  *Id*.  Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.  *Id*. at ¶ 37.

---

[3]  Defendants XAPO, INC. and XAPO (GIBRALTAR) LIMITED commonly operate with their sibling entities around the world under the shared tradename "XAPO"; and they are collectively referred to in the Amended Complaint simply as "XAPO," as their own website does not differentiate between the separate corporate entities.  Upon information and belief, the entities are all dominated by the same individuals, use the same corporate decision-makers, the same resources, and the same business connections.  Thus, they are essentially one-and-the-same business, regardless of the particular name under which each company's operations are conducted.  *See*, Amended Compl. at ¶ 4.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

XAPO and INDODAX each know that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff. *Id*. at ¶ 63.  On June 1, 2020, Plaintiff brought this action to hold XAPO and INDODAX liable for aiding and abetting Defendants JOHN DOE NOS. 1-10's misappropriation of Plaintiff's assets and for creating and maintaining systems that unjustly allow thieves to hide stolen property in XAPO's and INDODAX's custodial vaults.

## ARGUMENT

### I.  STANDARD OF LAW

In evaluating a motion to dismiss, a court must accept the plaintiff's factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  A court may only consider the Complaint, documents incorporated by reference in the Complaint, and matters of judicial notice in deciding a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The purpose of a Rule 12(b)(6) motion is not to prematurely weigh evidence or competing factual claims, but rather to evaluate the sufficiency of the facts alleged in a pleading, all of which must be accepted as true.  *Achal v. Gate Gourmet, Inc*., 114 F. Supp. 3d 781, 793 (N.D. Cal. 2015), citing *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

Here, it is clear that Plaintiff has adequately alleged in his Amended Complaint a sufficient factual basis -- which must be accepted as true -- to sustain his claims against Defendants.

### II.  THE COURT MAY EXERCISE JURISDICTION OVER THIS MATTER

#### A.  Subject Matter Jurisdiction

The XAPO DEFENDANTS and INDODAX each argue in their Motions to Dismiss that the Court must decline to hear this matter because the Court purportedly lacks subject matter jurisdiction over the case.  According to Defendants, the presence of a foreign plaintiff and foreign defendants prohibits the Court from exercising its jurisdiction and hearing Plaintiff's claims.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Notwithstanding Defendants' protests to the contrary, there are instances in which a court may extend its jurisdiction over a matter such as the instant dispute. Section 1332(a)(2) of Chapter 28 of the U.S. Code confers diversity jurisdiction over actions where there are foreign plaintiffs and domestic defendants. *See* 28 U.S.C. § 1332(a)(2) ("The district courts shall have original jurisdiction of all civil actions . . . between . . . citizens of a State and citizens or subjects of a foreign state"); *Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011) (finding diversity jurisdiction under Section 1332(a)(2) where plaintiff was a citizen of the British Virgin Islands and defendant a citizen of California); *Sinotrans Container Lines, Co. v. N. China Cargo Serv., Inc.*, Case No. CV 06-7848-SVW (Ex), 2008 WL 3048855, at *4 (C.D. Cal. Jan. 31, 2008), as corrected (Mar. 7, 2008) ("[T]his Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff is a foreign citizen, both original Defendant[s] were U.S. citizens").

The fact that XAPO (GIBRALTAR) is a foreign party is immaterial in this matter, as Plaintiff has alleged that the XAPO DEFENDANTS are alter egos of one another with their true corporate operations domiciled in the United States. Amended Compl. at ¶¶ 2-10. As stated in the Amended Compl.: "It is impossible to distinguish one XAPO entity from another because, as stated above, they share the same people, same resources, and same physical presence." *Id*. at ¶ 10. Thus, for all intents and purposes, the XAPO DEFENDANTS are both U.S. parties with whom Plaintiff is fully diverse.

