SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Specially Appearing as Counsel for Defendant*
PT INDODAX NASIONAL INDONESIA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>Plaintiff,<br>v.<br><br>XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOES NOS. 1-10, individuals,<br><br>Defendants. | Case No. 5:20-cv-03643-BLF-SVK<br><br>**DEFENDANT PT INDODAX NASIONAL INDONESIA'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT INDODAX'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date: May 27, 2021<br>Time: 9:00 am<br>Judge: Honorable Beth Labson Freeman<br>Courtroom: 3 – 5th Floor<br><br>Complaint Filed: June 1, 2020<br>Trial Date: None set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY ................................................................................1

II. THIS COURT LACKS SUBJECT MATTER JURISDICTION ...........................................1

III. THIS COURT LACKS PERSONAL JURISDICTION.........................................................4

IV. THE MERITS: NOWAK HAS NOT PLED HIS STATE CLAIMS PROPERLY................7

    A.    Conversion (Count I)..................................................................................................8

    B.    Aiding and Abetting Conversion (Count II) and Fraud (Count III) ...........................8

    C.    California Penal Code Section 496 (Count IV)........................................................10

    D.    California Unfair Competition Law (Count V).........................................................11

    E.    Negligence (Count VII)............................................................................................12

    F.    Constructive Trust (Count VIII)...............................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                              **Page**

*Aifang v. Velocity VII Ltd. Partnership*,
   No. CV 14-07060 SJO (MANx), 2015 WL 12745806 (C.D. Cal. Sep. 30, 2015)........... 9, 13

*Aquino v. Breede*,
   No. 18-cv-06916-BLF, 2019 WL 4081902 (N.D. Cal. Aug. 29, 2019) ................................ 7

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................................................... 6

*Casey v. U.S. Bank Nat. Assn.*,
   127 Cal. App. 4th 1138 (2005) ...................................................................................... 9, 12

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir.) .................................................................................................... 3

*Ehret v. Uber Tec., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ............................................................................. 12

*Faysound Ltd. v. United Coconut Chem., Inc.*,
   878 F.2d 290 (9th Cir. 1989) ............................................................................................. 3

*Hayes v. Cnty. of San Diego*,
   57 Cal. 4th 622 (2013) ..................................................................................................... 12

*Hullinger v. Anand*,
   No. CV 15-07185 SJO (FFMx), 2016 WL 4409196 (C.D. Cal. Aug. 11, 2016) ................ 9

*Hungerstation LLC v. Fast Choice LLC*,
   No. 19-cv-05861-HSF, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020) .................................. 6

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*,
   270 F. App'x 570 (9th Cir. 2003) .................................................................................... 14

*Infuturia Global Ltd. v. Sequus Pharm., Inc.*,
   631 F.3d 1133 (9th Cir. 2011) ........................................................................................... 3

*MacDermind, Inc. v. Deiter*,
   702 F.3d 725 (2nd Cir. 2012) ............................................................................................ 6

*Micron Tech., Inc. v. United Microelectronics Corp.*,
   No. 17-cv-06932-MMC, 2019 WL 1959487 (N.D. Cal. May 2, 2019) ............................. 3

*NetApp, Inc. v. Nimble Storage Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) .............................................................................. 5-6

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

DEF. INDODAX'S REPLY TO PLAINTIFF'S OPP. TO
INDODAX'S MOT. TO DISMISS AM. COMPLAINT          - ii -          CASE NO. 5:20-CV-03643-BLF-SVK

*Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*,
    20 F.3d 987 (9th Cir. 1994) ................................................................................................. 3

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ............................................................................................. 5

*PMC, Inc. v. Kadisha*,
    78 Cal. App. 4th 1368 (2000) .............................................................................................. 9

**Statutes**

18 U.S.C. Section 1030(a)(4) ........................................................................................................ 7
California Penal Code Section 496 ......................................................................................... 7, 10
California Penal Code Section 502 .............................................................................................. 8

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA  94111

Def. Indodax's Reply to Plaintiff's Opp. to
Indodax's Mot. to Dismiss Am. Complaint          - iii -          Case No. 5:20-cv-03643-BLF-SVK

## I. INTRODUCTION AND SUMMARY.

Plaintiff Dennis Nowak's ("Nowak" or "Plaintiff") Amended Complaint dropped his only federal claim. He now proceeds on a series of state tort claims, *e.g.*, aiding and abetting a fraud. This Amended Complaint (the "FAC") does not plead a federal claim, and does not raise a federal question.

