KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
VICTOR T. CHIU - # 305404
vchiu@keker.com
JASON S. GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
XAPO, INC.

Specially appearing on behalf of
XAPO (GIBRALTAR) LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DENNIS NOWAK, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>XAPO, INC., a Delaware corporation; XAPO (GIBRALTAR) LIMITED, a foreign corporation; INDODAX, a foreign company; and JOHN DOE NOS. 1-10, individuals,<br><br>                Defendants. | Case No. 5:20-CV-03643-BLF<br><br>**REPLY IN SUPPORT OF MOTION BY DEFENDANTS XAPO, INC. AND XAPO (GIBRALTAR) LIMITED TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:        May 27, 2021<br>Time:        9:00 a.m.<br>Dept.:       Courtroom 3 – 5th Floor<br>Judge:      Hon. Beth Labson Freeman<br><br>Date Filed:  June 1, 2020<br><br>Trial Date:  None set |

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION ....................................................................................................1

3    II.   ARGUMENT ..........................................................................................................2

4          A.    The Court lacks subject matter jurisdiction over this case. ....................................2

5          B.    The Court lacks personal jurisdiction over Xapo Gibraltar. ...................................4

6                1.    Plaintiff's allegations do not satisfy any theory of personal
7                      jurisdiction. ....................................................................................................4

8                2.    Plaintiff's request for jurisdictional discovery should be denied.................7

          C.    Even if Plaintiff could overcome the jurisdictional defects in his Amended
9                Complaint, he fails to state a claim.........................................................................8

10               1.    Plaintiff improperly lumps Xapo, Inc. and Xapo Gibraltar together. ..........8

11               2.    Plaintiff fails to plead a California nexus for his claims.............................8

12               3.    Plaintiff fails to adequately allege claims of aiding and abetting
                       conversion or fraud (Counts II and III).......................................................9

13
14                     a.    Plaintiff has not alleged actual knowledge of the alleged
                             conversion or fraud. ..........................................................................9

15                     b.    Plaintiff does not contest the lack of substantial assistance...........12

16               4.    Plaintiff fails to adequately allege negligence (Count VI)........................12

17                     a.    Xapo, Inc. and Xapo Gibraltar owe no duty to noncustomers
18                           like Plaintiff. ..................................................................................12

19                     b.    Plaintiff has not alleged breach of any duty..................................14

                 5.    No basis exists to impose a constructive trust (Count IX).........................15
20
          D.    The Court should dismiss with prejudice...............................................................15
21
     III.  CONCLUSION......................................................................................................15

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aifang v. Velocity VII Ltd. Partnership*,
   No. 14-CV-07060-SJO, 2015 WL 12745806 (C.D. Cal. Sept. 30, 2015) .........................10, 13

*Allen v. Shutterfly, Inc.*,
   No. 20-CV-02448-BLF, 2020 WL 5517170 (N.D. Cal. Sept. 14, 2020) ................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................9, 10

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ...........................................................................................7

*Chang v. Wells Fargo Bank, N.A.*,
   No. 19-CV-01973-HSG, 2020 WL 1694360 (N.D. Cal. Apr. 7, 2020)..........................10, 13

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ...............................................................................7

*Cotton v. Wells Fargo Bank N.A.*,
   No. 11-CV-1001758-CJC, 2011 WL 13227816 (C.D. Cal. Feb. 22, 2011) ..........................12

*Craig v. Atl. Richfield Co.*,
   19 F.3d 472 (9th Cir. 1994) ...........................................................................................1, 2

*Danjaq, S.A. v. Pathe Commc'ns Corp.*,
   979 F.2d 772 (9th Cir. 1992) .............................................................................................4

*Diaz v. Intuit, Inc.*,
   No. 15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018)..........................12, 13

*Evans v. ZB, N.A.*,
   779 F. App'x 443 (9th Cir. 2019) .................................................................................10, 11

*Falkenstein v. Shipco Transp., Inc.*,
   No. 13-CV-08052-BRO, 2015 WL 11256774 (C.D. Cal. Oct. 15, 2015) ............................15

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ....................................................................................1, 5, 9, 10

*Grayson Serv., Inc. v. Crimson Res. Mgmt. Corp.*,
   No. 14-CV-01125-SAB, 2016 WL 8730734 (E.D. Cal. Feb. 5, 2016)....................................4

*Guan v. Bi*,
   No. 13-CV-05537-WHO, 2014 WL 953757 (N.D. Cal. Mar. 6, 2014)...................................3

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ............................................................................6

*Hill v. US Bank, N.A.*,
    No. 12-CV-6586-GHK, 2012 WL 12888323 (C.D. Cal. Nov. 26, 2012) ..............15

*Hullinger v. Anand*,
    No. 15-CV-07185-SJO, 2016 WL 4409196 (C.D. Cal. Aug. 11, 2016) ................10

*Infuture Glob. Ltd. v. Sequus Pharm., Inc.*,
    631 F.3d 1133 (9th Cir. 2011) .............................................................................3

*Lee v. Am. Nat. Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ...............................................................................3

*Micron Technology, Inc. v. United Microelectronics Corp.*,
    No. 17-CV-06932-MMC, 2019 WL 1959487 (N.D. Cal. May 2, 2019) .................3

*Namer v. Bank of Am., N.A.*,
    No. 16-CV-3024-JM, 2017 WL 4391710 (S.D. Cal. Oct. 2, 2017) ......................11