As for INDODAX, Plaintiff concedes that it is a foreign entity. However, the harmful conduct from which Plaintiff's harm emanated occurred within this jurisdiction. *See*, Amended Compl. at ¶ 46 ("To be clear, the initial act of theft occurred in this jurisdiction; and the cryptocurrencies described above were transferred to INDODAX and XAPO from this jurisdiction."). Because that harm occurred here, the Court maintains an interest in the subject matter of Plaintiff's claim and in seeing that the harm is remedied within this jurisdiction. The same would be true even if, as INDODAX alleges, the harm occurred overseas. *See, e.g.*, *Micron Tech., Inc. v. United Microelectronics Corp.*, Case No. 17-cv-06932-MMC, 2019 WL 1959487, at *7-8 (N.D. Cal. May 2, 2019) (court found subject matter jurisdiction proper over foreign defendant

1  and concluded that plaintiff has substantial interest in trying the case in the United States, as federal
2  law provides for jurisdiction over misappropriation occurring outside the United States).

3  **B. <u>Personal Jurisdiction</u>**

4  **1. <u>Xapo, Inc.</u>**

5  XAPO, INC. is a Delaware corporation with its principal place of business in Palo Alto,
6  California.  Amended Compl. at ¶ 2.  There is no question that the Court may exercise personal
7  jurisdiction over XAPO, INC.

8  **2. <u>Xapo (Gibraltar)</u>**

9  XAPO (GIBRALTAR) is a corporation registered and incorporated in Gibraltar.  Amended
10 Compl. at ¶ 3.  However, as alleged in the Amended Complaint, XAPO (Gibraltar) maintains only
11 a virtual office in Gibraltar, with no staff or presence of its own; because in reality, XAPO, INC.
12 and XAPO (GIBRALTAR) are one-and-the-same.  *Id*. at ¶ 7.  To further elucidate the point that
13 XAPO (GIBRALTAR) and its Northern California-based corporate sibling XAPO, INC. are one-
14 and-the-same, the Amended Complaint alleges that the two entities:

15
16   • are managed and controlled by the same team of advisors, who are located in
        the United States (*Id*. at ¶ 3);
17
18   • do not differentiate between themselves on their own website -- referring to
        themselves under the common tradename "XAPO" (*Id*. at ¶ 4);
19
20   • are dominated by the same individuals, use the same corporate decision-
        makers, the same resources, and the same business connections (*Id*.);
21
22   • fail to maintain arm's length relationships between them (*Id*. at ¶ 5);

23   • share office or business locations (as needed and when needed); and
        interchangeably use the corporate entities to procure labor, services, or
        merchandise for common corporate purposes (*Id*.); and

24   • act as one entity and share staff, resources, and physical presence (*Id*. at ¶ 7).

25
26 Thus, contrary to XAPO (GIBRALTAR)'s assertions to the contrary, Plaintiff has alleged that
27 XAPO (GIBRALTAR)'s *de facto* principal place of business is in this district; and Plaintiff has
28

established the "exceptional" and "constant and pervasive" contacts that create general jurisdiction over XAPO (GIBRALTAR) in this district.

To the extent the Court considers in its evaluation of XAPO (GIBRALTAR)'s personal jurisdiction in this forum the documentation the XAPO DEFENDANTS filed in support of their Motion to Dismiss, Plaintiff requests a limited opportunity to engage in a focused round of jurisdictional discovery to respond to, and disprove, the allegations proffered in support of the Motion. *See*, *e.g.*, *MMCA Group Ltd. v. Hewlett-Packard Co.*, Case No. C-06-7067-MMC, 2007 WL 2572220 (N.D. Cal. Sept. 5, 2007) (denying without prejudice Motion to Dismiss and allowing the plaintiff to take jurisdictional discovery on the issue of whether one corporate defendant is the alter ego and agent of a fellow corporate defendant); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977) (holding discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary"). Indeed, it is an abuse of discretion for a court to deny jurisdictional discovery where such discovery "might well demonstrate" jurisdictionally relevant facts and the plaintiff is denied the opportunity to develop the jurisdictional record. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added); *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (reversing district court's denial of jurisdictional discovery "[b]ecause additional discovery would be useful to establish federal subject matter jurisdiction").