Appreciating this, Nowak's Opposition argues that this Court has subject matter jurisdiction, as it has an "interest" in the outcome of the dispute. But it is now clear that Nowak is not a United States citizen; he resides and has citizenship elsewhere. On this record, this case involves a foreign individual (Nowak) suing a foreign entity (Indodax). The law is long-settled and clear: this Court lacks subject matter jurisdiction in a case involving one alien suing another. *See* § II below. There is no nuance here; no shades of grey to foment argument. This Court lacks subject matter jurisdiction. And that ends it.

To gild the lily, nor does this Court have personal jurisdiction over Indodax. *See* § III below. Indodax is an Indonesian cryptocurrency exchange. It has no office in California. It has no servers in California. And Nowak's own pleading admits that Indodax had nothing to do with the alleged theft, but rather was the passive recipient of Bitcoins in Indonesia. There is no basis for personal jurisdiction here: Indodax had and has nothing to do with California.

Finally, Nowak's substantive state tort claims fail. *See* § IV below. Nowak sued Indodax as an allegedly (and falsely) lax safe harbor for wrongful cryptocurrency transactions. But he pleads specific intent torts, *e.g.*, aiding and abetting fraud and aiding and abetting conversion, with allegations making plain that Indodax had nothing to do with this alleged hack. Nowak also sued Indodax under California law, but fails to plead any nexus with California. Nowak's allegations and his briefing are also contradictory, and his allegations conclusory.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

Although Mr. Nowak has been coy about his citizenship (citing various residences but not citizenship), his Opposition concedes that he is **not** a U.S. citizen. This brief also concedes that Indodax is a foreign entity, as indeed it is. *See* Opp. (ECF 58) at 4. It is accordingly clear that this case involves one foreigner (Nowak) suing a foreign entity (Indodax).

Nowak's Amended Complaint does not plead a single federal claim. After the last 12(b)(6) hearing, Nowak elected to drop his federal claim. *Compare* Original Complaint (ECF 1) *with* FAC (ECF 51). Nowak now proceeds on pedestrian state tort claims, *e.g.*, conversion, violation of the California Penal Code, aiding and abetting a fraud, and the like.

Unsurprisingly, Nowak does not argue federal question jurisdiction, nor does he argue supplemental jurisdiction. Instead, appreciating that federal question jurisdiction does not exist, Nowak argues that this Court has diversity jurisdiction. As to Indodax, his brief has exactly one paragraph on point. It is as follows:

> As for INDODAX, Plaintiff concedes that it is a foreign entity. However, the harmful conduct from which Plaintiff's harm emanated occurred within this jurisdiction. *See*, Amended Compl. at ¶ 46 ("To be clear, the initial act of theft occurred in this jurisdiction; … "). Because that harm occurred here, the Court maintains an interest in the subject matter of Plaintiff's claim and in seeing that the harm is remedied within this jurisdiction. The same would be true even if, as INDODAX alleges, the harm occurred overseas. *See, e.g., Micron Tech, Inc. v. United Microelectronics Corp.*, Case No. 17-cv-06932-MMC, 2019 WL 1959487, at *7-8 (N.D. Cal. May 2, 2019) (**court found subject matter jurisdiction** proper over foreign defendant and concluded that plaintiff has substantial interest in trying the case in the United States, as federal law provides for jurisdiction over misappropriation occurring outside the United States).

Opp. at 4-5 (emphasis added).

The *Micron* case, Nowak's principal subject matter jurisdiction cite, was not a subject matter jurisdiction case at all. The court there had federal question jurisdiction, and diversity jurisdiction was never at issue. Instead, the opinion turned on whether the court had **personal**

jurisdiction—a quite different animal indeed—and whether the court should transfer the case under the *forum non conveniens* doctrine. *See generally Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-cv-06932-MMC, 2019 WL 1959487, at *2-10 (N.D. Cal. May 2, 2019). Nowak cites to a portion of the opinion where the court said an interest in adjudicating the subject matter of the dispute was germane to personal jurisdiction's third factor, reasonableness. *See id*. at *7-8 ("Jinhua … contends the Court's exercise of **personal jurisdiction** would be unreasonable … [¶¶] Micron has a **substantial interest** in trying the case in the United States, as federal law provides for jurisdiction over misappropriation occurring outside the United States, *see* 18 U.S.C. § 1837 …") (emphasis added). Quite so. But this has **nothing** to do with whether this Court has subject matter jurisdiction, a gating issue for Nowak's case.