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
    20 F.3d 987 (9th Cir. 1994) .................................................................................4

*Panalpina Welttransport GmBh v. Geosource, Inc.*,
    764 F.2d 352 (5th Cir. 1985) ...............................................................................4

*Park Miller, LLC v. Durham Grp., Ltd.*,
    No. 19-CV-04185-WHO, 2020 WL 1955652 (N.D. Cal. Apr. 23, 2020) ...........5, 6

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .............................................................................7

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .....................................................................4, 5, 6, 7

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) .................................................................6

*Royal Primo Corp. v. Whitewater W. Indus., Ltd*,
    No. 15-CV-04391-JCS, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016) .................9

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
    No. 20-CV-01926-MMC, 2020 WL 7714534 (N.D. Cal. Dec. 29, 2020) .............10

**State Cases**

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005) .................................................................2, 9, 11, 14

*Chazen v. Centennial Bank*,
   61 Cal. App. 4th 532 (1998) ................................................................................12

*Higgins v. Higgins*,
   11 Cal. App. 5th 648 (2017) ...............................................................................15

*Sand, Inc. v. United Cal. Bank*,
   21 Cal. 3d 671 (1978) .........................................................................................12

*Software Design & Application, Ltd. v. Hoefer & Arnett, LLC*,
   49 Cal. App. 4th 472 (1996) ...............................................................12, 13, 14

**Federal Statutes**

18 U.S.C. § 1030 ...........................................................................................................2

28 U.S.C. § 1331 ...........................................................................................................2

28 U.S.C. § 1332 ...........................................................................................................2

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................9, 11

Fed. R. Civ. P. 9 .......................................................................................................9, 11

1

## I.    INTRODUCTION[1]

As Xapo, Inc. and Xapo (Gibraltar) Limited ("Xapo Gibraltar") detailed in their Motion to Dismiss ("Motion" or "Mot."), Plaintiff Dennis Nowak's Amended Complaint is incurably deficient because it alleges no colorable basis for federal jurisdiction and also because it fails to correct the many fatal deficiencies this Court identified in its order dismissing the original complaint. Namely, the Amended Complaint again:

- Impermissibly lumps the Xapo entities together;
- Fails to allege a California nexus;
- Does not plead actual knowledge of the purported theft; and
- Is based on conclusory allegations about purportedly deficient Know Your Customer ("KYC") and Anti-Money Laundering ("AML") policies.

Plaintiff's Opposition (Dkt. No. 58, "Opposition" or "Opp.") does not overcome these failures and misstates or ignores binding law in the process.

***First***, in arguing that this Court has diversity jurisdiction over this matter, Plaintiff ignores Ninth Circuit authority holding that diversity jurisdiction does ***not*** exist when a case involves a foreign plaintiff and a foreign defendant, even when there is also a United States defendant. *See, e.g.*, *Craig v. Atl. Richfield Co.*, 19 F.3d 472, 476 (9th Cir. 1994). Indeed, Plaintiff does not contest that he is a foreign citizen, and admits that Xapo Gibraltar and Indodax are "foreign" entities, but asks this Court to ignore that fact—a request that is barred by binding precedent.

***Second***, Plaintiff asserts that the Court has general personal jurisdiction over Xapo Gibraltar, apparently based on an alter-ego theory, contending that Xapo Gibraltar and Xapo, Inc. are "one-and-the-same business." But Plaintiff merely summarizes the conclusory allegations in the Amended Complaint and fails to identify ***any*** California contacts of Xapo Gibraltar. He does not address any of the alter-ego factors, nor does he engage with the extensive authorities and evidence submitted in support of the Motion. Instead, Plaintiff ignores this Court's clear guidance

---

[1] In all citations included herein, internal citations, quotation marks, and alterations have been removed, and emphases added, unless otherwise noted.

and vaguely asks for jurisdictional discovery without specifying what he is seeking or providing any sort of discovery plan or timeline.

**Third**, Plaintiff provides no explanation for improperly lumping Xapo, Inc. and Xapo Gibraltar together as a single "Xapo" entity in the Amended Complaint. He similarly fails to address the conclusory, deficient allegations of a California nexus for the claims against "Xapo" in his Amended Complaint.

**Fourth**, Plaintiff's Opposition does nothing to rebut the Motion's arguments that he has failed to state any claim against "Xapo" as a matter of law. For aiding and abetting conversion and fraud, Plaintiff ignores (and does not even cite) the controlling authority on the "actual knowledge" standard, *see Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145-46 (2005), and fails to address the Motion's argument and authorities demonstrating lack of "substantial assistance." For negligence, Plaintiff does not respond to the Motion's arguments and authorities on the question of duty and fails to address at all whether he has adequately alleged a breach of any duty. For constructive trust, Plaintiff concedes that the claim is just a "remedy" that is dependent on other claims for wrongful conduct.

The Court should dismiss all claims against Xapo, Inc. and Xapo Gibraltar with prejudice because further amendment would be futile.

## II.     ARGUMENT

### A.     The Court lacks subject matter jurisdiction over this case.

Plaintiff fails to contest, and thus concedes, that there is no federal question jurisdiction under 28 U.S.C. § 1331 over the claims in the Amended Complaint. This Court dismissed Plaintiff's sole federal claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Plaintiff did not reassert that claim—or any federal claim—in his Amended Complaint. There is thus no basis for federal question jurisdiction.