### 3.  **Indodax**

With regard to INDODAX, specific personal jurisdiction exists under which this Court may advance and ultimately adjudicate Plaintiff's claims against INDODAX. In this circuit, specific personal jurisdiction is evaluated under the following standard:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*NetApp, Inc. v. Nimble Storage, Inc.*, 41 F.Supp.3d 816, 824 (N.D. Cal. 2014) ("*NetApp*") (citations omitted). "Plaintiff bears the burden of satisfying the first two prongs. If Plaintiff does so, then the burden shifts to Defendant to 'set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* (internal citations omitted). Here, the Amended Complaint has pleaded an adequate basis upon which the Court may determine that specific personal jurisdiction exists over INDODAX.

Just as in the *NetApp* case decided by this Court, Plaintiff has alleged that non-resident INDODAX consummated a transaction within this forum when "the initial act of theft occurred in this jurisdiction; and the cryptocurrencies described above were transferred to INDODAX . . . from this jurisdiction." Amended Compl. at ¶ 46. While INDODAX argues in its Motion to Dismiss that it "was a passive recipient of Bitcoins alleged to be stolen" and that "[t]he receipt of Bitcoin that may have originated in California by an Indonesian exchange . . . is too attenuated a contact"[4] to support personal jurisdiction, that type of argument was rejected by this Court in *NetApp*, wherein the Court held that such "arguments do not defeat jurisdiction" and that "activities over the Internet can be sufficient to support personal jurisdiction." *NetApp*, *supra* at 826, citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (court rejected defendant's argument that "he had not directed any activity toward Panavision in California" because "the injury occurred in cyberspace," holding that such activities satisfied the "effects test"). INDODAX's professed ignorance of the location in which its receipt of the stolen bitcoin took place -- a factual question inappropriate to determine without discovery at this stage of the litigation -- is of no moment, as INDODAX clearly performed the act from which it now seeks to recede. *See also*, *MacDermid*,

---

[4] INDODAX Motion to Dismiss at 15.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1  *Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) (finding personal jurisdiction existed over foreign
2  defendant who, while domiciled and working in a foreign country, accessed a computer server
3  located in the target forum; "It is not material that [the defendant] was outside of [the jurisdiction]
4  when she accessed the [ ] servers.  The [long-arm] statute requires only that the computer or
5  network, not the user, be located in [the jurisdiction].").

6     Concerning the second prong of the specific personal jurisdiction standard, Plaintiff has
7  likewise satisfied that requirement in his pleading; as the claim against INDODAX arises out of or
8  relates to INDODAX's receipt of the stolen bitcoin, which even INDODAX tacitly concedes took
9  place in this forum.  Because Plaintiff "would not have been injured 'but for'" INDODAX's alleged
10 misconduct, the Amended Complaint is adequately pleaded on this element of the jurisdictional
11 rubric.  *See*, *e.g.*, *Panavision*, *supra* at 1322.

12    Lastly, INDODAX bears the burden of presenting a "compelling case" that jurisdiction here
13 would not comport with "fair play and substantial justice," based on seven established factors.  *See*,
14 *e.g.*, *NetApp*, *supra* at 827-828.  Not only has INDODAX failed to make a "compelling case" in
15 support of its defense, it has made no case whatsoever; as INDODAX has not even addressed any
16 of the factors under which it must convince the Court that "fair play and substantial justice" would
17 be offended by having INDODAX defend itself in this Court against Plaintiff's claims.  "Under
18 such circumstances, the issue is waived."  *Micron Tech.*, *supra* at *5.

19    Having satisfied the pleading requirements to demonstrate personal jurisdiction over the
20 defendants, Plaintiff submits that it would be improper for the Court to grant the Motions to Dismiss
21 on that ground.

22 **III.   PLAINTIFF HAS ADEQUATELY PLEADED EACH OF HIS CLAIMS**

23    The XAPO DEFENDANTS and INDODAX each assail in their Motions to Dismiss, with
24 varying degrees of seriousness, the claims set forth against them in the Amended Complaint.
25 Plaintiff respectfully responds to those arguments below and submits that each of his causes of
26 action are adequately set forth.