The parties—or one party here—cannot manufacture diversity jurisdiction: it either exists or it does not. And it does not here. The law in this Circuit is clear and long-settled: a U.S. District Court does not have diversity jurisdiction when one alien sues another. *See Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994), *citing Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.). Nor does the presence of a citizen co-defendant confer jurisdiction as to an action brought by an alien plaintiff against an alien defendant. *See Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294 (9th Cir. 1989); *see also Infuturia Global Ltd. v. Sequus Pharm., Inc*., 631 F.3d 1133, 1137 (9th Cir. 2011) ("Although the court lacked diversity jurisdiction at the time of removal because there were foreign citizens on both sides, *see Nike* [20 F.3d at 990], this jurisdictional defect was cured by Infuturia's dismissal in its Second Amended Complaint of the foreign defendants that originally destroyed diversity") (cited by Nowak, *see* Opp. at 4).

The lack of subject matter jurisdiction is entirely a do-not-pass go issue. This Court lacks subject matter jurisdiction, and that ends the inquiry.

Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

### III. THIS COURT LACKS PERSONAL JURISDICTION.

Nowak does not argue that this Court has general jurisdiction over Indodax. *See* Opp. at 6 (discussing only specific jurisdiction).

Nowak's response on specific personal jurisdiction is peculiar. He argues that Indodax "consummated a transaction within this forum." Opp. at 7. Nowak then cites cases where the **defendants** illegally accessed servers in the relevant forum, as though those cases were germane to Indodax. Finally, Nowak contends that jurisdiction exists given Indodax's "receipt of the stolen bitcoin, **which even Indodax tacitly concedes took place in this forum**." *Id.* at 8 (emphasis added).

None of this is true. But, more importantly, none of this is **alleged**. Nowak's Original Complaint alleged that Nowak's personal computer was compromised offshore, and some unknown persons then fraudulently transferred Nowak's cryptocurrency. *Compare* ECF 1, ¶ 56-57 (personal computer hacked) *with id*, ¶ 1 (resident of Germany). Nowak's Amended Complaint drops this allegation, but nowhere explains **which** computer **where** was used to accomplish the fraud. The FAC does not allege that Nowak was in California, nor does it allege that any server that was hacked was in California, nor does it allege that Indodax hacked anything at all anywhere. Nowak does not even allege that Bitcoins received by Indodax in Indonesia were sent from an account owned by a California citizen or an account maintained in California. *See* FAC, ¶ 51 ("BTC was transferred from his Kraken account to addresses at INDODAX … in less than half-a-dozen steps, as shown [in a diagram identifying unknow suspect addresses of unknown location]").

Second, Indodax did **nothing** in California. It did not hack Nowak's account, Nowak does not allege otherwise, and Nowak does not argue that he can plead otherwise. It did not "receive" the stolen Bitcoin in California, and contrary to Nowak's opposition, in no way did Indodax "tacitly concede" that it did.

The FAC alleges that Indodax is "a cryptocurrency exchange headquartered in Indonesia," FAC, ¶ 11, and that Indodax received the Bitcoin "**at** Indodax," i.e., in Indonesia. *See id*., ¶¶ 51 ("BTC was transferred … to addresses **at** INDODAX"), 62 ("the funds … remained **at** … INDODAX"), 69 ("When the stolen bitcoin was deposited by the thieves into accounts **at** INDODAX"), 83 ("XAPO and INDODAX continued to allow the hackers to deposit the stolen bitcoin into accounts **at their exchanges**") (emphasis added). Since the FAC did not allege that the Bitcoin was received in California, there was nothing for Indodax to counter, and thus Indodax could not "tacitly concede" this point. More, Indodax's Opening Brief argues that Indodax does no business in California and has no presence in California, s*ee* Opening Br. (ECF 54) at 15, arguments that cover no receipt of Bitcoin in California. *See also id*. at 17-18 ("Indodax's receipt in Indonesia proves nothing about Indodax contacts with California"), 20 ("[A]llegedly receiving allegedly stolen Bitcoin someone transferred from somewhere—through multiple internet hops—to Indonesia"). And, importantly, Indodax's **unrebutted evidence** demonstrates that Indodax could not have received and therefore did not receive the Bitcoin in California. *See* Darmawan Dec. (ECF 54-1), ¶ 5 ("Indodax does not have an office in California …. We have no infrastructure in California. **We do not maintain servers or crypto-currency vaults (storage repository) in California** …We have no business partners in California, nor joint-venture partners") (emphasis added). Indodax did not receive this cryptocurrency in California. It ultimately received these Bitcoins in Indonesia, where it runs an exchange. Nowak has not met his burden to show otherwise. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). He does not even bother to proffer an explanation as to how he supposes an admittedly Indonesian exchange received the allegedly stolen Bitcoin in California.