Plaintiff similarly has not provided any basis for diversity jurisdiction under 28 U.S.C. § 1332, nor can he. There is no diversity jurisdiction for "case[s] involv[ing] a single foreign plaintiff . . . and numerous foreign defendants (in addition to U.S. defendants)." *Craig*, 19 F.3d at 476. When a case is brought by a foreign plaintiff against a foreign defendant, the simultaneous

presence of a United States defendant does not establish diversity jurisdiction because diversity must be **complete**: if diversity is lacking as to any defendant, jurisdiction is lacking over "the entire case." *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004-05 (9th Cir. 2001). As Plaintiff's own cited authority holds, if there are "foreign citizens on both sides of the case," there is no diversity jurisdiction. *Infuture Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011); *cf. Guan v. Bi*, No. 13-CV-05537-WHO, 2014 WL 953757, at *6 (N.D. Cal. Mar. 6, 2014) ("[T]his case involves an alien and a United States citizen on one side and aliens on the other side. There is no complete diversity of citizenship and, without an independent ground for jurisdiction, I cannot hear this case."). Here, Plaintiff does not contest that he is a foreign citizen. He also explicitly concedes that Xapo Gibraltar is a "foreign party" and that Defendant Indodax "is a foreign entity." Opp. at 4. These concessions are fatal: no diversity jurisdiction exists when there are foreign citizens on "both sides of the case."

Plaintiff nevertheless argues that, even though Indodax and Xapo Gibraltar are "foreign" entities, the Court should impute different citizenship or ignore their foreign status entirely.

As to Indodax, Plaintiff asserts that because the harm in this case "occurred here," the Court can exercise diversity jurisdiction over Indodax. Opp. at 4-5. He is wrong and cannot point to any support for this argument in either statute or case law. Instead, under 28 U.S.C. § 1332(a)(2), the question is whether the parties are "citizens of a State" or a "foreign state." "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The location of the alleged harm in this case says nothing about the location of Indodax's incorporation or principal place of business, and is thus irrelevant to the analysis. Plaintiff cites *Micron Technology, Inc. v. United Microelectronics Corp.*, No. 17-CV-6932-MMC, 2019 WL 1959487, at *7-*8 (N.D. Cal. May 2, 2019), and claims that the court "found subject matter jurisdiction proper." Opp. at 4-5. But *Micron* addressed **personal** jurisdiction, not subject matter jurisdiction (referencing only briefly the extraterritorial reach of a federal statute in the personal jurisdiction analysis). In any event, even if this theory had merit (it does not), as discussed in section II.C.2, below, Plaintiff fails to adequately allege any harm in California.

Next, Plaintiff contends that even though Xapo Gibraltar is "foreign," it can be considered a diverse United States party because it is Xapo, Inc.'s alter ego and the combined entity is "domiciled" here. Opp. at 4. As further discussed for personal jurisdiction, below, Plaintiff has not adequately alleged that Xapo, Inc. and Xapo Gibraltar are alter egos. His argument also fails.

A corporation is a citizen of "*every* State and foreign state by which it has been incorporated." 28 U.S.C. § 1332(c)(1). Courts "cannot disregard either [a corporation's] site of incorporation . . . or its principal place of business . . . when testing for complete diversity." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994). Thus, because Xapo Gibraltar is incorporated in Gibraltar, Plaintiff cannot deny Xapo Gibraltar's foreign citizenship simply by asserting a United States "domicile" based on an alter-ego theory. *See Panalpina Welttransport GmbH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985) ("[W]hen a subsidiary is the alter ego of a parent, the parent is deemed to be a citizen of (1) the place where it is incorporated, (2) the place where its subsidiary is incorporated, *and* (3) the place where it has its principal place of business."). Indeed, courts have recognized that "the alter ego doctrine may be used to add places of citizenship to the *abrogation* of diversity jurisdiction but may not be used to *extend* such jurisdiction." *Id.* at 354-55; *cf. Grayson Serv., Inc. v. Crimson Res. Mgmt. Corp.*, No. 14-CV-01125-SAB, 2016 WL 8730734, at *3-*7 (E.D. Cal. Feb. 5, 2016) (collecting cases, and attributing contacts to eliminate diversity jurisdiction). Moreover, all of the authority on this issue involves *parent-subsidiary* relationships, and not "sister" companies owned by a common parent. *See, e.g.*, *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir. 1992). Plaintiff cites no case (and Defendants are aware of no case) that has attributed the citizenship of a commonly owned corporation to another based on alter-ego status.

Because Indodax and Xapo Gibraltar are non-diverse foreign citizens, there is no diversity jurisdiction, and the Court should dismiss the entire case for lack of subject matter jurisdiction.

**B.    The Court lacks personal jurisdiction over Xapo Gibraltar.**

**1.    Plaintiff's allegations do not satisfy any theory of personal jurisdiction.**

Plaintiff bears the burden of establishing a "prima facie" case of personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068, 1073 (9th Cir. 2015). Because Xapo, Inc. and Xapo

Gibraltar have submitted evidence contradicting Plaintiff's allegations, Plaintiff cannot merely rely on the "bare allegations of [the] complaint," *id.* at 1068, but rather must submit additional evidence to meet this burden (but has not done so). As an initial matter, Plaintiff fails to contest—and thus concedes—that the Court lacks specific jurisdiction over Xapo Gibraltar. (Plaintiff argues that the Court has specific jurisdiction over Indodax, Opp. at 6-8, but does not raise that argument with respect to Xapo Gibraltar.) Instead, Plaintiff asserts that the Court has general jurisdiction based solely on a theory that Xapo Gibraltar is the alter ego of Xapo, Inc. Opp. at 5-6. But Plaintiff cannot satisfy his burden on a general jurisdiction or alter-ego theory.