27
28

### A.  Conversion (Count I)

"The Ninth Circuit has held that a claim for conversion has three elements: [1] 'ownership or right to possession of property, [2] wrongful disposition of the property right[,] and [3] damages.'"  *J&J Sports Prods., Inc. v. Lorenzana*, Case No. 5:13-cv-05554-BLF, 2014 WL 3053483, at *4 (N.D. Cal. July 2, 2014) (Freeman, J.).  "It is necessary to show that the alleged converter has assumed control over the property *or* that the alleged converter has applied the property to his own use."  *Hudson Martin Ferrante Street Witten & Demaria, P.C. v. Forsythe*, Case No. 16-cv-06551-BLF, 2017 WL 1315576, at *3 (N.D. Cal. Apr. 7, 2017) (Freeman, J.) (emphasis in original).  "Conversion is a strict liability tort.  The foundation of the action rests neither in the knowledge nor the intent of the defendant.  Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial."  *Aifang v. Velocity VII Ltd. Partnership*, Case No. 14-cv-07060-SJO (MANx), 2015 WL 12745806, at *3 (C.D. Cal. Sept. 30, 2015) (internal citations omitted).

Plaintiff has pleaded each of those elements against INDODAX, *to wit*:

#### 1.  Ownership or Right to Possession

Paragraph 67: In November 2018, at the time of the hack, Plaintiff owned and had the right to immediately possess the 479.69 BTC that would be laundered through INDODAX.

Paragraph 68: Plaintiff owned and had the right to immediately possess his 479.69 BTC, not just a mere right to payment for the value of these bitcoin.

Paragraph 72: Each time INDODAX intentionally took possession of and assumed control over each fraction of the 479.69 BTC, Plaintiff still owned and had the right to immediately possess that bitcoin

#### 2.  Wrongful Disposition of Property

Paragraph 47: As concluded by Kroll, 479.69 BTC of the 499.69845 BTC transferred from Plaintiff's Kraken account were transferred to two deposit addresses controlled by INDODAX.

1

2

Paragraph 48: From those two deposit addresses, the funds were then moved to a hot wallet at INDODAX where, upon information and belief, the assets are still located.

3

4

Paragraph 69: When the stolen bitcoin was deposited by the thieves into accounts at INDODAX, INDODAX intentionally took possession of and assumed control over the 479.69 BTC.

5

6

Paragraph 70: INDODAX intentionally exercised control over the bitcoin in such a way as to exclude all but the thieves from using or possessing the 479.69 BTC.

7

8

Paragraph 73: INDODAX knew the property it received was stolen or obtained in a manner constituting theft . . . .

9

### 3. **Damages**

10

11

12

Paragraph 77: When the stolen bitcoin was deposited by the thieves into accounts at INDODAX As a direct and proximate result of the foregoing, Plaintiff suffered the wrongful conversion of personal property whose value exceeds $75,000.00.

13

14

Because Plaintiff has adequately pleaded facts in support of Count I, INDODAX's Motion to Dismiss must be denied on that count.

15

16

### B. **Aiding and Abetting Conversion (Count II) and Aiding and Abetting Fraud (Count III)**

17

"In California, the state courts have held that liability for aiding and abetting depends on

18

proof of two elements: (1) that the defendant had actual knowledge of the specific primary wrong

19

and that (2) the defendant substantially assisted it." *Aifang*, *supra* at *4. "Federal Rule of Civil

20

Procedure 9(b) obviates the necessity of pleading detailed facts supporting allegations of

21

knowledge[;] however, it does not relieve a pleader of the burden of alleging the nature of the

22

knowledge a defendant purportedly possessed." *Id*. at *5. As the Court in *Aifang* explained, for a

23

plaintiff to survive a Motion to Dismiss, he must specifically allege, or the Court must be able to

24

draw a reasonable inference from the "net effect" of the allegations, that the defendant had

25

knowledge that an underlying tort was being furthered by his own actions or inactions. *Id*. at *5.

26

Moreover, a pleading alleging aiding and abetting liability should survive a Motion to Dismiss even

27

if not "artfully pled" if it alleges the essential factual elements of the claim. *Opera Gallery Trading,*

28

-10-

1   *Ltd. v. Golden Trade Fine Art, Inc.*, Case No. 2:15-cv-00569-SVW-RZ, 2016 WL 7665408, at *4

2   (C.D. Cal. Jan. 6, 2016).