Third, Nowak's cases, including *NetApp, Inc. v. Nimble Storage Inc.*, 41 F. Supp. 3d 816 (N.D. Cal. 2014), on which he heavily relies, *see* Opp. at 7, turn on a defendant knowingly

accessing a server in the forum. *See NetApp*, 41 F. Supp. 3d at 826 ("[Defendant] had, at minimum, reason to know that he was accessing [plaintiff's] computer systems in California"); *MacDermind, Inc. v. Deiter*, 702 F. 3d 725, 730 (2nd Cir. 2012) ("[Defendant] used [with awareness of its location] email system and its Connecticut servers in retrieving and emailing confidential files … [a]nd … directed her allegedly tortious conduct towards [plaintiff], a Connecticut corporation"); *see also Hungerstation LLC v. Fast Choice LLC*, No. 19-cv-05861-HSF, 2020 WL 137160, at *5 n.6 (N.D. Cal. Jan. 13, 2020) ("Plaintiff's other cited case, *NetApp*[ ] is distinguishable for the same reason … In *NetApp*, the plaintiff's own systems were in California, and the defendant received multiple notices that the plaintiff and the computer systems were located in California"). These knowing server access cases have nothing to do with the facts here.

Indodax is not alleged to have hacked into the Kraken California servers (assuming that they are in Northern California), much less to have done so knowingly. Indodax does not even have the ability to access Kraken servers in California. More, to the extent the Does accessed Nowak's Bitcoin through a third-party tech company's server that happened to be in California, such conduct, standing alone, does not even amount to express aiming as to the Does, much less Indodax. *See Hungerstation*, 2020 WL 137160, at *5 ("[D]istrict courts in this circuit have held that the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction;" "That these well-known Silicon Valley technology companies host client data from all over the world on servers located in California … is pure happenstance"). And, even assuming the Doe defendants did expressly take aim at California with their hack, such contacts are not imputable to Indodax, *see Calder v. Jones*, 465 U.S. 783, 789 (1984) ("[e]ach defendant's contacts with the forum State must be assessed individually"), which is not alleged to have actively participated in the hack. *See* FAC, ¶ 60 (alleging not that Indodax participated in the hack, but that its Know Your Customer ("KYC") and Anti-Money Laundering ("AML") protocols were "lax");

*see also* Darmawan Dec. (ECF 54-1), ¶ 6 ("We had no prior knowledge of any theft, nor know anything about it now beyond what is alleged in Mr. Nowak's two complaints. We do not know if there was a theft, nor—if so—who was involved").

Finally, Nowak concedes that he cannot meet the third element of the Ninth Circuit's express aiming test, "causing harm that the defendant **knows** is likely to be suffered in the forum state," as he fails to address Indodax's argument on this point. *See* Opening Br. at 15-16. While Nowak conclusory argues, as to subject matter jurisdiction and extraterritoriality, not personal jurisdiction, that he suffered harm in California, *see* Opp. at 4 & 13, there is no such allegation in the FAC. Further, Nowak offers no explanation as to how he was harmed in California and proffers no evidence that he was, and thus offers no argument that he could amend his complaint to state a California injury. Locus of the harm aside, **Nowak has not argued (and did not plead) that Indodax should have known that he, a German and/or Dutch West Indian resident, would have been harmed in California**. And, as Indodax has explained, any incidental harm to allegedly California based third-party Kraken will not suffice. *See* Opening Br. at 16; *see also Aquino v. Breede*, No. 18-cv-06916-BLF, 2019 WL 4081902, at *11 (N.D. Cal. Aug. 29, 2019) ("[E]ven if Integrated Surgical were subject to a measure of harm in California, any such limited harm to this non-party would not plausibly constitute the 'brunt of the harm' or even 'some significant amount of harm' … relative to the harm Plaintiff claims to have suffered …").