**First**, general jurisdiction exists in a company's "place of incorporation," "principal place of business," or, in an "exceptional case," a state in which the company's contacts are so "continuous and systematic as to render it essentially at home." *Ranza*, 793 F.3d at 1069. Plaintiff does not identify ***any*** allegations or evidence of contacts that Xapo Gibraltar (as opposed to Xapo, Inc.) has with California. Opp. at 5-6. Xapo Gibraltar has also submitted evidence that Gibraltar, not California, is its principal place of business and that it has no continuous and systematic contacts with this state. *See* Dkt. No. 57-2, Declaration of Albert Agius ("Agius Decl.") ¶¶ 4 ("Xapo Gibraltar's principal place of business is in Gibraltar"), 8-12. Xapo Gibraltar "does not do any business" in California, does not "provide any services" in California, "does not maintain any office or place of business in California," "has no California or United States customers, offices, or operations," and "operates entirely outside of the United States." *Id.* ¶¶ 8-12.

**Second**, Plaintiff cannot impute Xapo, Inc.'s alleged California contacts to Xapo Gibraltar because the entities are not alter egos. An alter-ego theory requires Plaintiff to show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exists ***and*** (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073. Plaintiff fails to satisfy either element.

Plaintiff's Opposition fails to address, and thus concedes, that he has not satisfied the fraud or injustice prong of the alter-ego test. Neither Plaintiff's Amended Complaint nor his Opposition "state[s] any inequitable result that would result from respecting the corporate form" of the Xapo entities. *Park Miller, LLC v. Durham Grp., Ltd.*, No. 19-CV-04185-WHO, 2020 WL

1955652, at *14 (N.D. Cal. Apr. 23, 2020); *see also Reynolds v. Binance Holdings Ltd.*, 481 F.
Supp. 3d 997, 1008–09 (N.D. Cal. 2020) (same). On this basis alone, Plaintiff's alter-ego theory
must be rejected. *See Park Miller*, 2020 WL 1955652, at *14 (a plaintiff must "allege *specifically*
*both* of the elements of alter ego liability") (emphasis in original).

Plaintiff also fails to establish a "unity of interest or ownership" of Xapo, Inc. and Xapo
Gibraltar. Rather than substantively address the arguments or authorities in the Motion, Plaintiff
provides a bullet point summary of allegations, but fails to explain how the allegations can satisfy
the nine factors relevant to the unity of interest question. *See* Mot. at 9 (listing factors). They do
not, and the failure to address these factors "weighs against the finding of alter ego liability."
*Reynolds*, 481 F. Supp. 3d at 1007. Moreover, most of the allegations in the Amended Complaint
are vague and conclusory, and so are wholly insufficient. For example, Plaintiff points to
allegations that the entities "fail to maintain arm's length relationships" and "act as one entity"
without alleging any factual support for those assertions. Opp. at 5.

The Motion explained why the remaining allegations in the Amended Complaint are
insufficient. Mot. at 11-14. Plaintiff alleges, for example, that Wences Casares manages and
controls both Xapo entities. Am. Compl. ¶ 6. Though this allegation is inaccurate (because each
entity has its own separately constituted board and officers that manage and control them, Dkt.
No. 57-1, Declaration of Julie Jo ("Jo Decl.") ¶ 7; Agius Decl. ¶ 17), it does not affect the
analysis because the presence of "shared management personnel alone [is] insufficient to
establish the requisite level of control" for alter-ego status. *Ranza*, 793 F.3d at 1073. (Plaintiff's
Opposition claims—without support—that "the same team of advisors, who are located in the
United States" "manage[s] and control[s]" both entities, rather than Mr. Casares. Opp. at 5. But
the Amended Complaint solely alleges that Xapo Gibraltar is "greatly guided" by a team of
advisors, not managed and controlled by it, and does not allege that Xapo, Inc. has the same
advisors or that the advisors are located in the United States. Am. Compl. ¶ 3.) There is similarly
no unity of interest based on the alleged sharing of employees and offices. *See, e.g.*, *Harris*
*Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (entities
were not alter egos despite shared offices and overlapping staff). And the allegation that Xapo,

1   Inc. and Xapo Gibraltar share a website "does not rise to the level of unity of interest." *Corcoran*

2   *v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).

3          The evidence submitted with the Motion further confirms that Plaintiff cannot satisfy his

4   burden. The submitted declarations establish that Xapo, Inc. and Xapo Gibraltar are different

5   types of businesses with no overlap: Xapo, Inc. provides cryptocurrency wallets and vaults to

6   customers in the United States and Xapo Gibraltar provides e-money accounts to customers

7   abroad. Jo Decl. ¶¶ 4-5, 8; Agius Decl. ¶¶ 5, 15; Am. Compl. ¶¶ 2-3. This evidence also shows

8   that the entities follow all corporate formalities, hold regular board meetings, keep separate

9   corporate records, keep separate finances and do not commingle money, do not guarantee each

10  other's debts, do not share offices or physical presence, and that Xapo Gibraltar has its own

11  employees that do not provide services to Xapo, Inc. Jo Decl. ¶¶ 3-19; Agius Decl. ¶¶ 4-29.