3          Here, the "net effect" of the allegations in the Amended Complaint -- even if not "artfully

4   pled" -- clearly provide a basis from which the Court can draw a reasonable inference that the

5   XAPO DEFENDANTS and INDODAX knew of the underlying wrong that they aided and abetted.

6   *See*, Amended Compl. at ¶¶ 83-86, 88-99.   In fact, Plaintiff explicitly alleges that the XAPO

7   DEFENDANTS and INDODAX had actual knowledge of the conversion and fraud they materially

8   assisted (Amended Compl. at ¶ 95), though each defendant argues in its Motion to Dismiss that

9   Plaintiff alleges nothing of the sort.   XAPO DEFENDANTS Motion to Dismiss at 18 ("*Plaintiff*

10  *fails to allege that either Xapo, Inc. or Xapo Gibraltar had actual knowledge of fraud or conversion*

11  *at any relevant point in time.*"); INDODAX Motion to Dismiss at 20 ("*Under California law,*

12  *Nowak must allege facts showing that Indodax knew of the theft and assisted or participated in the*

13  *theft. He alleges nothing of the sort.*").   As much as the defendants wish to deny the truthfulness of

14  Plaintiff's allegations, they are not permitted to do so through their Motions to Dismiss.   The

15  truthfulness of the XAPO DEFENDANTS' and INDODAX's knowledge can be assessed at a later

16  date; but the Court must first deny the Motions and allow the parties to reach that later date.

17         In addition, California treats conversion and fraud under a theory of ongoing liability.   As

18  long as Plaintiff is deprived of the use and possession of his property, liability will continue to

19  extend -- even to those whose actual knowledge as aiders and abetters arose after the initial transfer

20  of Plaintiff's stolen assets.   *See*, *e.g.*, *Hullinger v. Anand*, Case No. 15-cv-07185-SJO (FFMx), 2016

21  WL 4409196, at *4 (C.D. Cal. Aug. 11, 2016) (holding that claims of aiding and abetting fraud and

22  conversion should survive Motion to Dismiss, even when the defendants had no knowledge of the

23  underlying torts when they "already occurred" as singular events yet later came to possess that

24  knowledge).   Though Plaintiff has alleged that the XAPO DEFENDANTS and INDODAX each

25  had actual knowledge on some indeterminate date "no later than June 2020," such knowledge has

26  been alleged.   Without discovery, Plaintiff can do little more than that at this stage; and his

27  allegations at this point are sufficient.

28

1    Because Plaintiff has adequately pleaded facts in support of Counts II and III, the Motions
2    to Dismiss must be denied on those counts.

3    **C.   Violations of California Penal Code § 496 (Possession and Concealment of Stolen**
4         **Property) (Count IV)**

5        In response to Count IV -- which is asserted solely against INDODAX -- INDODAX cites
6    no legal standards or relevant caselaw.  Rather, INDODAX proffers rhetorical questions suggesting
7    that INDODAX believes Plaintiff's Count IV is legally infirm.  Plaintiff respectfully disagrees.

        California Penal Code § 496 provides the following in pertinent part:

8        (a) **Every person who** buys or **receives any property that has been stolen**
9            **or that has been obtained in any manner constituting theft** or extortion,
            knowing the property to be so stolen or obtained, **or who conceals**, sells,
10           **withholds, or aids in concealing**, selling, **or withholding any property**
11           **from the owner**, knowing the property to be so stolen or obtained, shall be
            punished . . . .

12

13   (emphasis added).  In his Amended Complaint, Plaintiff clearly alleges that INDODAX received
14   property that was stolen from Plaintiff and that INDODAX continues to withhold that property
15   from Plaintiff.  Amended Compl. at ¶¶ 104, 110.  The allegations are patently stated in the pleading,
16   notwithstanding INDODAX's claim to the contrary in its Motion to Dismiss.