There is no basis to find personal jurisdiction, and Nowak has offered no indication that he can plead more. Indodax literally has nothing to do with California. Not then. And not now.

### IV. THE MERITS: NOWAK HAS NOT PLED HIS STATE CLAIMS PROPERLY.

The Court granted Xapo, Inc.'s motion to dismiss the Original Complaint on November 20, 2020. *See generally* Xapo MTD Order (ECF 49). The Original Complaint alleged three causes of action: (1) California Penal Code Section 496 (Possession of Stolen Property); (2) Aiding and Abetting under 18 U.S.C. Section 1030(a)(4) (the Computer Fraud and Abuse Act); and (3)

Assisting Unlawful Access to a Computer under California Penal Code Section 502 *et seq.*, against all Defendants. After the dismissal, Nowak realized that that the same fate would result for the identical claims brought against Indodax. He then started over by filing the FAC's six new causes of action against Indodax along with re-pleading his deficient California Penal Code Section 496 claim. Each of these claims is inadequately pled, and Nowak offers no proffer that he can do better.

### A.     Conversion (Count I).

The Opposition merely cuts and pastes eight paragraphs of the FAC, cites some general conversion law, and concludes that Nowak adequately pled facts to survive dismissal of this count. No new substantive facts have been offered which establish the requisite knowledge that Indodax came into possession of stolen funds. As Indodax explained in its Opening Brief, where the allegedly converted property changed possession more than once (Nowak to Does to Indodax), conversion requires actual or constructive notice of the prior conversion. *See* Opening Br. at 18. As Nowak fails to allege Indodax's participation in the theft or notice or belief that the property is stolen, there is no alleged conduct or knowledge supporting the conversion claim.

### B.     Aiding and Abetting Conversion (Count II) and Fraud (Count III).

Nowak's aiding and abetting fraud count is subject to Rule 9(b)'s heightened pleading standard. So too is Nowak's aiding and abetting conversion count, as it rests on the same conduct. *Compare* ¶¶ 82-83 (conversion aiding allegations) *with* ¶¶ 95-96 (fraud aiding allegations); *see also* FAC, ¶ 37 ("Failing to implement and utilize adequate KYC and AML policies and procedures is tantamount to inviting, and then turning a blind eye to, **fraudulent** and criminal activity") (emphasis added). Indeed, Nowak implicitly acknowledged that Rule 9(b) applies to the aiding and abetting conversion count when he argued, as to that count, that under Rule 9(b) detailed facts as to knowledge need not be pled. *See* Opp. at 10. Knowledge aside, the aiding and abetting counts do

not satisfy Rule 9(b).  The FAC fails to plead the alleged underlying wrong with the requisite specificity.  For example, the FAC does not identify who did the hack, from where, or how.  The FAC also fails to describe Indodax's alleged substantial assistance with specificity.  For example, the FAC does not explain why or how Indodax's allegedly "atypical" polices were atypical.

As to knowledge, it is not pled under any standard.  Aiding and abetting "depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."  *See Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005).  The FAC does not plead that Indodax had contemporaneous or advanced knowledge of the hack.  The FAC's conclusory suspicious volume allegations and nonspecific atypical policy allegations are no substitute for actual knowledge.  *See id*. at 1151 ("[T]he banks' alleged knowledge of the DFJ Fiduciaries' suspicious account activities—even money laundering—without more, does not give rise to tort liability for the banks").  Nor is Nowak's allegation that Indodax was "informed by law enforcement no later than June 2020."  This allegation merely states that Indodax came to know of Nowak's theft allegation not that Indodax actually came to know that a theft occurred.