12  Plaintiff's "bare allegations" are insufficient to dispute this evidence. *Ranza*, 793 F.3d at 1068.

13               **2.      Plaintiff's request for jurisdictional discovery should be denied.**

14          Having failed to establish personal jurisdiction over Xapo Gibraltar, Plaintiff makes a

15  vague request for "jurisdictional discovery." But this request entirely ignores the Court's prior

16  guidance that "it's not enough in an opposition to simply say, we need jurisdictional discovery. I

17  actually need a discovery plan and a timeline for me to even consider it, and that needs to be

18  within your opposition of 25 pages." Dkt. No. 47 (Tr. of Nov. 12, 2020 Hr'g) at 8:22-9:1. Despite

19  this explicit guidance, Plaintiff does exactly what this Court warned against: his opposition asks

20  for jurisdictional discovery without providing a discovery plan, timeline, or even a description of

21  what discovery he seeks. The Court should reject the request. *See Allen v. Shutterfly, Inc.*, No. 20-

22  CV-02448-BLF, 2020 WL 5517170, at *7 (N.D. Cal. Sept. 14, 2020) (rejecting jurisdictional

23  discovery partly because the plaintiff's request failed to "articulat[e] what discovery [he] wishes

24  to take, or what [he] believes might be revealed by further discovery.").

25          And even if the request were considered, courts routinely deny requests for jurisdictional

26  discovery if "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based

27  on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v.*

28  *Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020

(9th Cir. 2008) (affirming denial of jurisdictional discovery request "based on little more than a hunch that it might yield jurisdictionally relevant facts"). Here, Plaintiff's vague and conclusory allegations fail to identify any California contacts of Xapo Gibraltar or even address the majority of the alter-ego factors, including (critically) the fraud or injustice prong. Both Xapo, Inc. and Xapo Gibraltar have also submitted evidence specifically denying Plaintiff's allegations. The Court should thus deny the request for jurisdictional discovery.

**C.** **Even if Plaintiff could overcome the jurisdictional defects in his Amended Complaint, he fails to state a claim.**

**1.** **Plaintiff improperly lumps Xapo, Inc. and Xapo Gibraltar together.**

Plaintiff fails to address, and thus concedes, that he has again improperly lumped the defendants together. This failure is grounds for dismissal with prejudice. The Court previously ordered Plaintiff to "identify exactly what action each [Xapo entity] took that caused his harm, without resorting to generalized allegations against "Xapo" (or "Defendants") as a whole." Dkt. No. 49 ("MTD Order") at 3 (citing *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 907-08 (N.D. Cal. 2018)). Plaintiff failed to follow the Court's direction and has not provided any explanation or authority in his Opposition to justify his approach.

**2.** **Plaintiff fails to plead a California nexus for his claims.**

Plaintiff does not dispute that he must plead a California nexus for his common-law claims (which arise under California law): aiding and abetting conversion and fraud, negligence, and constructive trust. Indeed, Plaintiff fails even to address the Motion's arguments on this point.

Plaintiff instead discusses the nexus issue only in the context of his Section 17200 claim against Indodax, which is insufficient to save his claims against Xapo, Inc. and/or Xapo Gibraltar. Opp. at 13. And even there, Plaintiff merely cites his conclusory allegation that the "act of theft occurred in this jurisdiction" and the Bitcoins were transferred "from this jurisdiction." *Id.* (quoting Am. Compl. ¶ 46). As explained in the Motion, such a conclusory statement is insufficient because it is unsupported by any factual allegations. *See* Mot. at 15-17. Plaintiff pleads that Kraken, the cryptocurrency exchange where Plaintiff's Bitcoins were stored, had servers in this district and the Bitcoins were "accessible" through those servers. Am. Compl. ¶¶ 39-40. Plaintiff nowhere alleges that the cryptocurrency was ever stored on those servers or

8

1649650

that the theft, in fact, touched those servers in any way. Indeed, an allegation that the hack was

accomplished in Northern California would be implausible in light of Plaintiff's prior allegation

that the hackers accomplished the theft by accessing his computer, which was presumably with

him in Germany. Compl. ¶¶ 1, 57; *see Royal Primo Corp. v. Whitewater W. Indus., Ltd*, No. 15-

CV-04391-JCS, 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016) (allowing consideration of

"prior allegations" to determine "plausib[ility]" of allegations in an amended complaint).

   Plaintiff has failed to plead a California nexus, and thus his claims against Xapo, Inc. and

Xapo Gibraltar, all of which arise under California law, must be dismissed.

### 3.     Plaintiff fails to adequately allege claims of aiding and abetting conversion or fraud (Counts II and III).

#### a.     Plaintiff has not alleged actual knowledge of the alleged conversion or fraud.

   California law requires a plaintiff to allege "actual knowledge of the specific primary

wrong" to state a claim for aiding and abetting conversion and fraud. *Casey*, 127 Cal. App. 4th at

1145; *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (following

*Casey*). As discussed in the Motion, Plaintiff failed to plead this element because (1) he only

directly alleges actual knowledge as of "June 2020," but does not allege that either Xapo, Inc. or

Xapo Gibraltar committed any act (or that the allegedly stolen Bitcoins were even in a "Xapo"

account) after they supposedly learned of the theft; and (2) Plaintiff fails to plead sufficient facts

to support an allegation of actual knowledge, regardless of the time frame. Mot. at 17-20.