17       At the crux of its argument, INDODAX generally asserts that Plaintiff's claim that
18   INDODAX has possessed, aided in concealing, and withheld Plaintiff's stolen property must be
19   dismissed because INDODAX did not act with knowledge of the theft.  Not only has Plaintiff
20   alleged that INDODAX has such knowledge, INDODAX ignores the ongoing nature of its wrongful
21   acts and the law in California that imposes liability upon actors engaged in ongoing wrongful
22   conduct.  *See*, Section III(B) above.  Because the underlying theft and INDODAX's possession of
23   Plaintiff's property are continuing wrongs, liability should attach to INDODAX for further
24   extending the harm imposed upon Plaintiff -- regardless of whether INDODAX had direct
25   knowledge at the time of the theft (which INDODAX denies yet Plaintiff has generally alleged) or
26   whether INDODAX came to that knowledge at a later date (which INDODAX does not deny and
27   which Plaintiff has specifically alleged).  INDODAX continues to possess Plaintiff's stolen
28   property yet refuses to justify that continued possession.  INDODAX is far from the innocent third-

-12-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

party it wishes to portray itself to be.  *See*, *e.g.*, *People v. Grant*, 113 Cal.App.4th 579, 595 (2003) (noting that California courts have held that "[u]nlike the crime of receiving stolen property, however, the crime of concealing stolen property is a continuing offense.  * * *  Both offenses are proscribed by section 496, subdivision (a).").

Because Plaintiff has adequately pleaded facts in support of Count IV, INDODAX's Motion to Dismiss must be denied on that count.

### D.  <u>Violation of California's Unfair Competition Law (Count V)</u>

To oppose Plaintiff's claim that INDODAX has violated California's Unfair Competition Law [California Business and Professions Code §§ 17200–17209 ("UCL")], INDODAX focuses its attack on whether the harm of which Plaintiff complains occurred in California and whether the remedies provided by the UCL are reasonably tailored to address Plaintiff's needs.  As to the former, the Amended Complaint alleges that Plaintiff's injuries occurred in California.  Amended Compl. at ¶¶ 38, 40, 46 ("*To be clear, the initial act of theft occurred in this jurisdiction; and the cryptocurrencies described above were transferred to INDODAX and XAPO from this jurisdiction*.").  Plaintiff has thus satisfied his pleading requirement that his harm occur in, or emanate from, California.  *Ehret v. Uber Tech., Inc.*, 68 F.Supp.3d 1121, 1129-1133 (N.D. Cal. 2014) (finding no improper extra-territorial application of the UCL where the plaintiff alleged that his harm flowed from actions that disseminated from California).

With regard to the remedies that the UCL provides (restitution and injunctive relief), INDODAX's argument is misplaced.  "Restitution under Business and Professions Code section 17203 is confined to restoration of any interest in 'money or property, real or personal, which may have been acquired by means of such unfair competition.'  A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other."  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 336 (2011).  Ordering INDODAX to transfer back to Plaintiff the bitcoin that was stolen from him -- thus restoring his interest in that personal property -- is both available and appropriate under the UCL.  Likewise, injunctive relief instructing INDODAX how to act or refrain

- 13 –

1  from acting is likewise available and appropriate, to the extent the Court finds that it has jurisdiction
2  over INDODAX.

3        Because Plaintiff has adequately pleaded facts in support of Count V, INDODAX's Motion
4  to Dismiss must be denied on that count.

5        **E.  <u>Negligence (Counts VI and VIII)</u>**

6        To evade liability under Plaintiff's theory of negligence (Counts VI and VIII), the XAPO
7  DEFENDANTS and INDODAX each generally allege a lack of any duty owed by them to Plaintiff,
8  with the XAPO DEFENDANTS relying heavily on caselaw pertinent to banks.    XAPO
9  DEFENDANTS Motion to Dismiss at 20-23; INDODAX Motion to Dismiss at 21-22.[5]  While none
10 of the defendants in this action are banks -- and it is thus primarily inapposite to rely on such caselaw
11 -- even such a self-serving standard will not justify the defendants' approach.  Although banks
12 typically do not owe a duty of care to non-customers, "[a] bank will be subject to liability if the
13 facts are 'sufficiently suspicious' that the bank should be alerted to the risk that a wrong is being
14 done."  *Aifang*, *supra* at \*6.  In *Aifang*, the court concluded that the Complaint included factual
15 allegations that should have alerted the defendant that a wrongful action was being perpetrated; and
16 the Court denied the Motion to Dismiss.  *Id*.  Here, the same conclusion should be drawn --
17 especially since the non-bank defendants are held to a less stringent standard than the bank-
18 defendant in *Aifang* was.