Nowak's cases do not assist him.  In *Aifang v. Velocity VII Ltd. Partnership*, the plaintiff alleged that the bank's vice-president found the conduct to actually be "surprising" and to not "seem right to him," and that the bank and the perpetrator "had a robust business relationship" and the perpetrator was one of the bank's "most important" customers.  *See* No. CV 14-07060 SJO (MANx), 2015 WL 12745806, *5-6 (C.D. Cal. Sep. 30, 2015).  No similar facts are alleged here from which the Court could infer actual knowledge.  As for *Hullinger v. Anand*, that case relied on *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1385 (2000).  *See* No. CV 15-07185 SJO (FFMx), 2016 WL 4409196, at * (C.D. Cal. Aug. 11, 2016).  It is clear from the discussion in *PMC* that, as to continuing torts, the *PMC* court rested its decision on knowledge of the wrong, opposed to notice of a plaintiff's allegation: "Defendants argue … liability cannot be premised on the fact they

invested in PWP … and **refused to comply with plaintiffs' cease-and-desist demand**.  However, **plaintiffs' evidence goes beyond those facts** …. [I]t raises a reasonable inference that … defendants … took control of PWP … and continued its operations, with knowledge …. that the codefendants had engaged in the alleged tortious acts …." See 78 Cal. App. 4th at 1385-86.

    C.    <u>California Penal Code Section 496 (Count IV).</u>

Nowak does not address Indodax's argument that a California penal statute cannot be applied exterritorialy.  See Opening Br. at 17.  Nowak does not allege that Indodax hacked anything, nor does he allege Indonesian exchange Indodax received, kept, or keeps any allegedly stolen Bitcoins in California.  There is no nexus between the alleged wrongful conduct and California.

The FAC also fails to plead Indodax's knowledge of the theft.  As this Court explained in its order dismissing the Original Complaint: "actual knowledge of or belief that the property is stolen" is required.  See Xapo MTD Order at 4.  Nowak does not plead that Indodax had actual knowledge that the allegedly stolen Bitcoin was stolen.  He alleges that: (1) "[o]n information and belief, INDODAX was informed that bitcoin was stolen from Plaintiff's Kraken account by law enforcement, but by no later than June 2020" (which is when this action was filed); and (2) "INDODAX knew or should have known the property was so stolen or obtained because, *inter alia*, of the suspicious volume and frequency of transactions on INDODAX as a result of the hack into Plaintiff's Kraken account."  FAC, ¶¶ 107-108.  Nowak's first allegation merely pleads awareness of Nowak's allegations, not awareness of a theft.  See Xapo MTD Order at 4 ("But filing a complaint itself is insufficient to prove actual knowledge under § 496").  As to Nowak's "suspicious volume" allegation, not only is this allegation conclusory, it is flatly contradicted by more specific FAC allegations, which describe the transactions at issue as nothing unusual.  See, e.g., FAC, ¶¶ 61 ("the Kraken-to-INDODAX movement of the BTC stolen from Plaintiff is far from an isolated incident"), 58

("The methodology of the specific theft … appears to have been followed on more occasions than just the theft from Plaintiff …"). (Nowak's "aiding" concealment liability theory is also contradicted by the face of the FAC, which alleges a lack of concealment. *See* FAC, ¶ 51 ("The Kroll analysis further suggests that there has been no obvious attempt to layer the transaction in such a way as to obfuscate the destination of the funds").)

### D.  California Unfair Competition Law (Count V).

Nowak argues that the bar on extraterritorial application of the UCL does not apply, because "the Amended Complaint alleges that Plaintiff's injuries occurred in California." Opp. at 13. In support, Nowak points to Paragraphs 38, 40, and 46 of the FAC, which read in relevant part: "Plaintiff maintained an account at Payward, Inc. d/b/a Kraken, a Northern California-based cryptocurrency exchange;" "[t]he cryptocurrency wallet in which Plaintiff maintained his assets at Kraken **was accessible** through those Northern California-based servers"; and "[t]o be clear, the initial act of theft occurred in this jurisdiction; and the cryptocurrencies described above were transferred to INDODAX and XAPO from this jurisdiction." (Emphasis added.)

First, these allegations say nothing about the locus of injury. At best, they are directed at the locus of alleged misconduct. The FAC does not offer even a conclusory pleading that Nowak was injured here, and the Opposition does not explain how he, a foreign resident, could be.

Second, as to alleged misconduct, the FAC does not in fact allege that any servers in California were hacked. The FAC alleges that the allegedly stolen Bitcoin could have been accessed through California servers, not that they were. Accordingly, these allegations are no different from those in the Original Complaint the Court found deficient in stating a California nexus. *See* Xapo MTD Order at 9 ("[T]he Complaint alleges (1) that Plaintiff, a foreign resident, 'maintained an account [holding his Bitcoins] at a Northern California-based cryptocurrency exchange,' (2) that the account was infiltrated by hackers, and (3) that the stolen funds were traced

to hot wallet addresses controlled by 'Xapo.'… It does not appear that these allegations show a sufficient nexus between California and Defendant's alleged wrongful conduct").