   As a threshold issue, however, Plaintiff primarily argues that the Court should not rule on

the "truthfulness" of Plaintiff's allegations and implies that the mere inclusion of the words

"actual knowledge" is enough to comply with his pleading obligations. Opp. at 11. It is not.

While of course the Court cannot adjudicate "truthfulness" at the pleadings stage, it is black-letter

law that parroting the elements of a claim without additional facts is not enough to satisfy

pleading requirements under Rule 8—much less under Rule 9(b). *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."). Moreover, as the California Court of Appeal directed in

*Casey*, courts should "carefully scrutinize" allegations of actual knowledge. 127 Cal. App. 4th at

1152. And under Ninth Circuit law: the Court must determine (1) whether the complaint "specifically alleges that [the defendant] knew" about the primary wrong; and (2) whether the complaint "allege[s] specific supporting facts that make their allegations of actual knowledge plausible." *Evans v. ZB, N.A.*, 779 F. App'x 443, 445 (9th Cir. 2019); *see also S&S Worldwide, Inc. v. Wells Fargo Bank*, No. 20-CV-01926-MMC, 2020 WL 7714534, at *7 (N.D. Cal. Dec. 29, 2020) ("[A] plaintiff may not merely allege that a defendant 'knew' of some specified circumstance."); *Chang v. Wells Fargo Bank, N.A.*, No. 19-CV-01973-HSG, 2020 WL 1694360, at *4 (N.D. Cal. Apr. 7, 2020) (under *Evans*, requiring specific allegation of actual knowledge as "a critical threshold" and the pleading of facts to satisfy the *Iqbal* standard).

Plaintiff's reliance on *Aifang v. Velocity VII Ltd. Partnership*, No. 14-CV-07060-SJO, 2015 WL 12745806 (C.D. Cal. Sept. 30, 2015), is misplaced. *Aifang* held that a plaintiff must specifically allege actual knowledge of the primary wrong or facts whose "net effect" show such knowledge. *Id.* at *5. To read *Aifang* as allowing an actual knowledge allegation without supporting facts would contradict the pleading requirements under *Iqbal*, which requires "sufficient factual matter" to state a plausible claim for relief. 556 U.S. at 678. Moreover, the plaintiffs in *Aifang* alleged facts that complied with *Iqbal* and *Evans*: they specifically alleged knowledge of a conversion and supporting facts, including an allegation that the defendant bank had set up a facially invalid "sham" trust account for the thieves (who were long-standing clients) and instructed the victims how to deposit their money in it. *Id.* at *5-*6. Plaintiff does not allege anything close to that detail, and no reading of *Aifang* can save the claims asserted here.

***First***, Plaintiff only asserts that "Xapo" had actual knowledge of the alleged theft "no later than June 2020," when this lawsuit was filed. Opp. at 11. And, as discussed in the Motion, Plaintiff does not allege that either Xapo, Inc. or Xapo Gibraltar (or even "Xapo") engaged in any action (much less possessed the allegedly stolen Bitcoins) in or after June 2020. Mot. at 17-18. Instead, Plaintiff contends that conversion and fraud are "ongoing" offenses, relying on *Hullinger v. Anand*, No. 15-CV-07185-SJO, 2016 WL 4409196, at *4 (C.D. Cal. Aug. 11, 2016). But *Hullinger* merely holds that a defendant can be held liable for aiding and abetting ongoing offenses even if not involved with the offense at the start. *Id.* at *2-*4. It does not alter the

1    requirement of "actual contemporaneous knowledge" of the offense at the time of the aider and

2    abettor's liability-creating conduct. *See Namer v. Bank of Am., N.A.*, No. 16-CV-3024-JM, 2017

3    WL 4391710, at *3 (S.D. Cal. Oct. 2, 2017) (finding bank not liable as aider and abettor because

4    it did not know of the fraud at the time of its conduct); *see also Casey*, 127 Cal. App. 4th at 1146

5    (requiring "intentional participation with knowledge of the object to be attained").

6        ***Second***, Plaintiff fails to plead "specific supporting facts" necessary to make any

7    "allegation of actual knowledge plausible." *Evans*, 779 F. App'x at 445. Plaintiff does not discuss

8    his allegations at all in his Opposition, instead opting to generally assert that their "net effect"

9    shows actual knowledge, without explaining why. But as discussed in the Motion, Plaintiff's

10   Amended Complaint repeats the same allegations this Court previously found insufficient in

11   connection with Xapo, Inc.'s motion to dismiss the original complaint—the deposit of 20

12   Bitcoins into "Xapo" hot wallets and "Xapo's" purportedly "atypical" KYC and AML policies.

13   *See* MTD Order at 4. As before, Plaintiff fails to allege any actual facts as to why the policies

14   were "atypical" or why the deposit was in any way "suspicious." In any event, such allegations

15   could not possibly demonstrate actual knowledge of the "specific primary wrong," *i.e.*, the theft

16   by fraud of Plaintiff's Bitcoins. *Casey*, 127 Cal. App. 4th at 1145. Indeed, *Casey* found actual

17   knowledge to be insufficiently pleaded even with allegations that the defendant bank had violated

18   its own internal policies and procedures, and where the accountholders had engaged in suspicious

19   behavior, such as carrying out large amounts of cash from the bank in "unmarked duffel bags," *id.*

20   at 1142, 1149. The only new fact Plaintiff alleges in his Amended Complaint is that "Xapo" was

21   informed of the theft in June 2020 by "law enforcement." But even this allegation does not

22   plausibly establish actual knowledge—Plaintiff nowhere identifies what "law enforcement"

23   agency informed "Xapo" of the theft, what Xapo entity was so informed, and whether the

24   purported communication provided actual knowledge of the theft or merely knowledge of

25   Plaintiff's allegations, which this Court already held to be insufficient to confer actual knowledge,

26   MTD Order at 4. Plaintiff's allegations of actual knowledge do not satisfy Rule 8, let alone the

27   more stringent requirements of Rule 9(b) that must apply here.