19       In his Amended Complaint, Plaintiff proffers allegations of "sufficiently suspicious"
20 activity of which the XAPO DEFENDANTS and INDODAX were aware yet about which they did
21 not take adequate measures to prevent the foreseeable harm that befell Plaintiff, *to wit*:

> <u>Paragraph 35</u>: Cryptocurrency exchanges, including the defendants in the instant matter, have long been on notice that the failure to implement proper KYC and AML procedures facilitates violations of anti-money laundering laws. \*\*\*

---

[5] Again, INDODAX cites no caselaw whatsoever on this point and merely relies on an approach replete with talking points and rhetorical questions.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Paragraph 37: Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, fraudulent and criminal activity.

Paragraph 44: Just a few days after he had deposited the 500 BTC into his account, Plaintiff's account at Kraken was infiltrated by JOHN DOE NOS. 1-10, who withdrew all 500 BTC over the course of slightly more than two days in November 2018 ***.

Paragraph 50: 499.68 of the 499.69845 BTC pilfered from Plaintiff's Kraken account have been located [in accounts/wallets at XAPO and INDODAX].

Paragraph 51: **[T]here has been no obvious attempt to layer the transaction in such a way as to obfuscate the destination of the funds.** Plaintiff's BTC was transferred from his Kraken account to addresses at INDODAX and XAPO in less than half-a-dozen steps ***.

Paragraph 60: **There is a simple reason why JOHN DOE NOS. 1-10 laundered the digital loot they stole through XAPO and INDODAX: despite being large cryptocurrency exchanges, XAPO and INDODAX's KYC and AML protocols are lax and do not measure up to industry standards.** JOHN DOE NOS. 1-10 were able to launder the bitcoin stolen from Plaintiff through XAPO and INDODAX because XAPO and INDODAX failed to implement security measures that were standard throughout the industry.

Paragraph 62: XAPO and INDODAX each knew that their KYC and AML policies and procedures -- including any tracing analysis of where funds originated -- were inadequate, yet the firms ignored those inadequacies and failed to adopt appropriate measures to remedy those dangerous shortcomings.    For example, Kraken knew the funds were stolen while the funds remained at XAPO and INDODAX; and any reasonable compliance standards would have revealed that.

Paragraph 63: Moreover, XAPO and INDODAX each know or should have known that the assets stolen from Plaintiff and stored within their custody were indeed stolen; however, XAPO and INDODAX have undertaken no efforts to return those stolen assets to Plaintiff.

Paragraph 139 and 151: **It was foreseeable that harm to the victim of a hack -- in this instance, Plaintiff -- would occur if the hackers were provided an avenue to launder the stolen funds without having to reveal their identities.**

Paragraph 141 and 153: There is a close connection between [XAPO's/ INDODAX's] failure to implement proper KYC and AML policies and protocols and failure to freeze the **suspicious transactions** and the injury suffered.

> <u>Paragraph 142 and 154</u>: Moral blame is attached to [XAPO's/INDODAX's] conduct in that **before the November 2018 hack, [XAPO/INDODAX] was aware** that its lax procedures facilitated money laundering through the [XAPO/INDODAX] exchange and that a failure to freeze **suspicious transactions** enabled money launderers to complete the laundering process while hiding their identities. \*\*\*

(emphasis added).  Despite the foreseeable harm that would -- and did -- result from the XAPO DEFENDANTS and INDODAX ignoring the risk and suspicious activity to which they were each alerted well before November 2018, the XAPO DEFENDANTS and INDODAX did not take adequate measures to forestall that harm; and they consequently are negligent for failing to act accordingly.

Because Plaintiff has adequately pleaded facts in support of Counts VI and VIII, the Motions to Dismiss must be denied on those counts.

### F.  <u>Constructive Trust (Count IX)</u>

Although a constructive trust is technically a remedy, not a freestanding claim, "a constructive trust commonly is pleaded as a separate claim." *Aifang*, *supra* at \*7.  "[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." *Id*.