Third, Indodax's alleged liability is predicated on its allegedly deficient KYC and AML procedures, s*ee, e.g.,* FAC, ¶¶ 126-127, procedures Nowak admits are managed from Indonesia not California. *See, id*., ¶ 11 ("INDODAX … is a cryptocurrency exchange headquartered in Indonesia").

Finally, Nowak's reliance on *Ehret v. Uber Tech., Inc.*, 68 F. Supp. 3d 1121 (N.D. Cal. 2014) does not help him.  In *Ehret*, class action plaintiffs claimed that San Francisco based Uber's alleged misrepresentations and omissions were contained on Uber's websites and mobile phone application maintained in California.  There, the alleged harm flowed from a party's actions in California, actions which were the defendant's own acts and not those of an unidentified codefendant.  Unlike Uber, Indodax is headquartered in Indonesia, and unlike Uber, Indodax is not alleged to have engaged in any misconduct that emanated from California.  Nowak does not and cannot provide sufficient allegations from which this Court could plausibly infer that Indodax's alleged misconduct emanated from California.

E. **Negligence (Count VII).**

The elements of negligence are duty, breach, causation, and injury.  *See Hayes v. Cnty. of San Diego,* 57 Cal. 4th 622, 629 (2013).

In defense of this claim, Nowak first argues that it is inappropriate to look to cases dealing with bank duties (or rather the lack thereof) towards noncustomers.  *See* Opp. at 14.  As a California appellate court explained: "a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder."  *See Casey*, 127 Cal. App. 4th at 1149 (Indodax discussed *Casey* at length with respect to aiding and abetting in its Opening Brief; *Casey* makes its observations in the context of an aiding and abetting fiduciary breach claim).  The

*Casey* court went on to comment on the rationale for this rule, explaining that imposing such a duty would infringe on bank customers' privacy expectations and impede efficient banking transactions. *See id*. at 1149-51.  The same concerns apply to a cryptocurrency exchange.  *See, e.g.,* FAC, ¶ 24 ("Cryptocurrency addresses are anonymous, in that the identity of a user behind the address remains unknown, unless it is revealed") & ¶ 28 ("trades on an exchange do not appear on the public blockchain").  Nowak provides no reasoned argument for not looking to these bank cases.

Nowak next argues that banks are subject to liability "if the facts are 'sufficiently suspicious,'" citing *Aifang*, and concluding that the FAC pleads such facts by pointing to the FAC's lax KYC and AML allegations.  *See* Opp. at 14.  However, *Aifang* went on to explain that courts "have held banks to be subject to a duty of care toward nondepositors only in narrow factual circumstances[;] each case involved the bank's liability for allowing a person to deposit a check, payable to someone else, into a personal account, under circumstances that should have alerted the bank to the possibility of fraud."  *See* 2015 WL 12745806, at *6.  Nowak fails to allege any suspicious instrument equivalent to the checks held to give rise to an exception to the rule that "[a]bsent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer."  *See id*.  Instead, he alleges that there was "no obvious attempt … to obfuscate the destination of the funds," *see* FAC, ¶ 51, and that "the Kraken-to-INDODAX movement of the BTC stolen from Plaintiff is far from an isolated incident."  FAC, ¶ 61.  In short, the FAC pleads itself out of any hope of claiming an exception, as its specific allegations show that there was nothing suspicious at all.  (More, the FAC alleges that the KYC/AML polices on which Nowak relies were created for the benefit of Indodax and the financial system, not Nowak.  *See* FAC, ¶ 33 ("The general goal of AML is to ensure that firms are able to detect and prevent money laundering and **to protect themselves** and the financial systems …")).

### F.     Constructive Trust (Count VIII).

Without knowledge (conversion, aiding and abetting claims), a duty (negligence claim) or California statutes (UCL and stolen property), Nowak's constructive trust claim (which he admits is a remedy) fails. *See Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC,* 270 F. App'x 570, 572 (9th Cir. 2003).

Dated: March 10, 2021                              Respectfully submitted,

/s/ *Spencer Hosie*
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Specially Appearing as Counsel for Defendant
PT INDODAX NASIONAL INDONESIA*