28

**b.      Plaintiff does not contest the lack of substantial assistance.**

Plaintiff is silent on the substantial assistance element of aiding-and-abetting liability, and thus concedes the arguments on this point. As discussed in the Motion, Plaintiff must allege actions that were a "substantial factor in causing plaintiff's injury." Mot. at 19-20 (citing *Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008)). The mere allegation of a "failure to act" is insufficient. *Diaz v. Intuit, Inc.*, No. 15-CV-01778-EJD, 2018 WL 2215790, at *8 (N.D. Cal. May 15, 2018). And courts typically require repeated conduct to establish substantial assistance. *See Cotton v. Wells Fargo Bank N.A.*, No. 11-CV-1001758-CJC, 2011 WL 13227816, at *1, *3 (C.D. Cal. Feb. 22, 2011) (no substantial assistance for a single wire transfer of $1,780,000). Plaintiff's allegation of a deposit of 20 Bitcoins into a hot wallet and failure to freeze the account does not plead any affirmative actions or the type of repeated conduct courts have required for an allegation of substantial assistance.

**4.      Plaintiff fails to adequately allege negligence (Count VI).**

**a.      Xapo, Inc. and Xapo Gibraltar owe no duty to noncustomers like Plaintiff.**

Financial institutions owe a duty to noncustomers only in "extraordinary and specific" circumstances. *Software Design & Application, Ltd. v. Hoefer & Arnett, LLC*, 49 Cal. App. 4th 472, 479 (1996). Such circumstances arise for banks "only in narrow factual" scenarios involving "the negotiation of a check by a person who is not the named payee." *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 545 (1998) (discussing *Sun 'n Sand, Inc. v. United Cal. Bank*, 21 Cal. 3d 671 (1978)). Absent "suspicious *instruments*," there is no "duty to supervise account activity or otherwise track frequent and/or large dollar transactions in deposit accounts." *Software Design*, 49 Cal. App. 4th at 481 (emphasis in original).

Plaintiff does not engage with these authorities, all of which were discussed in the Motion. Mot. at 20-22. Instead, Plaintiff quibbles with the Motion's reliance on them because they involve banks—but fails to articulate why such cases are not directly relevant here. Xapo, Inc. acts as a custodian of Bitcoins in cryptocurrency wallets and vaults, and Xapo Gibraltar acts as a custodian of e-money. *See* Am. Compl. ¶¶ 2-3. Both entities thus play a role that is similar to a bank, allowing the deposit, storage, and transfer of currency. And to support his argument on this point,

12

Plaintiff relies solely on a banking case—*Aifang*, 2015 WL 12745806, at *6. Though Plaintiff asserts that "non-bank defendants are held to a less stringent standard," he cannot cite any case (let alone a non-banking case) to support that assertion. Indeed, in *Diaz*, Judge Davila applied banking precedents to a non-bank entity (TurboTax), and did not invent a lesser standard, but rather required "objective indicia of fraud" (and found no duty). 2018 WL 2215790, at *5; *see Software Design*, 49 Cal. App. 4th at 483-84 (applying banking analysis to brokerage firm).

Plaintiff's discussion of *Aifang* is also misleading. He quotes the court's statement that a duty exists where circumstances are "sufficiently suspicious" concerning a transaction, but omits the very next sentence explaining that phrase:

> *Sun'n Sand* and its progeny have held banks to be subject to a duty of care toward nondepositors only in narrow factual circumstances: [e]ach case involved the bank's liability for allowing a person to deposit a check, payable to someone else, into a personal account, under circumstances that should have alerted the bank to the possibility of fraud.

*Aifang*, 2015 WL 12745806, at *6. And in *Aifang*, the defendant bank sent out a letter to investors on behalf of the fraudsters that "on its face identifie[d] a possibly invalid trust" and also allowed funds "to be disbursed on the basis of forged checks and remote transfers." *Id.* at *6-*7. Plaintiff's own authority thus required facially suspicious documents to trigger a duty. Judge Gilliam has rejected the broad reading of *Aifang* Plaintiff suggests, stating that he "does not read California cases to establish any duty of care that broad." *Chang*, 2020 WL 1694360, at *9 & n.7.

As discussed in the Motion, the Amended Complaint does not allege "extraordinary and specific circumstances." Mot. at 20-22. Indeed, Plaintiff alleges nothing that would have flagged to the recipient that the deposit was out of the ordinary. Plaintiff provides no argument otherwise, instead opting to block-quote paragraphs from his Amended Complaint. Opp. at 14-16. But such conclusory allegations are insufficient to create any duty. Plaintiff quotes allegations that the deposit in the "Xapo" accounts were "suspicious," but does not allege why the transfer of 20 Bitcoins into hot wallets in 2018 would have been suspicious. Opp. at 15. And Plaintiff quotes allegations that "Xapo" "knew" their platform was used for money laundering, *id.* at 16, but fails to allege any facts supporting such an outrageous allegation, or how that made the deposit in *this* case sufficiently suspicious to impose a duty.