In his Amended Complaint, Plaintiff has pleaded that the XAPO DEFENDANTS (19.99 BTC) and INDODAX (479.69 BTC) have each wrongfully acquired or detained property to which Plaintiff is entitled and that "XAPO and INDODAX are involuntary trustees holding said bitcoins, property, or value -- and profits therefrom -- in constructive trust for Plaintiff with a duty to convey the same to Plaintiff."  Amended Compl. at ¶ 160.  In their Motions to Dismiss, the XAPO DEFENDANTS and INDODAX have each denied the veracity of that allegation.  XAPO DEFENDANTS Motion to Dismiss at 23; INDODAX Motion to Dismiss at 22.  Factual denials are not appropriate in the context of a Motion to Dismiss, however.  If the Court determines that Plaintiff has sufficiently proffered facts supporting a reasonable inference that the XAPO DEFENDANTS and INDODAX came to possess Plaintiff's cryptocurrency through wrongful

1   means, then Count IX of the Amended Complaint must survive.  Plaintiff respectfully submits that

2   he has met that burden.

3          Because Plaintiff has adequately pleaded facts in support of Count IX, the Motions to

4   Dismiss must be denied on that count.

5                          **<u>CONCLUSION</u>**

6          For the reasons set forth above, Plaintiff DENNIS NOWAK respectfully requests that the

7   Court enter an Order denying Defendants XAPO, INC. and XAPO (GIBRALTAR) LIMITED's

8   Motion to Dismiss as well as Defendant PT INDODAX NASIONAL INDONEISA's Motion to

9   Dismiss the Amended Complaint, require the defendants to each file an Answer to the Amended

10  Complaint within ten (10) days of the date of the Court's Order, and allow this matter to proceed

11  forward without undue delay.

12

13                              **REIF LAW GROUP, P.C.**

14  Dated: February 17, 2021         By:  */s/ Brandon S. Reif*

                                     Brandon S. Reif (State Bar No. 214706)

15                               1925 Century Park East - Suite 1700

16                               Los Angeles, California 90067
                              Telephone:   (310) 494-6500

17                               E-Mail:      Docket@ReifLawGroup.com

18                               David C. Silver (Admitted *Pro Hac Vice* - DE 21)

19                             Jason S. Miller (to be admitted *pro hac vice*)

20                             **SILVER MILLER**
                              11780 W. Sample Road

21                             Coral Springs, Florida 33065
                            Telephone:  (954) 516-6000

22                             E-mail:      DSilver@SilverMillerLaw.com
                            E-mail:      JMiller@SilverMillerLaw.com

23

24                             *Counsel for Plaintiff Dennis Nowak*

25

26

27

28

1
2

**<u>CERTIFICATE OF SERVICE</u>**

3       **I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk
4   of Court on this __17th__ day of February 2021 by using the CM/ECF system and that a true and
    correct copy will be served <u>via</u> <u>electronic</u> <u>mail</u> to: **STEVEN P. RAGLAND, ESQ., ERIN E.**
5   **MEYER, ESQ., VICTOR T. CHIU, ESQ. and JASON S. GEORGE, ESQ.**, KEKER, VAN NEST
6   & PETERS LLP, *Counsel for Defendants Xapo, Inc. and Xapo (Gibraltar) Limited*, 633 Battery
    Street, San Francisco, CA 94111-1809, E-mail: sragland@keker.com; emeyer@keker.com;
7   vchiu@keker.com; and jgeorge@keker.com; and **SPENCER HOSIE, ESQ., DIANE S. RICE,**
    **ESQ., and DARRELL R. ATKINSON, ESQ.**, HOSIE RICE LLP, *Counsel for Defendant PT*
8   *Indodax Nasional Indoneisa*, 600 Montgomery Street - 34th Floor, San Francisco, CA 94111, E-
    mail: SHosie@hosielaw.com, DRice@hosielaw.com, and DAtkinson@hosielaw.com.

9                                                               ___*/s/ Brandon S. Reif*___
10                                                              BRANDON S. REI
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 1 –
CERTIFICATE OF SERVICE