Plaintiff also heavily relies on allegations that the Xapo entities' KYC and AML policies did not meet "industry standards," but does not allege what the industry standards would require, especially for custodians like Xapo, Inc. and Xapo Gibraltar. (Plaintiff's few conclusory allegations regarding KYC and AML policies pertain almost exclusively to cryptocurrency *exchanges*. *See* Mot. at 21-23; Am. Compl. ¶¶ 20-36.) And even if Plaintiff had alleged an industry standard for KYC and AML policies, such policies do not create a duty to Plaintiff: as discussed in the Motion, *Software Design* holds that "industry safeguard[s]" such as "account opening or screening procedures" do not "exist to *protect strangers with whom [banks] do no business*. Rather, they exist to protect the banks." 49 Cal. App. 4th at 482 (emphasis in original); *see also id.* ("Violation of a self-imposed rule does not create actionable negligence unless plaintiff (1) suffers the type of harm sought to be prevented by the rule and (2) is a member of the class of people for whose protection the rule was promulgated."); *see* Mot. at 21-22.

At its core, Plaintiff seeks to impose a duty that would make Xapo, Inc., Xapo Gibraltar, and essentially any cryptocurrency custodian, the guarantor of all transactions on their platforms. Plaintiff's reliance on purportedly deficient security policies—as opposed to a facially apparent indicator that the transaction involved theft or fraud—means that Defendants (and cryptocurrency custodians around the world) would be subject to suit any time Bitcoins obtained through questionable means are deposited into a hot wallet. Courts refuse to impose similar duties to noncustomers on banks, because doing so would force banks to "act as the guarantor" of transactions, lead to preventative measures that would "violate . . . customers' right to privacy," and thus lead to "loss of privacy, expense and commercial havoc." *Casey*, 127 Cal. App. 4th at 1149. Such a duty would be "out of proportion to the potential harm averted by such a result" as it would be "intrusive for the citizenry and add to the cost of financial transactions." *Software Design*, 49 Cal. App. 4th at 483. The Court should find no duty here for the same reasons.

### b. Plaintiff has not alleged breach of any duty.

Even if Plaintiff had adequately alleged a duty, he does not allege any **breach** of that duty. In fact, he fails even to address this point. As previously discussed, Plaintiff's Amended Complaint does not (1) explain how the allegations regarding KYC and AML policies for

14

cryptocurrency exchanges would apply to custodial firms like Xapo, Inc. or Xapo Gibraltar;
(2) even as to "exchanges," allege what an industry-standard KYC and AML policy would entail
or how it would have identified the transactions here as suspicious; or (3) allege any specific
deficiencies in the KYC and AML policies of Xapo, Inc. or Xapo Gibraltar. *See* Mot. at 21-22.
Plaintiff's block quote of conclusory allegations from the Amended Complaint that the
transactions were "suspicious" and that the KYC and AML policies did not meet some
unspecified "industry standard" does not allege a breach of any duty.

### 5.    No basis exists to impose a constructive trust (Count IX).

A constructive trust requires "the defendant's acquisition or detention of the [plaintiff's]
property interest by some wrongful act." *Higgins v. Higgins*, 11 Cal. App. 5th 648, 659 (2017).
Plaintiff admits that constructive trust "is technically a remedy, not a freestanding claim," and
that the claim will only survive if a defendant "came to possess Plaintiff's cryptocurrency through
wrongful means." Opp. at 16-17. Because Plaintiff fails to state a claim against Xapo, Inc. or
Xapo Gibraltar on any other cause of action, he has not pleaded wrongful conduct, and his claim
for a constructive trust remedy must fail. *See Hill v. US Bank, N.A.*, No. 12-CV-6586-GHK, 2012
WL 12888323, at *8 (C.D. Cal. Nov. 26, 2012) (a constructive trust "is dependent on other causes
of action and cannot stand alone"); *Falkenstein v. Shipco Transp., Inc.*, No. 13-CV-08052-BRO,
2015 WL 11256774, at *17 (C.D. Cal. Oct. 15, 2015) (same).

### D.    The Court should dismiss with prejudice.

Plaintiff's Opposition confirms that dismissal of his Amended Complaint with prejudice is
necessary. Plaintiff has offered nothing to explain his failure to comply with the Court's
instructions in its order dismissing the original complaint, nor to counter the many jurisdictional
and pleading defects identified in Defendants' Motion. Indeed, Plaintiff fails to even request leave
to amend. Any amendment would be futile, and so this Court should dismiss with prejudice.

## III.    CONCLUSION

For all these reasons and those stated in the Motion by Xapo, Inc. and Xapo Gibraltar to
Dismiss the Amended Complaint, this Court should dismiss Plaintiff's Amended Complaint and
all four of its causes of action against Xapo, Inc. and Xapo Gibraltar, with prejudice

1    Dated: March 10, 2021                          KEKER, VAN NEST & PETERS LLP

2

3                                         By:    _s/Steven P. Ragland_
                                                STEVEN P. RAGLAND
4                                               ERIN E. MEYER
                                                VICTOR T. CHIU
5                                               JASON S. GEORGE

6                                               Attorneys for Defendant
                                                XAPO, INC
7
                                                Specially appearing on behalf of
8                                               XAPO (GIBRALTAR) LIMITED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION BY XAPO, INC. AND XAPO (GIBRALTAR) LIMITED TO DISMISS
Case No. 5:20-CV-03643-BLF
1649650